UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERIC OGILVIE,

     Petitioner,

v.

LORI GIDLEY,

     Respondent.

_____

CASE NO. 2:16-cv-11013

HON. MATTHEW F. LEITMAN

MAG. STEPHANIE D. DAVIS


**ANSWER IN OPPOSITION TO PETITION FOR WRIT OF HABEAS CORPUS**

# TABLE OF CONTENTS

Introduction ..................................................................................... 1

Statements in Compliance with Habeas Rule 5(b) .................................. 3

    A.    Statute of Limitations ................................................ 3

    B.    Exhaustion ............................................................ 4

    C.    Procedural Default ................................................. 4

    D.    Non-retroactivity Doctrine ...................................... 4

Statement of the Case ...................................................................... 4

    A.    Trial Facts ............................................................ 4

    B.    Procedural History ................................................. 9

Standard of Review Pursuant to AEDPA .............................................. 18

Argument ..................................................................................... 27

I.    The state appellate court failure to grant Ogilvie relief on his claim that he was denied an appellate attorney on direct appeal where the circuit court failed to appoint a substitute appellate attorney after three appellate attorneys were allowed to withdraw was not contrary to or an unreasonable application of Supreme Court precedent ....................................... 27

II.    Consideration of Ogilvie's stand-alone jury instruction claim is barred by waiver/procedural default because the Michigan Court of Appeals denied relief on the basis of waiver which extinguished any error. ................................................ 39

III.    Under the highly deferential standards of *Darden v. Wainwright* and 28 U.S.C. § 2254(d), the state court determination that Ogilvie was not denied a fair trial by prosecutor misconduct was not objectively unreasonable. ............ 45

IV[a] Under the highly deferential standards of *Strickland v. Washington* and 28 U.S.C. § 2254(d), the state court rejection of Ogilvie's claim that trial counsel was ineffective was not objectively unreasonable. ................................................................. 61

IV[b] Under the highly deferential standards of *Strickland v. Washington* and 28 U.S.C. § 2254(d), the state court rejection of Ogilvie's claim that appellate counsel was ineffective was not objectively unreasonable ........................................................... 77

Conclusion ................................................................................................ 84

Relief ........................................................................................................ 89

Certificate of Service ............................................................................ 90

## INTRODUCTION

On September 13, 2009, Petitioner Eric Ogilvie pointed a loaded handgun at a neighbor during an argument outside his home and said "I should do you" and "I want to hurt you."  The jury rejected Ogilvie's claim that he pointed the gun in self-defense.

As result of a $1^{1/2}$-day jury trial in Wayne County in February of 2010, Ogilvie was convicted of felonious assault, Mich. Comp. Laws § 750.82, and possession of a firearm during the commission of a felony (felony-firearm), Mich. Comp. Laws § 750.227b.  Ogilvie was discharged from parole in June of 2016.

Ogilvie commenced this action under 28 U.S.C. § 2254 by filing a petition with this Court.  The State understands the petition to be raising the following four claims:[1]

I.    Petitioner was denied his right to assistance of counsel in his direct appeal of right in violation of his rights under the Sixth Amendment of the United States Constitution.

II.   Instructing the jury on self-defense with the element of deadly force and instructing on the petitioner's duty to retreat were erroneous instructions that went to the heart of the case before the jury and violated the petitioner's right to a fair trial under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

---

[1] These are the four issues as listed in Doc# 1, Pg ID# 10–11.

1

III.   The petitioner was denied his right to a fair trial, pursuant to the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution because of the pervasive misconduct of the prosecutor (1) in arguing that Ogilvie used deadly force and had a duty to retreat, when no deadly force was used by Ogilvie and he had no duty to retreat, and (2) in failing to produce exculpatory evidence.

A. During closing and rebuttal arguments, the prosecutor made misstatements of Michigan's self-defense law, mischaracterized evidence of petitioner pointing a gun as deadly force, and wrongfully suggested that the petitioner had a duty to retreat, when in fact, under Michigan law, pointing a gun is not deadly force, and petitioner had no duty to retreat.

B. The prosecution failed to provide the defense with the exculpatory and admissible evidence of the 911 calls to the police, which contradicted witness testimony, and was crucial to the petitioner's valid claim of self-defense because both callers believed the neighbor who attacked Ogilvie had a gun.

IV.   The petitioner received ineffective assistance of trial and appellate counsel, in violation of his rights under the Sixth Amendment of the United States Constitution.

A. Trial counsel failed to investigate and obtain 911 calls and transcripts containing admissible statements that contradicted the complainant's testimony and were fundamental to petitioner's self-defense theory.

B. Trial counsel failed to request the appropriate jury instructions where the jury was instructed that petitioner used deadly force even though, under Michigan law, deadly force was not used, and the petitioner was entitled to an instruction on the element of non-deadly force as a component of self-defense.

C. In petitioner's post-conviction motions in state trial court, appellate counsel failed to raise the meritorious appellate issue of prosecutorial misconduct for failing to disclose evidence of Amy Ogilvie's 911 calls in violation of *Brady*.

D. Trial counsel's and appellate counsel's errors prejudiced the petitioner, and deprived him of a fair trial pursuant to the Sixth Amendment to the United States Constitution.

Should the Court interpret the petition to be raising any other claim, the State requests an opportunity to file a supplemental response.

Ogilvie's petition fails to raise other claims that he raised in the state courts. Those claims are now abandoned. *See Sommer v. Davis*, 317 F.3d 686, 691 (6th Cir. 2003) (holding that an issue is abandoned if a party does not present any argument respecting the issue in his brief). Thus, habeas review of abandoned claims is barred.

The State now answers the petition and requests that it be denied.

## STATEMENTS IN COMPLIANCE WITH HABEAS RULE 5(b)

With respect to the bars that preclude habeas review, the State asserts the following in conformance with Habeas Rule 5(b):

### A.    Statute of Limitations

The State is not arguing that any of Ogilvie's habeas claims are barred by the statute of limitations.

## B.    Exhaustion

The State is not arguing that any of Ogilvie's habeas claims are barred by the failure to exhaust a claim for which a state court remedy exists.

## C.    Procedural Default

The State asserts that Ogilvie has procedurally defaulted habeas claim III (prosecutor misconduct) as more fully discussed below.

## D.    Non-retroactivity Doctrine

The State is not arguing that any of Ogilvie's habeas claims are barred by the non-retroactivity doctrine.

## STATEMENT OF THE CASE

## A.    Trial Facts

When this case was on direct appeal the Wayne County Prosecutor's Office filed a brief which summarized the facts established at trial as follows:

> On September 13, 2009, defendant, Eric Ogilvie, was edging the lawn at his house on Maple Street in Taylor. Defendant's neighbors, Eric and Anna Watson, noticed what defendant was doing and had concerns about the electric fence located in the lawn and the grass clippings that were being left on the sidewalk. (2/10, 54, 85)[1] [References to the trial court record will be cited by the date of the hearing followed by the page number.] Defendant and the Watsons had previously

had a friendly relationship but that relationship had recently turned sour due to confrontations involving the property line separating them. (2/10, 51, 81) The victim, Eric Watson, decided to speak to defendant about the grass clippings and walked over to him. (2/10, 54) When the victim asked defendant to clean the clippings from the sidewalk, defendant responded that he would once the Watsons removed things from the property line. (2/10, 55) The conversation quickly escalated to an argument where both the victim and defendant were yelling at each other. (2/10, 56) The victim was standing on the sidewalk in front of defendant's house. (2/10, 66) The victim was face to face with defendant during the argument. (2/10, 56) Defendant told the victim to get off his property. (2/10, 56) Defendant pointed his finger toward the victim's face and the victim responded by pushing defendant's hand away. (2/10, 57) Defendant accused the victim of assaulting him. (2/10, 87) During the argument, the victim said that he would beat defendant's ass. (2/10, 64) Defendant took a step backward and took a handgun out from a bag he had around his waist. (2/10, 58) The handgun was loaded with one bullet. (2/10, 105) Defendant pointed the gun at the victim and said "I should do you" and "I want to hurt you." (2/10, 59) The victim called defendant "a little bitch" and backed away. (2/10, 59) The victim denied having a weapon or portraying that he had a weapon. (2/10, 61-62)

<div align="center">***</div>

Defendant testified on his own behalf. Defendant testified that he was edging his lawn when the victim approached him yelling. (2/10, 117-118) Defendant's young son was playing on the lawn nearby. (2/10, 118) The victim told defendant, "touch my mailbox and I'll beat your ass." (2/10, 121) The victim also told defendant to keep things out of the victim's yard. (2/10, 121) Defendant told the victim to leave. The victim walked up to defendant, pressed up against him, and asked what defendant would do if the victim did not leave. (2/10, 122-123) Defendant again told the victim to

<div align="center">5</div>

leave. (2/10, 123) The victim poked his finger into defendant's nose and said that he would beat defendant's ass. (2/10, 123) The victim continued to poke his finger at defendant and called him a "little bitch." (2/10, 124) Defendant testified that he was concerned for the safety of his son at that time. (2/10, 124) Defendant again told the victim to leave and then yelled out to another neighbor, Rebecca Swanson. Defendant asked Swanson to be his witness that the victim threatened to beat him. (2/10, 125) The victim took a swing at defendant hitting him in the head. (2/10, 127) Defendant yelled to Swanson to call the police. (2/10, 127) The victim told defendant "go ahead, pull yours, I'll pull mine." (2/10, 128) Based upon the victim's statement and that the victim was moving his hands around his waist and behind his back, defendant testified that he believed the victim to be armed. (2/10, 129) Defendant reached into his bag and pulled out a handgun. (2/10, 131) Defendant pointed the gun at the victim and told him to get away. (2/10, 131) The victim then walked away.

Rebecca Swanson also testified at trial. Swanson was outside cleaning her car when she noticed the victim walk over to defendant's house. (2/10, 152) The victim was upset and yelling. (2/10, 153) The victim and defendant began arguing. (2/10, 153) Defendant told the victim to leave. (2/10, 153) After telling the victim three times to leave, defendant turned to Swanson and asked her to call the police because he felt threatened. (2/10, 154) Swanson went into her house to get her phone and call the police. (2/10, 154) Swanson returned outside and saw that the victim was acting like he wanted to fight. (2/10, 156) The victim was forcing defendant to back away. (2/10, 156) While Swanson was on the phone with the police, she saw defendant pull out a handgun. (2/10, 155)

Prior to defendant pulling out the handgun, Swanson did not see the victim do anything to portray that he was armed. (2/10, 157) The victim was aggressively moving his hands around his waist and behind his back. (2/10, 158) It was

6

Swanson's opinion that the victim was moving his hands
because he was pulling up his pants or adjusting his
clothing. (2/10, 158, 160) [Brief, at 8–10.]

The Michigan Court of Appeals accurately summarized the facts

adduced at trial as follows:

> Defendant was convicted of feloniously assaulting his
> neighbor, Eric Watson (the "victim"), by pointing a gun at
> him during an argument outside defendant's home on
> September 13, 2009. The victim and defendant gave different
> accounts of the circumstances that preceded defendant's act
> of pointing a gun at the victim, but both agreed that the
> victim approached defendant while defendant was outside
> working on his lawn in front of his home. The victim claimed
> that he approached defendant on the sidewalk to speak to
> him about grass clippings that he left on the sidewalk.
> According to the victim, defendant began arguing and placed
> his hand near the victim's face. The victim claimed that he
> pushed defendant's hand out of his face and backed away as
> defendant pulled out a gun and pointed it at the victim.
> According to defendant, the victim aggressively approached
> him in a threatening manner and stated, "Go ahead pull
> yours I'll pull mind [sic]." Defendant, who was licensed to
> carry a gun, testified that he pulled out his gun and pointed
> it in the general direction of the victim because he thought
> the victim was getting ready to pull something out from
> behind his back and he feared for his safety and the safety of
> his young son, who was also in front of the house.

*People v. Ogilvie*, Docket Nos. 298302, 307897, 2013 WL 2278138, at *1
(Mich. Ct. App. May 23, 2013).

This state appellate court recitation of the facts is entitled to the

presumption of correctness under 28 U.S.C. § 2254(e)(1), and Ogilvie

has not demonstrated through clear and convincing evidence that this summary is incorrect.

The presumption of correctness extends to factual findings made by state appellate courts on the basis of their review of trial court records. *Treesh v. Bagley*, 612 F.3d 424, 430 n.1 (6th Cir. 2010); *Brumley v. Wingard*, 269 F.3d 629, 637 (6th Cir. 2001) (citing *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981)). To be an unreasonable determination of the facts, the evidence must be "too powerful to conclude anything but" the contrary of that reached by the state court. *Miller-El v. Dretke*, 545 U.S. 231, 265 (2005). A state court's factual findings are unreasonable if "reasonable minds reviewing the record" could not agree with them. *Brumfield v. Cain*, 135 S. Ct. 2269, 2277 (2015).

The State opposes any factual assertions made by Ogilvie that are not directly supported by—or consistent with—the state court record, because he has failed to overcome the presumption of factual correctness under 28 U.S.C. § 2254(e)(1) or meet the requirements of 28 U.S.C. § 2254(e)(2).

### B.   Procedural History[2]

Ogilvie was convicted by a jury of felonious assault and felony-firearm.  Following his convictions, but before sentencing, Ogilvie replaced trial attorney Matthew Kolodziejski with new attorney John Freeman.  Mr. Freeman obtained the trial transcripts and asked the court to adjourn sentencing because he said he spotted several issues in the case indicating that he would be seeking a new trial and bond pending sentencing.  (3/08/2010 Motion Hr'g at 3–8.)

Another hearing was held the next week where Freeman indicated that he wanted a hearing where trial counsel would testify.  (4/01/2010 Motion Hr'g at 3.)

Finally on April 16, 2010, the court went ahead with sentencing indicating that the motion for new trial could still be heard.  (4/16/2010, Sent. Tr.)  There were lengthy arguments about the propriety of the voir dire and the jury instructions.  (*Id*. at 10–28.)  The trial court denied the motion apparently with reference to the jury instructions issue, but

---

[2] The procedural history of this case is tortuous, even by habeas standards, especially for a case where the proofs were submitted in one day.  This history omits discussion of the activity, motions, argument and appeals with reference to appeal bonds because they are not at issue in the habeas petition.

stated that a *Ginther* hearing would be allowed in the future.  (*Id.* at 34.)  The trial court imposed a flat two-year term for the felony-firearm conviction and gave him three years' probation for the felonious assault. (*Id.* at 34–36.)

Ogilvie then replaced Mr. Freeman as his attorney with retained attorney James Lawrence.  Mr. Lawrence filed a timely appeal of right of Ogilvie's convictions and judgment of sentence on May 26, 2010, and continued prior counsel's pursuit of a new trial.  Lawrence called Rebecca Swanson as a witness at an evidentiary hearing on January 20, 2011.  (Evid. Hr'g 1/20/2011.)  Swanson had testified at trial.  (*Id.* at 5.) Swanson explained that she had called 911 at Ogilvie's request.  (*Id.* at 10.)  Some photographs and a transcript of the 911 call were admitted into evidence.  (*Id.* at 17–18, 31.)  The hearing was adjourned.  (*Id.* at 31.)

Meanwhile Ogilvie was charged with violating his probation (he had been out on an appeal bond during the pendency of the motion for new trial).  A hearing was held on March 11, 2011, where Lawrence was allowed to withdraw as counsel and then a probation violation hearing was held where attorney Jeremy Brand represented Ogilvie.  (Prob.

10

Viol. Hr'g 3/11/2011.)  Ogilvie was found guilty of violating his probation.  (*Id*. at 36–37.)

A hearing was held on April 7, 2011, where probation violation hearing attorney Mr. Brand was allowed to withdraw (before sentencing).  (4/7/2011 Hr'g at 3–9.)

A hearing for sentencing of Ogilvie for violating his probation occurred on April 21, 2011, where attorney James Schlaff represented Ogilvie.  (Prob. Viol. Sent. Tr. 4/21/2011.)  The trial court observed "the Defendant has had a lot of different attorneys on the case.  The Defendant has been in Court a lot of different times."  (*Id*. at 4.)  The sentencing was then adjourned.

Ogilvie was finally sentenced for his probation violation at a hearing held on April 29, 2011.  (Prob. Viol. Sent. Hr'g 4/29/2011.)  The trial court sentenced Ogilvie to 1-4 years for the felonious assault conviction noting that Ogilvie had engaged in "assaultive, intimidating, [and] threatening behavior" while on probation and did not adequately keep the probation department informed of his whereabouts.  (*Id*. at 19–20.)

Meanwhile, appellate attorneys Michael Mittlestat and Meredith Krause from SADO were appointed to represent Ogilvie with reference to his appeal, replacing Lawrence.  Mittlestat and Krause filed a supplemental motion for new trial and brief in support and then filed supplements.  A *Ginther* hearing was held where trial attorney Kolodziejski and SADO investigator Linda Borus testified.  (11/18/2012 Hr'g Tr.)  The *Ginther* hearing was continued on December 16, 2011, with SADO attorneys Mittlestat and Krause continuing to serve as Ogilvie's appellate attorneys.  (12/16/2011 Evid. Hr'g.)  A stipulation was entered as to what witness Jacki Goodrum would have testified to if she had been called.  (*Id*. at 4.)  The court entertained lengthy argument but ultimately denied relief finding that Ogilvie had failed to meet his burden of establishing that Kolodjeski was ineffective in his representation at trial.  (*Id*. at 47–51.)

Attorney Mittlestat then filed a motion to withdraw.  Mittlestat indicated that there had been a breakdown in the attorney-client relationship, paragraph 10, and he further stated, "Additionally, Defendant has indicated a desire to represent himself on appeal," paragraph 15.  The trial court subsequently granted SADO's request to

12

withdraw from representing Ogilvie on appeal in an order dated February 15, 2012.

Thereafter the presiding judge of Wayne County's Circuit Court's criminal division wrote Ogilvie a letter indicating he would be notified when a new appellate attorney had been appointed.  (2/10/2012 letter, Judge Timothy Kenny.)  Ogilvie sent a letter dated February 20, 2012, where he said, "Therefore, it was critical to my defense that I request the appellate counsel to be withdrawn, and for me to seek stand-by counsel." (2/20/2012 letter).  A March 1, 2012, letter from the Court of Appeals stated, "Please be advised that this Court does not appoint counsel in any capacity. All appointments are handled by the trial court and, as you know, that court has recently withdrawn the appointment of Mr. Mittlestat so you could proceed in pro se."  Other subsequent letters were sent by Ogilvie to the trial court asking whether appellate counsel was being assigned to him.  A substitute appellate attorney was never appointed after SADO was allowed to withdraw.

On May 9, 2012, the Court of Appeals granted Ogilvie additional time to prepare his brief.  When he expressed an inability to file his brief by the extended deadline, the appellate court granted him a

13

second extension on June 20, 2012.  When Ogilvie again indicated that he needed additional time, the Court granted a third extension on July 25, 2012.  Ogilvie was unable to file his brief by the end of that extended period but the appellate court still accepted his delayed brief for consideration.

Ogilvie ultimately filed a motion for peremptory reversal and a 47-page brief in support with dozens of appendices in the Michigan Court of Appeals raising seven issues.  The prosecutor filed a response and the Court of Appeals denied the motion because the Court was not persuaded of the existence of manifest error warranting peremptory relief without argument or formal submission.  *People v. Ogilvie*, Nos. 298302; 307897, Mich. Ct. App. Order (Aug. 27, 2012).

Ogilvie then filed a 50-page, 16-issue, pro per brief with the Court of Appeals with reference to his felony convictions and a separate 6-issue 50-page brief with many appendices relating to his probation violation and sentencing.  Ogilvie filed a motion to strike the prosecutor's briefs but it was denied.  *People v. Ogilvie*, Nos. 298302; 307897, Mich. Ct. App. Order (July 11, 2013).

The Court of Appeals affirmed Ogilvie's convictions and the probation violation finding in a 20-page single spaced unpublished opinion. *People v. Ogilvie*, 2013 WL 2278138.  Ogilvie filed a motion for reconsideration which was denied. *People v. Ogilvie*, Nos. 298302; 307897, Mich. Ct. App. Order (May 14, 2013).

Ogilvie subsequently filed an application for leave to appeal in the Michigan Supreme Court which raised 17 claims.  The Michigan Supreme Court denied the application because it was not persuaded that the questions presented should be reviewed by the Court. *People v. Ogilvie*, 839 N.W.2d 475 (Mich. Nov. 25, 2013) (unpublished table decision).

On April 8, 2014, Ogilvie wrote a letter to the trial court requesting relief.  The court treated the letter as a motion for relief from judgment, and on June 10, 2014, appointed appellate counsel under Mich. Ct. Rule 6.508(D)(3).  Attorney Rita White was appointed appellate counsel for purposes of filing a 6.500 motion.  Retained appellate counsel Mitchell Foster substituted for Ms. White.  Mr. Foster filed a motion to reissue the judgment.  After initially expressing concern at a hearing that Ogilvie had wanted to proceed on his own in

15

the Court of Appeals or waived or declined his right to appellate

counsel, the trial court entered an opinion and order invoking Mich. Ct.

Rule 6.428 and reissued the judgments so that Ogilvie could proceed

with a direct appeal of right. *People v. Ogilvie*, No. 09-025646-01-FH,

Wayne Cir. Ct. Order (Sept. 18, 2014).

Appellate counsel Mr. Foster filed claims of appeal in the

Michigan Court of Appeals as to each of the reissued judgments.  On

November 6, 2014, the Court of Appeals dismissed Mr. Ogilvie's claims

of appeal for lack of jurisdiction because the reissuance of the

judgments of sentences were "not a final order as defined in MCR

7.202(6)." *People v. Ogilvie*, Nos. 324327, 324328, Mich. Ct. App. Orders

(Nov. 6, 2014).

Ogilvie moved for reconsideration in both cases but the Court of

Appeals denied the motions stating, "Restarting the time to file an

appeal of right under MCR 6.428 is only appropriate when "the

defendant did not appeal within the time allowed by MCR 7.204(A)(2);

the rule does not apply when the defendant has already pursued an

appeal to conclusion in this Court." *People v. Ogilvie*, Nos. 324327,

324328, Mich. Ct. App. Orders (Jan. 16, 2015).

16

Ogilvie next filed an application for leave to appeal in the Michigan Supreme Court arguing he was entitled to file a claim of appeal and that Rule 6.428 was not the only avenue for a defendant to have his judgment reissued, especially where the defendant was denied appellate counsel on direct appeal.  The Michigan Supreme Court denied relief because it was not persuaded that the questions presented should be reviewed by the Court.  *People v. Ogilvie*, 868 N.W.2d 625 (Mich. Sept. 9, 2015) (unpublished table decision).

Ogilvie, represented by newly retained counsel Jennifer Qonja, filed his habeas petition a little over six months later on March 18, 2016.

According to OTIS, Ogilvie was discharged from parole in June of 2016.

## STANDARD OF REVIEW PURSUANT TO AEDPA

Congress mandated the standards of review in federal habeas proceedings in 1996 in the Antiterrorism and Effective Death Penalty Act (AEDPA).  Recognizing the foundational principle that "[s]tate courts are adequate forums for the vindication of federal rights," "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court."  *Burt v. Titlow*, 134 S. Ct. 10, 15, 16 (2013); 28 U.S.C. § 2254(d).

Federal law permits a prisoner held "in custody pursuant to the judgment of a State court" to seek habeas relief "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  More specifically pursuant to § 2254, the Court may not grant a state prisoner's application for the writ of habeas corpus unless the state court's adjudication of the prisoner's claims on the merits:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

This standard is "intentionally difficult to meet." *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (quotation marks omitted).

With respect to § 2254(d)(1), a state court decision is "contrary to" federal law only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Metrish v. Lancaster*, 133 S. Ct. 1781, 1786 n.2 (2013) (internal quotation marks and citation omitted). A state court decision involves an unreasonable application of clearly established Federal law pursuant to § 2254(d)(1) if "the state-court decision identifies the correct governing legal principle in existence at the time," but "unreasonably applies that principle to the facts of prisoner's case." *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011) (internal quotation marks and citation omitted).  Where "[n]o precedent of [the Supreme Court] clearly forecloses" a state court's ruling, it simply cannot be an unreasonable application of Supreme Court precedent. *Woods v. Etherton*, 136 S. Ct. 1149, 1152 (2016) (per curiam).  A habeas petitioner cannot prevail as long as it is within the "realm of possibility"

19

that fairminded jurists could find the state court decision to be reasonable. *Woods*, 136 S. Ct. at 1152.

"Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta," of the Supreme Court's decisions. *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (internal quotations and citations omitted). "And an unreasonable application of those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice." *Id.*

AEDPA restricts the body of law a habeas court may consider. By its terms AEDPA limits the source of law to Supreme Court precedent interpreting the Constitution. 28 U.S.C. § 2254(d)(1). Thus, Supreme Court decisions not based on constitutional grounds, *e.g.*, decisions based on the Court's supervisory powers, are "off the table as far as § 2254(d) is concerned." *Early v. Packer*, 537 U.S. 3, 10 (2002). *See, e.g., Rushen v. Spain*, 464 U.S. 114, 119 n.4 (1983), characterizing *Shields v. United States*, 273 U.S. 583 (1927), as resting on "non-constitutionally based rules of orderly trial procedure." *See also Buelas v. Wolfenbarger*, 580 F.3d 403, 407 (6th Cir. 2009) (noting that *Castro v. United States*, 540 U.S. 375 (2003), was decided as a matter of the Supreme Court's

supervisory power over the lower federal courts, and is not binding on the state courts).

Further, "clearly established Federal law" does not include statements in plurality opinions. When the Supreme Court issues a plurality opinion, i.e., an opinion where no single rationale explaining the result enjoys the assent of five Justices, the "clearly established federal law" for purposes of § 2254(d) is the position "taken by those Members who concurred in the judgments on the narrowest grounds." *See Panetti v. Quarterman*, 551 U.S. 930, 949 (2007), citing *Marks v. United States*, 430 U.S. 188, 193 (1977).

Moreover, under § 2254(d)(1), the relevant Supreme Court precedent includes only the decisions in existence "as of the time the state court renders its decision." *Greene v. Fisher*, 132 S. Ct. 38, 44 (2011) (internal quotation marks and emphasis omitted); *see also Pinholster*, 563 U.S. at 182 ("State-court decisions are measured against [the Supreme] Court's precedents as of the time the state court renders its decision.") (internal quotation marks omitted).

Under § 2254(d)(2), the "unreasonable determination" clause, "a state-court's factual determination is not unreasonable merely because

21

the federal habeas court would have reached a different conclusion in the first instance." *Titlow*, 134 S. Ct. at 15 (internal quotation marks and citation omitted). "Under AEDPA, if the state-court decision was reasonable, it cannot be disturbed." *Hardy v. Cross*, 132 S. Ct. 490, 495 (2011) (per curiam).

"[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks and citations omitted). This means that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* Instead, the state court's "application must be objectively unreasonable." *Id.* That distinction creates "a substantially higher threshold" to obtain relief than de novo review. *Id.* A state court's decision is not an unreasonable application of clearly established law unless it is "objectively unreasonable, not merely wrong; even clear error will not suffice." *White*, 134 S. Ct. at 1702 (citation and quotation marks omitted). A habeas petitioner cannot prevail as long as it is

within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *Etherton*, 136 S. Ct. at 1152.

"It is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (internal quotation marks and citation omitted). And federal court of appeals precedent cannot "refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that [the Supreme] Court has not announced." *Marshall v. Rodgers*, 133 S. Ct. 1446, 1450 (2013) (per curiam) (citation omitted); *see also Lopez v. Smith*, 135 S. Ct. 1, 4 (2014) (providing that absent a decision by the Supreme Court addressing "the specific question presented by [a] case" a federal court cannot reject a state court's assessment of claim). And, as the Supreme Court recently held, where no Supreme Court cases confront "the specific question presented" by the habeas petitioner, "the state court's decision [cannot] be contrary to any holding from this Court." *Woods v. Donald*, 135 S. Ct. 1372, 1377 (2015) (per curiam) (internal quotation marks and citation omitted).

Further, the Supreme Court has specifically warned habeas courts that, "[b]y framing [Supreme Court] precedents at [too] high [a] level of generality, [it] could transform even the most imaginative extension of existing case law into clearly established Federal law, as determined by the Supreme Court." *Nevada v. Jackson*, 133 S. Ct. 1990, 1994 (2013) (per curiam). That "approach would defeat the substantial deference that AEDPA requires" be given to state-court decisions. *Id*.

The burden of providing a habeas petitioner with a new trial "should not be imposed unless *each* ground supporting the state court decision is examined and found to be unreasonable under AEDPA." *Wetzel v. Lambert*, 132 S. Ct. 1195, 1199 (2012) (emphasis in original). Moreover, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Harrington*, 562 U.S. at 102. This standard protects against intrusion of federal habeas review upon "both the States' sovereign power to punish

offenders and their good-faith attempts to honor constitutional rights." *Id*. at 103 (internal quotation marks and citation omitted).

A federal court must refrain from issuing a writ "so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (internal quotation marks and citation omitted). To clear the § 2254(d) hurdle, a habeas petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 103. "If this standard is difficult to meet, that is because it was meant to be." *Id*. at 102.

The Supreme Court has also instructed habeas courts to apply a rebuttable presumption that a "federal claim was adjudicated on the merits" even "[w]hen a state court rejects a federal claim without expressly addressing that claim." *Johnson v. Williams*, 133 S. Ct. 1088, 1096 (2013). *See also Kernan v. Hinojosa*, 136 S. Ct. 1603, 1606 (2016) (per curiam) ("Containing no statement to the contrary, the Supreme Court of California's summary denial of Hinojosa's petition was therefore on the merits."). "[S]tate-court decisions [must] be given the

25

benefit of the doubt." *Pinholster*, 563 U.S. at 181 (internal quotation marks and citation omitted).  "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunction in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington*, 562 U.S. at 102-03 (internal quotation marks and citation omitted).  "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  562 U.S. at 102 (citation omitted).

Finally, the petitioner's burden is made even heavier by the fact that a federal court is "limited to the record that was before the state court that adjudicated the claim on the merits." *Pinholster*, 563 U.S. at 181.

# ARGUMENT

**I.   The state appellate court failure to grant Ogilvie relief on his claim that he was denied an appellate attorney on direct appeal where the circuit court failed to appoint a substitute appellate attorney after three appellate attorneys were allowed to withdraw was not contrary to or an unreasonable application of Supreme Court precedent.**

Ogilvie's first habeas claim is that he was denied his right to the assistance of appellate counsel in his direct appeal.

After losing his direct appeal Ogilvie sent the trial court a letter that it treated as a motion for relief from judgment.  The trial court concluded Ogilvie had been denied his right to an appellate attorney during his direct appeal and reissued Ogilvie's judgments so he could take up a new appeal on the basis of Mich. Ct. Rule 6.428.  *People v. Ogilvie*, No. 09-025646-01-FH, Wayne Cir. Ct. Opinion and Order (Sept. 18, 2014).

But, when Ogilvie filed a new appeal in the Michigan Court of Appeals it denied him relief.  The Court of Appeals initially dismissed the appeal for lack of jurisdiction, but on reconsideration it held Mich. Ct. Rule 6.428 did not authorize restarting the time to file an appeal, and did not apply to Ogilvie because he had pursued his appeal to

27

conclusion in the Michigan Court of Appeals.  *People v. Ogilvie*, Nos.
324327, 324328, Mich. Ct. App. Orders (Jan. 16, 2015).

The appellate court refusal to grant Ogilvie a new direct appeal
with appointed counsel did not contradict or unreasonably apply
Supreme Court case law.

### Clearly established federal law

"[T]he Constitution does not require States to grant appeals as of
right to criminal defendants."  *Evitts v. Lucey*, 469 U.S. 387, 393 (1985).
*Accord Lafler v. Cooper*, 132 S. Ct. 1376, 1387 (2012) (stating that "the
Constitution does not require States to provide a system of appellate
review").  But, "each State has created mechanisms for both direct
appeal and state postconviction review, even though there is no
constitutional mandate that they do so."  *Lackawanna Cnty. Dist.*
*Attorney v. Coss*, 532 U.S. 394, 402 (2001) (citation omitted).

A defendant's right to counsel on appeal derives not from the
Sixth Amendment, but from the Due Process and Equal Protection
Clauses of the Fourteenth Amendment.  *See Martinez v. Court of Appeal*
*of Cal.*, 528 U.S. 152, 160–61 (2000) (explaining that the right to
appellate counsel is based on the Fourteenth Amendment and that "the

28

Sixth Amendment does not apply to appellate proceedings"); *Evitts v. Lucey*, 469 U.S. 387, 392 (1985) (citing *Douglas v. California*, 372 U.S. 353 (1963) (grounding right to appellate counsel in Fourteenth Amendment).

In *Penson v. Ohio*, 488 U.S. 75 (1988), the Supreme Court essentially held that the "prejudice" component of *Strickland* is not applicable when an appellate lawyer fails either to file a brief or to seek to withdraw under the standard set forth in *Anders v. California*, 386 U.S. 738 (1967).  *See also Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000), where the Court held that appellate counsel's failure to file a notice of appeal, which resulted in the complete denial of an appeal the defendant would have otherwise taken, warranted a presumption of prejudice and resulted in the denial of the right to the effective assistance of counsel.  *Id.* at 483–84.  *See also Evitts v. Lucey*, 469 U.S. 387 (1985) (defendant entitled to new appeal when counsel's deficient failure to comply with local court rules led to dismissal of first appeal).

If ineffective assistance of appellate counsel is shown, the prevailing habeas petitioner is entitled to a new direct appeal, not a new trial.  *See Evitts*, 469 U.S. at 403 (defendant entitled to new appeal

when counsel's deficient failure to comply with local court rules led to dismissal of first appeal); *Mapes v. Tate*, 388 F.3d 187, 194–95 (6th Cir. 2004) (affirming habeas relief of new state-court appeal for ineffective assistance of appellate counsel, and rejecting petitioner's request for ruling on underlying sentencing issue as "go[ing] far beyond neutralizing the constitutional deprivation suffered by the defendant" (internal quotation marks and alterations omitted).); *Hardaway v. Robinson*, 655 F.3d 445, 451 (6th Cir. 2011) (remanding matter "to the district court with instructions to issue a conditional writ directing the state to afford [petitioner] a direct appeal").

**Discussion**

First, habeas counsel for Ogilvie mistakenly asserts that Ogilvie's *Sixth* Amendment right to effective assistance of appellate counsel was violated. In fact, in *Martinez*, 528 U.S. at 160–61, the Supreme Court explained that the right to appellate counsel is based on the Fourteenth Amendment and that "*the Sixth Amendment does not apply to appellate proceedings*." (emphasis added). *See further Tamalini v. Stewart*, 249 F.3d 895 (9th 2001) ("*Martinez* clarifies that the Sixth Amendment is applicable only to trials, not to appeals."). Thus, Ogilvie's right to the

effective assistance of appellate counsel is found in the 14th Amendment, and not the 6th Amendment.

**Summary of clearly established law**

If a defendant is convicted after trial, and he is genuinely indigent, and he makes a timely request,[3] and he does not engage in actions waiving or forfeiting the right,[4] then such a defendant has a

---

[3] Mich. Ct. R. 6.425(G)(1)(b) requires an indigent defendant *convicted following a trial* to file his request for appellate counsel within 42 days after sentencing or within the time for filing an appeal of right. An indigent defendant's right to appointed counsel is not violated if a state trial judge refuses to appoint appellate counsel because the request was filed late. *See Mason v. Davis*, 2007 WL 1582214 (W.D. Mich. May 31, 2007); *Kirkland v. Lafler*, 2008 WL 5111847 (E.D. Mich. 2008); *Lee v. Burt*, 2011 WL 2580642, *4 (E.D. Mich. June 29, 2011); *See also People v. McCoy*, 483 Mich. 898; 761 N.W.2d 100 (2009) (denial of appointed appellate counsel on the basis of the defendant's failure to comply with the 42 day deadline for requesting counsel in Mich. Ct. Rule 6.425(G)(1)(c) does not violate *Halbert*.).

[4] Under the fugitive disentitlement doctrine a direct appeal will be dismissed for a defendant who flees the jurisdiction or absconds from parole during the appeals process. *United States v. Ortega-Rodriguez*, 507 U.S. 234, 239 (1993); *United States v. Lanier*, 123 F.3d 945, 946 (6th Cir. 1997) (en banc). Moreover, as explained in *Utah v. Allgier*, 353 P.3d 50 (Utah 2015), a defendant forfeits his right to counsel on direct appeal by engaging in persistent dilatory and threatening conduct.

right to the appointment of an appellate attorney to aid him in his first appeal of right in the Michigan Court of Appeals, i.e., first-tier review.[5]

If all conditions are met, a defendant would be entitled to relief of a new appeal with the effective assistance of appointed appellate counsel if either (1) the state does not appoint an appellate attorney and the defendant is forced to file an appeal brief pro per raising issues his non-lawyer eyes assert–rather than issues spotted by an appellate attorney; or as more commonly happens, (2) the state appoints appellate counsel, but due to deficient performance, e.g., failing to file a notice of appeal or a brief, the appellate court dismisses the appeal without a review of the merits.[6]

Here Ogilvie asserts it was not appellate attorney error, but rather Court error that caused him to lose his appeal of right with the assistance of appellate counsel.

---

[5] As the Supreme Court explained in *Halbert v. Michigan*, 545 U.S. 605, 610 (2005) ("The Federal Constitution imposes on the States no obligation to provide appellate review of criminal convictions.  Having provided such an avenue, however, a State may not bolt the door to equal justice to indigent defendants.") (citation omitted).

[6] *See Penson v. Ohio*, 488 U.S. 75 (1988); *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000); *Evitts v. Lucey*, 469 U.S. 387 (1985).

The trial court found that Ogilvie was entitled to a new appeal under Mich. Ct. Rule 6.428.  The Michigan Court of Appeals, however, reversed, and in its order denying reconsideration noted that this Court rule does not apply to when a defendant has already pursued an appeal to conclusion in the Michigan Court of Appeals as Ogilvie had.  The Michigan Court of Appeals' reading of this state court rule is binding on this Court.  *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).

Thus, the only question is whether the Court of Appeals adjudication that it did not violate the federal constitution to deny Ogilvie a new direct appeal "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012).

First, it is questionable whether Ogilvie was indigent.  The record shows Ogilvie was employed as an engineer and retained several of the many attorneys who represented him.  Mr. Lawrence was retained as was Mr. Foster and presumably current counsel Ms. Quona is also retained.

33

Second, there is some question whether Ogilvie really wanted appellate counsel. Recall, SADO's motion to withdraw specifically asserted: "Additionally, Defendant has indicated a desire to represent himself on appeal," paragraph 15 of motion to withdraw. While the Supreme Court has held that there is no federal constitutional right to represent oneself on appeal, *Martinez v. Court of Appeal of Cal.*, 528 U.S. 152, 163 (2000), Michigan case law recognizes such a right. *See People v Stephens*, 71 Mich. App. 33, 38; 246 N.W.2d 429, 432 (1976) ("the trial court erred in refusing to allow the defendant to prosecute his appeal in pro per").

Third, while Ogilvie accuses the state of denying him an appellate counsel outright, such is not the case. In actuality, Ogilvie had three post-conviction attorneys represent him as part of his direct appeal. After conviction, but before sentencing, Ogilvie was represented by John Freeman, who sought a new trial. Freeman filed a combined motion and brief in support of a new trial that was 21 pages long.

Then Ogilvie was represented by appellate attorney James Lawrence, who filed a timely appeal of right of Ogilvie's convictions and judgment of sentence on May 26, 2010, and continued prior counsel's

pursuit of a new trial.  Lawrence filed a document entitled "motions for new trial, evidentiary hearings, or judgment notwithstanding the verdict" that was 45 pages long.

After Lawrence was allowed to withdraw Ogilvie was represented by two appellate attorneys from SADO (Mr. Mittlestat and Ms. Krause). Mittlestat filed a supplemental motion for new trial and a supplemental brief in support that was 20 pages long.

Thus, the record clearly shows Ogilvie was represented seriatim by a trio of experienced appellate attorneys each of whom had a copy of the trial transcript.  Each appellate attorney filed and argued a motion for a new trial in the trial court with lengthy supporting memorandums where issues were spotted, framed, researched and briefed.  Each of these three appellate attorneys presented argument at court hearings, and two of the three presented witnesses at two separate evidentiary hearings.

Thus, the only time Ogilvie was lacking an appellate attorney was when he filed his merits briefs in the Michigan Court of Appeals.  But those briefs were largely based on arguments and briefs the three

appellate attorneys had filed in the trial court as part of Ogilvie's post-conviction review.

Under such unique circumstances there is room for debate about whether Ogilvie was denied appellate counsel. Unlike the cases where the Supreme Court has granted relief, Ogilvie did not face a record unreviewed by appellate counsel and without an appellate attorney's brief that argued issues (although here those briefs were filed in the trial court). In actuality, Ogilvie had the benefit of three separate appellate attorneys reviewing the transcript of his trial, spotting and framing issues, researching legal issues, and preparing motions and detailed briefs seeking a new trial reflecting that review and research.

Here, the services of a fourth appellate attorney was not necessary to present an appeal in a form suitable for appellate consideration on the merits. Nor is this a situation where the actual brief Ogilvie submitted was seriously flawed or defective. Rather, as a trained engineer, Ogilvie, piggy backing on what earlier appellate counsel had argued and briefed, was able to file two merit briefs of substantial quality raising substantial issues. While many pro per defendants may

be legally illiterate, or perhaps even learning disabled, that was not the situation here.[7]

If Ogilvie had never had an appellate attorney he would be entitled to a new direct appeal with the benefit of effective appellate counsel.  But, Ogilvie is not such a defendant.  Rather Ogilvie, an obviously intelligent defendant, had three appellate attorneys review the trial transcript, spot issues and prepare motions, briefs, and call witnesses at evidentiary hearings.  The only thing Ogilvie lacked was an appellate attorney to file his merits briefs.  The Supreme Court has never had a case anything like this.  *See Metrish v. Lancaster*, 133 S. Ct. 1781, 1792 (2013) ("This Court has never found a due process violation in circumstances remotely resembling Lancaster's case.").  Absent more specific guidance from the Supreme Court, fairminded jurists could vary in assessing whether Ogilvie was denied appellate counsel on direct appeal.  The state appellate court was well within its rights not to

---

[7] For comparison's sake consider Omar Pouncy, who, without the benefit of a college degree, was described by this Court as being capable of providing "quality work as a paralegal" and had demonstrated "mastery of complex issues of habeas procedure and constitutional law." *Pouncy v. Palmer*, ECF. 23, No. 13-cv-14695, Opinion and Order, at *27, n.12 (E.D. Mich. March 4, 2016).

extend existing Supreme Court case law to the unique facts before it. *See Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004) ("if a habeas court must extend a rationale before it can apply to the facts at hand then the rationale cannot be clearly established at the time of the state-court decision); *White v. Woodall*, 134 S. Ct. 1697, 1706 (2014) ("this Court has never adopted the unreasonable refusal-to-extend rule on which respondent relies. . . .  Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably *applies this Court's precedent*; it does not require state courts to *extend* that precedent or license federal courts to treat the failure to do so as error.")  AEDPA does not allow for breaking new ground.  *Dewald v Wrigglesworth*, 748 F.3d 295, 300 (6th Cir. 2014).  *See also O'Neal v. Bagley*, 743 F.3d 1010, 1018 (6th Cir. 2013) ("it is not sufficient for [petitioner] to show merely that his application of the relevant U.S. Supreme Court precedent is more plausible than the state court's application—he must demonstrate that precedent requires his preferred outcome.")

Consequently, habeas relief is not available for this claim.

**II.    Consideration of Ogilvie's stand-alone jury instruction claim is barred by waiver/procedural default because the Michigan Court of Appeals denied relief on the basis of waiver which extinguished any error.**

Ogilvie's second habeas claim is that it was error to instruct the jury on self-defense with the element of deadly force and to instruct on his duty to retreat and that these instructions violated his right to a fair trial.

The Michigan Court of Appeals considered and denied this claim on the basis of waiver by applying the correct constitutional standard in a manner that was not objectively unreasonable:

### D. JURY INSTRUCTIONS

Defendant also challenges the trial court's jury instructions. We agree with the trial court that defendant waived his substantive claim of instructional error because defense counsel expressly requested the challenged jury instruction and thereafter expressed his satisfaction of the instructions as given. See *People v. Kowalski*, 489 Mich. 488, 503; 803 NW2d 200 (2011); *People v. Jones*, 468 Mich. 345, 352 n. 6; 662 NW2d 376 (2003). A waiver extinguishes any error. *Kowalski*, 489 Mich. at 503. Accordingly, any entitlement to relief with respect to this issue must be evaluated in the context of an ineffective assistance of counsel claim, which we have concluded in section II(B) defendant is unable to establish.

*People v. Ogilvie*, 2013 WL 2278138 at *10.

This adjudication neither contradicts nor unreasonably applies Supreme Court case law.

**Clearly established federal law**

Waiver is an "intentional relinquishment of a known right." *United States v. Olano*, 507 U.S. 725, 733 (1993). "One who waives his rights under a rule may not then seek appellate review of claimed deprivation of those rights, for his waiver has extinguished any error." *United States v. Griffin*, 84 F.3d 912, 924 (7th Cir. 1996) (citing *Olano*, 507 U.S. at 733-34).

**Discussion**

Because Ogilvie waived this claim, he cannot seek review of the claim. This is because the error was extinguished. *See Shahideh v. McKee*, 488 F. App'x 963, 965 (6th Cir. 2012) ("waiver is a recognized, independent and adequate state law ground for refusing to review alleged trial errors"). *See also United States v. Aparco-Centeno*, 280 F.3d 1084, 1088 (6th Cir. 2002) ("An attorney cannot agree in open court with a judge's proposed course of conduct and then charge the court with error in following that course."); *Reed v. Ross*, 468 U.S. 1, 13, 14 (1984) (defense counsel may not "use the prospect of federal habeas

corpus relief as a hedge against the strategic risks he takes in his client's defense in state court").

### Procedural default

Although waiver of an issue goes beyond a procedural default by actually extinguishing error, what occurred here is alternatively a procedural default. *See Cordell v. Warren*, No. 5:07-cv-10830, 2007 WL 4287543, at *3 (E.D. Mich. Dec. 5, 2007) (O'Meara, J.) (citing *McKissic v. Birkett*, 200 F. App'x 463, 471 (6th Cir. 2006)).

A procedural default is "a critical failure to comply with state procedural law." *Trest v. Cain*, 522 U.S. 87, 89 (1997). Under the doctrine of procedural default, "a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule." *Martinez v. Ryan*, 132 S. Ct. 1309, 1316 (2012). A habeas petitioner procedurally defaults a claim if: (1) the petitioner fails to comply with a state procedural rule; (2) the state courts enforce the rule; (3) the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim; and (4) the

petitioner cannot show cause and prejudice excusing the default. *Guilmette v. Howes*, 624 F.3d 286, 290 (6th Cir. 2010) (en banc).

In this case, Ogilvie's jury instruction claim is procedurally defaulted because the state appellate court refused to consider the merits of the claim on account of waiver. Ogilvie failed to comply with a state procedural rule that requires a defendant to object to any jury instruction he opposes. In order to preserve for appellate review an issue regarding the substance of a jury instruction, a party must timely object. Mich. Ct. Rule 2.516(C). The last state court to issue a reasoned opinion on his claim was the Michigan Court of Appeals and it denied relief because Ogilvie's counsel failed to object to the judge's instructions. This reason for denying relief constitutes a procedural default.

A State prisoner who fails to comply with a State's procedural rule waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *Ogilvie v. Thompson*, 501 U.S. 722, 748-50 (1991) limited in part by *Martinez v. Ryan*, 132 S. Ct. 1309, 1319 (2012); *Gravley v. Mills*,

42

87 F.3d 779, 784-85 (6th Cir. 1996). To establish cause, a petitioner must establish that some external impediment frustrated his ability to comply with the state's procedural rule. *See, e.g.*, *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Haliym v. Mitchell*, 492 F.3d 680, 690–91 (6th Cir. 2007). A petitioner must present a substantial reason to excuse the default. *Rust v. Zent*, 17 F.3d 155, 161 (6th Cir. 1994); *see also Amadeo v. Zant*, 486 U.S. 214, 222–23 (1988) (reviewing a claim that a document was concealed by officials).

Attorney error rising to the level of ineffective assistance of counsel can establish cause. *Edwards v. Carpenter*, 529 U.S. 446, 451–52 (2000); *McCleskey v. Zant*, 499 U.S. 467, 493–94 (1991). While Ogilvie alleges trial counsel was ineffective, this claim is without merit for the reasons that follow in the discussion of the claim that trial counsel was ineffective. Thus, neither cause nor prejudice exists to excuse the procedural default.

In the absence of "cause and prejudice," a petitioner can prevail on his procedurally defaulted claim only if he demonstrates that the failure to consider his claim will result in a fundamental miscarriage of justice. *Ogilvie*, 501 U.S. at 750. But, the narrow exception for fundamental

miscarriages of justice is reserved for the extraordinary case in which the alleged constitutional error probably resulted in the conviction of one who is actually innocent of the underlying offense. *Dretke v. Haley*, 541 U.S. 386, 388 (2004); *Carrier*, 477 U.S. at 496. A claim of actual innocence "requires [the] petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). To show that his case is the "extraordinary" one warranting application of this exception, Ogilvie must demonstrate "that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Schlup*, 513 U.S. at 321, 327. Ogilvie has not presented any new, reliable evidence in support of a claim of actual innocence.

Under such circumstances, a miscarriage of justice will not occur as a result of the Court's failure to consider the substantive merits of Ogilvie's jury instruction claim. Consideration of this claim is thus barred by waiver or unexcused procedural default.

Consequently, habeas relief is not available for this claim.

## III. Under the highly deferential standards of *Darden v. Wainwright* and 28 U.S.C. § 2254(d), the state court determination that Ogilvie was not denied a fair trial by prosecutor misconduct was not objectively unreasonable.

Ogilvie's third habeas claim is misconduct of the prosecutor (1) arguing that Ogilvie used deadly force and had a duty to retreat when Ogilvie did not use deadly force and also had no duty to retreat, and (2) in failing to produce exculpatory evidence; (3) during closing and rebuttal arguments, the prosecutor made misstatements of Michigan's self-defense law, mischaracterized evidence of Ogilvie pointing a gun as deadly force, and wrongfully suggested that Ogilvie had a duty to retreat, when in fact, under Michigan law, pointing a gun is not deadly force, and therefore he had no duty to retreat; and (4) the prosecution failed to provide the defense with the exculpatory and admissible evidence of the 911 calls to the police, which contradicted witness testimony, and was crucial to his valid claim of self-defense because both callers believed the neighbor who attacked Ogilvie had a gun.

The Michigan Court of Appeals considered and denied this claim on the merits by applying the correct constitutional standard in a manner that was not objectively unreasonable:

## C. PROSECUTORIAL MISCONDUCT

Defendant argues that misconduct by the prosecutor during closing and rebuttal arguments requires a new trial. Defendant concedes that there was no objection to the prosecutor's conduct, leaving this issue unpreserved. Accordingly, defendant bears the burden of establishing plain error affecting his substantial rights. See *People v. Carines*, 460 Mich. 750, 763; 597 NW2d 130 (1999); *People v. Fyda*, 288 Mich.App 446, 460–461; 793 NW2d 712 (2010). The general test for prosecutorial misconduct is whether the defendant was denied a fair and impartial trial. *Id*. at 460. Although defendant asserts that the prosecutor's alleged misconduct violated his constitutional rights, not all claims of prosecutorial misconduct are constitutional in nature. *People v. Blackmon*, 280 Mich.App 253, 259; 761 NW2d 172 (2008). "Where there is no allegation that prosecutorial misconduct violated a specific constitutional right, a court must determine whether the error so infected the trial with unfairness as to make the resulting conviction a denial of due process of law." *Id*. at 262. Where it is claimed that the prosecutor infringed upon a specific constitutional right, "courts take special care to ensure that the prosecutor in no way infringes upon that specific constitutional right." *Id*. at 261.

Defendant argues that the prosecutor misstated the evidence in her closing argument. A prosecutor is free to argue the evidence and all reasonable inferences from the evidence as it relates to the prosecutor's theory of the case. *People v. Unger*, 278 Mich.App 210, 236; 749 NW2d 272 (2008). But a prosecutor may not make a statement of fact to the jury that is unsupported by the evidence. *Id*. at 241. The prosecutor is not required to state her argument in the blandest possible terms. *People v. Dobek*, 274 Mich.App 58, 66; 732 NW2d 546 (2007). Although defendant relies on the testimony of witness Rebecca Swanson to argue that the prosecutor misstated the evidence relative to the victim's physical location during the offense, the victim's location was the

46

subject of conflicting testimony at trial. The prosecutor was permitted to argue the evidence as it related to her theory of the case, and we are not persuaded that the prosecutor misstated the evidence. Further, the trial court protected defendant's substantial rights by instructing the jury that the lawyers' statements and arguments are not evidence. Jurors are presumed to follow their instructions. *Unger*, 278 Mich.App at 235.

Defendant also appears to argue that the prosecutor improperly characterized him as "trigger happy" in her closing argument. Examined in context, however, the prosecutor was questioning whether defendant had any reason to believe that the victim would be "trigger-happy" while approaching defendant armed with a gun. The prosecutor stated, "Is it reasonable to believe that your neighbor, your neighbor that let your kids play on their swing set is going to be packed locked and loaded like [defendant] was, ready to pull that gun and be trigger happy?" Considering defendant's claim of self-defense, it was not improper for the prosecutor to comment on the reasonableness of defendant's asserted belief that the victim might have a gun.

Defendant also argues that the prosecutor misstated the law concerning his duty to retreat. To the extent that the prosecutor's remark could have been interpreted as inaccurately suggesting that defendant had a duty to retreat from a place where he had a legal right to be, see MCL 780.972(1), any misleading effect was cured by the trial court's accurate instructions to the jury on the duty to retreat. See *People v. Grayer*, 252 Mich.App 349, 357; 651 NW2d 818 (2002).

Next, to the extent that the prosecutor mischaracterized defendant's act of pointing a gun at the victim as involving the use of deadly force, rather than a threat of deadly force, in her closing and rebuttal arguments, the error was not outcome-determinative. The principal issue for the jury to

resolve was whether defendant honestly and reasonably believed that it was necessary to pull out and point his gun at the victim to avoid a threat of imminent harm. Therefore, any error does not require reversal.

Lastly, we find no support in the record for defendant's assertion that the prosecutor improperly suggested that a person cannot lawfully possess a gun or that the prosecutor deceived the jury into believing that possession of a gun was sufficient to convict him of felonious assault and felony-firearm. We also reject defendant's argument that the prosecutor's closing argument regarding the law on self-defense was the equivalent of expert testimony, which deprived him of his constitutional right to confront the witnesses against him because he did not have the opportunity to confront or cross-examine the prosecutor. It can be presumed that the jury followed the trial court's instruction that the lawyers' statements are not evidence. *Unger*, 278 Mich.App at 235.

*People v. Ogilvie*, 2013 WL 2278138 at *9–10.

This state court decision aligns squarely within clearly established federal law standards and did not unreasonably apply Supreme Court precedent.  28 U.S.C. § 2254(d)(1).

## Procedural default

This issue is procedurally defaulted because the Michigan Court of Appeals reviewed it for plain error.  *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001).  *See also Fleming v. Metrish*, 556 F.3d 520, 532 (6th Cir. 2009), which held that federal constitutional claims reviewed for plain error by a state court are claims adjudicated on the merits and are

48

entitled to review under AEDPA standards. *Accord Bond v. McQuiggan*, 506 F. App'x 493, 498 n.2 (6th Cir. Nov. 29, 2012); *Brooks v. Bagley,* 513 F.3d 618, 624–25 (6th Cir. 2008) (AEDPA deference standard of 28 U.S.C. § 2254(d) applies when a state court decides a claim on procedural grounds and, alternatively, on the merits.); *Douglas v. Workman*, 560 F.3d 1156, 1171, 1177–79 (10th Cir. 2009); *Commissioner, Alabama Dept. of Corrections*, 726 F.3d 1172, 1210 (11th Cir. 2013); *Barnett v. Roper*, 541 F.3d 804, 813–14 (8th Cir. 2008). While there is some contrary dicta in *Frazier v. Jenkins*, 770 F.3d 485, 497 n.5 (6th Cir. 2014), the earlier of two conflicting published panel decisions is controlling. *See Darrah v. City of Oak Park*, 255 F.3d 301, 309 (6th Cir. 2001).

Nor does a state court fail to sufficiently rely upon a procedural default by ruling on the merits in the alternative. *See McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991). And the contemporaneous-objection rule is an adequate and independent state ground for the state court's decision because the rule was "firmly established and regularly followed" before Ogilvie's trial. *Rogers v.*

*Howes*, 144 F.3d 990, 992 (6th Cir. 1998) (quoting *Ford v. Georgia*, 498 U.S. 411, 423–24 (1991)).

"Out of respect for finality, comity, and the orderly administration of justice, a federal court will not entertain a procedurally defaulted constitutional claim in a petition for habeas corpus absent a showing of cause and prejudice to excuse the default." *Dretke v. Haley*, 541 U.S. 386, 388 (2004). *See also Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991).

Under limited circumstances (which do not exist here), counsel's ineffectiveness *can* serve as cause to excuse the state-court procedural default of other constitutional claims. *Wogenstahl v. Mitchell*, 668 F.3d 307, 321–22 (6th Cir. 2012). But, it does not do so here because the issue has not been shown to have merit. *See Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001) (Because none of the underlying claims is meritorious, ineffective assistance of appellate counsel does not excuse the procedural default.).

Alternatively, Ogilvie may avoid procedural default if he can demonstrate that a fundamental miscarriage of justice will occur as a result of the Court's failure to consider the substantive merits of this

50

claim.  *Coleman*, 501 U.S. at 750.  The narrow exception for

fundamental miscarriages of justice is reserved for the extraordinary

case in which the alleged constitutional error probably resulted in the

conviction of one who is actually innocent of the underlying offense.

*Dretke*, 541 U.S. at 388; *Carrier*, 477 U.S. at 496.  A claim of actual

innocence "requires [the] petitioner to support his allegations of

constitutional error with new reliable evidence – whether it be

exculpatory scientific evidence, trustworthy eyewitness accounts, or

critical physical evidence – that was not presented at trial."  *Schlup v.

Delo*, 513 U.S. 298, 324 (1995).  To show that this case is the

"extraordinary" one warranting application of this exception, the

petitioner must demonstrate "that it is more likely than not that no

reasonable juror would have convicted him in the light of the new

evidence."  *Schlup*, 513 U.S. at 321, 327.  Ogilvie has not presented any

new reliable evidence in support of a claim of actual innocence.

Therefore, a miscarriage of justice will not occur as a result of the

Court's failure to consider the substantive merits of this claim.

Therefore, consideration of this claim should be deemed barred by an

unexcused procedural default.

But, even if the procedural default is excused or overlooked, this claim does not warrant habeas relief.

**Clearly established federal law**

The "clearly established Federal law" at issue when a petitioner asserts prosecutor misconduct is *Darden v. Wainwright*, 477 U.S. 168 (1986), which explained that a prosecutor's improper comments will be held to violate the Constitution only if they " 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' " *Id*. at 181 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). *See Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012) (per curiam) ("[T]he *Darden* standard is a very general one, leaving courts 'more leeway . . . in reaching outcomes in case-by-case determinations.' ") (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The standard for establishing a prosecutorial misconduct claim on habeas review "is a high one." *Bales v. Bell*, 788 F.3d 568, 579 (6th Cir. 2015).

The standard for granting habeas relief because of prosecutorial misconduct is "the narrow one of due process, and not the broad exercise of supervisory power." *Darden*, 477 U.S. at 181. "Petitioner's burden on habeas review is quite a substantial one." *Byrd v. Collins*,

209 F.3d 486, 529 (6th Cir. 2000).  Federal courts do "not possess

supervisory powers over state court trials."  *Id*.  "[I]t is the

responsibility of the [state courts] to police their prosecutors; [a federal

court has] no such authority."  *Id*.  Thus, "[r]emarks that would cause

us to reverse in a direct appeal of a federal conviction are not

necessarily grounds for reversal when spoken in state courts."  *Coleman*

*v. Brown*, 802 F.2d 1227, 1237 (10th Cir. 1986).  *See also Macias v.*

*Makowski*, 291 F.3d 447, 453–54 (6th Cir. 2002) ("If this court were

hearing the case on direct appeal, we might have concluded that the

prosecutor's comments violated Macias's due process rights.  But this

case is before us on a petition for a writ of habeas corpus.  So the

relevant question is not whether the state court's decision was wrong,

but whether it was an unreasonable application of clearly established

federal law.").

   In order to obtain habeas relief on a prosecutorial misconduct

claim, a habeas petitioner must show that the state court's rejection of

his prosecutorial misconduct claim "was so lacking in justification that

there was an error well understood and comprehended in existing law

beyond any possibility for fairminded disagreement." *Parker*, 132 S. Ct. at 2155, quoting *Harrington*, 562 U.S. at 103.

To warrant habeas relief, improper conduct by a state prosecutor must be so prejudicial that it rendered the trial fundamentally unfair within the meaning of the Due Process Clause of the Fourteenth Amendment. *Darden*, 477 U.S. at 180–81. It is not enough to show that the prosecutor's conduct or remarks were undesirable or even universally condemned. *Id*. at 181. For prosecutorial misconduct to rise to the level of entitling petitioner to federal habeas relief, it must either have violated a specific constitutional right or "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly*, 416 U.S. at 643. To constitute a denial of due process, prosecutorial misconduct must be so pronounced and persistent that it permeates the entire atmosphere of the trial. *Byrd v. Collins*, 209 F.3d 486, 529 (6th Cir. 2000).

In *Cristini v. McKee*, 526 F.3d 888, 900 (6th Cir. 2008), the Court held that it is not misconduct for a prosecutor to offer evidence and rely upon evidence which is deemed relevant and admissible by the trial court. The *Cristini* Court stated: "A prosecutor may rely in good faith

on evidentiary rulings made by the state trial judge and make arguments in reliance on those rulings." *Id*. *See also Frazier v. Huffman*, 343 F.3d 780, 792 (6th Cir. 2003) ("There is nothing improper about a prosecutor's reliance on a state court's evidentiary ruling, whether or not the ruling itself was correct.").

Moreover, claims of prosecutorial misconduct also are subject to harmless-error analysis. *Mason v. Mitchell*, 320 F.3d 604, 635 (6th Cir. 2003); *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997). As was stated in *Rosencrantz v. Lafler*, 568 F.3d 577, 591 (6th Cir. 2009), "Prosecutorial culpability cannot, however, outweigh *Brecht*'s policy concerns." Indeed, "[e]ven if the prosecutor's conduct was improper or even universally condemned, we can provide relief only if the statements were so flagrant as to render the entire trial fundamentally unfair." *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003) (internal quotations and citations omitted). "[I]t is notable how often courts cite improper argument by a prosecutor and how seldom they reverse convictions because of it." *United States v. Bess*, 593 F.2d 749, 757 (6th Cir. 1979).

An error is harmless unless it had a "substantial and injurious effect or influence in determining [the] jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993). *See also Jaradat v. Williams*, 591 F.3d 863, 867–71 (6th Cir. 2010) (holding that the prosecutor's improper comments in closing argument referring to the petitioner's post-arrest silence amounted to harmless error under *Brecht*); *Rosencrantz*, 568 F.3d at 589–92 (applying *Brecht* to excuse as harmless the prosecutor's misconduct in knowingly presenting false testimony).

**Discussion**

This claim fails when it is viewed through the doubly deferential lens of *Darden* and AEDPA.

Ogilvie says it was improper to argue that he used deadly force and had a duty to retreat. It was obvious Ogilvie did not use deadly force as he never even shot his handgun. This argument could not have prejudiced him. As for arguing a duty to retreat, this argument was based on agreed upon jury instructions and it is not prosecutor misconduct to argue based on trial court rulings. *Cristini*, 526 F.3d at 900.

As for the prosecutor allegedly misstating the law, the trial court instructed the jury that what it said was controlling: "You must take the law as I give it to you.  If a lawyer says something different about the law, follow what I say."  (2/10/2010 Trial Tr. at 176.)

Ogilvie claims the prosecutor suppressed the 911 tape, apparently claiming a violation of *Brady v. Maryland*, 373 U.S. 83 (1963).  This is simply false.  The police erroneously told people the tape had been destroyed.  After Ogilvie's trial an appellate attorney was successful in obtaining a copy of the tape but it had not been withheld by the prosecutor.  "Prejudice (or materiality) in the *Brady* context is a difficult test to meet."  *Jamison v. Collins*, 291 F.3d 380, 388 (6th Cir. 2002).  Here the 911 tape did not have such exculpatory value as to "have produced a different verdict."  *Strickler v. Greene*, 527 U.S. 263, 281 (1999).  "[T]he *Brady* standard is not met if the petitioner shows merely a reasonable *possibility* that the suppressed evidence might have produced a different outcome."  *Montgomery v. Bobby*, 654 F.3d 668, 678 (6th Cir. 2011).  *See also Agurs*, 427 U.S. at 109 ("The golden possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish

'materiality' in the constitutional sense."). The 991 tape does not "put the whole case in such a different light as to undermine confidence in the verdict." *Kyles v. Whitley*, 514 U.S. 419, 435 (1995). There is not "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985).

Here the prosecutor's challenged comments and actions fell within permissible bounds. It is questionable whether any of the cited examples were even misconduct, much less misconduct so egregious that it produced an unfair trial. In other words, none of the challenged arguments of the prosecutor were reversibly flagrant permeating the entire trial. None of the prosecutor's comments were so incendiary as to inflame the jury's passion or distract them from properly determining Ogilvie's guilt or innocence. *See Davis v. Burt*, 100 Fed. App'x 340, 348 (6th Cir. 2004).

To the extent that any of the prosecutor's relatively isolated comments could be considered improper, the court should conclude that they did not rise to the level of flagrancy required to justify habeas relief because they were at most mildly improper. *See Darden*, 477 U.S.

58

at 181 (recognizing that the pervasiveness of impropriety is relevant to the fairness of the trial); *Lundgren v. Mitchell*, 440 F.3d 754, 778 (6th Cir. 2006).  Even assuming that some of the prosecution's arguments may have gone "too far," such conduct was not so pronounced or persistent as to deprive Ogilvie of a fair trial.  *Darden* itself held that a closing argument considerably more inflammatory than the one at issue here did not warrant habeas relief.  *See* 477 U.S. at 180, n.11 (prosecutor referred to the defendant as an "animal"); *id.*, at 180, n.12 ("I wish that I could see [the defendant] sitting here with no face, blown away by a shotgun.").

Further, any possible prejudice attributable to the challenged prosecutor comments was dispelled by the trial court's instructions to the jury that (1) the verdict should be based only on the evidence, (2) the prosecutor's arguments are not evidence, and (3) not to allow sympathy or prejudice to affect their verdict.  (2/10/2010 Trial Tr. at 176–78.)  A trial court can generally correct improprieties in a prosecutor's closing argument "by instructing the jury that closing arguments are not evidence."  *United States v. Crosgrove*, 637 F.3d 646, 664 (6th Cir. 2011).  Indeed, improper comments can be "sufficiently

remedied by the trial court's curative instruction along with the preliminary and final instructions given to the jury." *Shaieb v. Burghuis*, 499 F. App'x 486, 499 (6th Cir. 2012).

Any alleged prosecutor misconduct could have had only a slight effect on the jury, if at all. *Brecht,* 507 U.S. at 623. If error occurred it was harmless because it did not have, in light of the jury instructions and properly admitted evidence, a substantial and injurious effect or influence in determining the jury's verdict.

Finally, it must be recalled that "[t]he Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.' " *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006) (quoting *Donnelly,* 416 U.S. at 645). The state appellate court's decision was not "so far out of line with the very general standard" set forth in *Darden* as to entitle Ogilvie to habeas relief. *Davis v. Lafler*, 658 F.3d 525, 535 (6th Cir. 2011) (en banc). As explained in *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004), where a general standard is at issue, state court decisions are given greater leeway. Open-ended standards give states wide berth

60

on habeas review.  *Harrington*, 562 U.S. at 101.  This case, like *Darden*,

"was not perfect—few are—but neither was it fundamentally unfair."

*Darden*, 477 U.S. at 183.

**IV[a]**     **Under the highly deferential standards of *Strickland v. Washington* and 28 U.S.C. § 2254(d), the state court rejection of Ogilvie's claim that trial counsel was ineffective was not objectively unreasonable.**

The first part of Ogilvie's fourth habeas claim is that he received

ineffective assistance of trial counsel where (1) counsel failed to

investigate and obtain 911 calls and transcripts, and (2) counsel failed

to request the appropriate jury instructions.

The Michigan Court of Appeals considered and denied the claim

that trial counsel was ineffective on the merits by applying the correct

constitutional standard in a manner that was not objectively

unreasonable:

B. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Defendant next argues that his retained trial counsel was
ineffective before and during trial. The standards for
ineffective assistance of counsel apply to a defendant's
retained attorney. See *People v. Hamacher*, 432 Mich. 157,
170 n. 2; 438 NW2d 43 (1989) (LEVIN, J., separate opinion),
citing *Cuyler v. Sullivan*, 446 U.S. 335, 344–345; 100 S.Ct
1708; 64 L.Ed 2d 333 (1980). To the extent that defendant
advances claims on appeal that were not the subject of the
*Ginther* hearing below, our review of those claims is limited

61

to errors apparent from the record. *Horn*, 279 Mich.App at 38; *People v. Wilson*, 242 Mich.App 350, 352; 619 NW2d 413 (2000). We review any findings of fact made by the trial court with respect to the claims raised below for clear error. *LeBlanc*, 465 Mich. at 579.

Although defendant asserts that trial counsel provided incorrect legal advice before trial, the nature of counsel's advice is not a matter of record and this issue was not explored at the *Ginther* hearing. Thus, there is no basis for concluding that trial counsel was ineffective for giving incorrect legal advice. Further, defendant has not demonstrated a likelihood of prejudice from counsel's allegedly improper legal advice. Defendant asserts that trial counsel inaccurately advised him that testimony regarding his prior difficulties with the victim and his wife would not be admissible. We note that trial counsel's decision to focus on the events surrounding the offense in his direct examination of defendant was a matter of trial strategy. See *Horn*, 279 Mich.App at 39; *People v. Johnson*, 168 Mich.App 581, 586; 425 NW2d 187 (1988). Counsel reasonably may have decided not to elicit evidence of past difficulties with the victim out of concern that the evidence might show that defendant's reaction of threatening the victim with a gun was motivated by a preexisting animosity against the victim, rather than a perceived threat of immediate harm. Furthermore, a failure to present evidence constitutes ineffective assistance of counsel only where it deprives the defendant of a substantial defense. *People v. Payne*, 285 Mich.App 181, 190; 774 NW2d 714 (2009). The record clearly demonstrates that defendant was not foreclosed from offering evidence of prior problems with the victim. On cross-examination, the prosecutor asked defendant whether he "had problems with [the victim] before." In response, defendant complained that the victim sometimes seemed to give him moral lectures, but defendant stated that he had never before been involved in a physical confrontation with the victim. Because defendant had the opportunity to offer

testimony regarding past problems with victim, he was not prejudiced by counsel's allegedly improper legal advice.

Defendant next argues that trial counsel was ineffective for failing to present additional photographs, failing to call an investigator to testify regarding relative distances between the victim and defendant, and failing to call an expert to assist the jury in understanding what goes through the mind of a person who perceives a child to be in danger. Counsel's decisions regarding what evidence to present and whether to call witnesses were matters of trial strategy. *Horn*, 279 Mich.App at 39. The record discloses that trial counsel presented a photograph, which defendant agreed accurately depicted the front yard of his house on the date of the offense. Defendant has not shown that additional photographs were necessary to provide the jury with an adequate understanding of the scene. Further, defendant cites no record evidence showing how any investigator or expert would have testified. Without such testimony, this ineffective assistance of counsel claim cannot succeed. *Carbin*, 463 Mich. at 600; *Payne*, 285 Mich.App at 190.

Defendant next argues that defense counsel was ineffective for failing to obtain recordings of 911 calls made to the Taylor Police Department on the date of the offense. This issue was the subject of substantial testimony at the Ginther hearing. Defense counsel explained his efforts to obtain the recordings, both personally through his service of a discovery order and through a defense investigator, but was unsuccessful because he was advised that the recordings did not exist. The trial court found that defense counsel's efforts were objectively reasonable. The trial court did not clearly err in its assessment of defense counsel's performance regarding this matter. Accordingly, defense counsel was not ineffective in this regard.

Next, the record does not support defendant's argument that trial counsel effectively conceded defendant's guilt. It was undisputed that defendant threatened the victim with a gun.

63

The principal issue at trial was whether defendant acted in self-defense. Trial counsel did not advance any theory that pointing a gun at someone is always an illegal act. Rather, counsel appropriately argued that defendant's act was legally justified because he reasonably believed that the victim was attempting to pull out a weapon to harm defendant or his son. The more material question is whether trial counsel requested appropriate jury instructions to advance the self-defense theory.

Defendant was charged with felonious assault, which consists of "(1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery." *People v. Chambers*, 277 Mich.App 1, 8; 742 NW2d 610 (2007). "An assault may be established by showing either an attempt to commit a battery or an unlawful act that places another in reasonable apprehension of receiving an immediate battery." *People v. Starks*, 473 Mich. 227, 234; 701 NW2d 136 (2005). The latter type of assault is referred to as "apprehension-type assault." *People v. Nickens*, 470 Mich. 622, 628; 685 NW2d 657 (2004). The actual ability to inflict the threatened harm is largely irrelevant and unnecessary to establish this type of assault, but the victim must reasonably apprehend an imminent battery. *People v. Reeves*, 458 Mich. 236, 244; 580 NW2d 433 (1998). "[T]he assault element is satisfied where the circumstances indicate that an assailant, by overt conduct, causes the victim to reasonably believe that he will do what is threatened." *Id*.

Under the common law, self-defense is an affirmative defense to justify otherwise punishable criminal conduct. It applies where the defendant acted intentionally, but under circumstances that justified his action. *People v. Dupree*, 486 Mich. 693, 707; 788 NW2d 399 (2010). The general rule is that a nonaggressor is justified in using a reasonable amount of force against his adversary in an encounter when "he reasonably believes (a) that he is in immediate danger of unlawful bodily harm from his adversary and (b) that the

use of such force is necessary to avoid the danger." *Id*. at 707, quoting 2 LaFave, Substantive Criminal Law (2d ed), § 10.4, p. 142. The person's "intentional infliction of (or, if he misses, his attempt to inflict) physical harm upon the other, or his threat to inflict such harm, is said to be justified when he acts in proper self-defense, so that he is not guilty of any crime." *Id*. at 707–708, quoting 2 LaFave, § 10.4(a), pp 143–144. Where the defendant injects the issue of self-defense and satisfies his initial burden of producing evidence from which the jury could find the elements of a prima facie defense of self-defense, the prosecution bears the burden of disproving self-defense beyond a reasonable doubt. *Id*. at 709–710.

A person may also act in defense of another. *People v. Kurr*, 253 Mich.App 317, 321; 654 NW2d 651 (2002). Because the concept of self-defense is founded on necessity, real or apparent, an accused's failure to retreat or otherwise avoid the harm is also a factor in determining whether a person acts in reasonable self-defense. *People v. Riddle*, 467 Mich. 116, 126–127; 649 NW2d 30 (2002). But "one is never obligated to *retreat* from a sudden, fierce, and violent attack, because under such circumstances a reasonable person would, as a rule, find it necessary to use force against force without retreating." *Id*. at 129–130 (emphasis in original). Another exception provides that retreat is not a factor when a person is in his dwelling or "castle." *Id*. at 134–135. The common law did not extend the "castle" doctrine to the curtilage surrounding the dwelling. *Id*. at 137–138; see also *People v. Conyer*, 281 Mich.App 526, 530; 762 NW2d 198 (2008). But the Self–Defense Act (SDA), MCL 780.971 et seq., altered the common law regarding the duty to retreat, effective October 1, 2006. *Dupree*, 486 Mich. at 708; *Conyer*, 281 Mich.App at 530. Section 2 of the SDA addresses both the use of deadly force and "force other than deadly force," and provides:

> (1) An individual who has not or is not engaged in the commission of a crime at the time he or she

uses deadly force may use deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if either of the following applies:

(a) The individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself or herself or to another individual.

(b) The individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent sexual assault of himself or herself or of another individual.

(2) An individual who has not or is not engaged in the commission of a crime at the time he or she uses force other than deadly force *may use force other than deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat* if he or she honestly and reasonably believes that the use of that force is necessary to defend himself or herself or another individual from the imminent unlawful use of force by another individual. [MCL 780.972 (emphasis added).]

Although the SDA does not define "force" or "deadly force," this Court has described the use of deadly force as referring to a circumstance in which the natural, probable, and foreseeable consequence of the defendant's act is death. *People v. Pace*, 102 Mich.App 522, 534; 302 NW2d 216 (1980). In *Pace*, this Court determined that a defendant's mere display of a knife, while implying a threat of violence, would not constitute deadly force, but that an instruction on nondeadly force would be appropriate for such conduct.[2] [Although this Court did not offer a definition of "nondeadly force" in *Pace*, the result reached is consistent with the

66

dictionary meaning of the term "force," which is defined, in part, as "unlawful violence threatened or committed against persons or property." Random House Webster's College Dictionary (1997). A court properly may consult a dictionary definition to determine the meaning of undefined terms in a statute. *People v. Tennyson*, 487 Mich. 730, 738; 790 NW2d 354 (2010). We note that the majority in *People v. Dillard*, 115 Mich.App 640; 321 NW2d 757 (1982), later determined that pointing a gun involves no force whatsoever. We note that neither *Pace* nor *Dillard* is precedentially binding on this Court because both cases were decided before November 1, 1990. MCR 7.215(J)(1).] *Id.* at 533–534.

The defense theory in this case was that defendant pulled out his gun and told the victim to leave in reaction to his belief that the victim might be pulling out a gun or some other weapon to harm him or his son. That is, the defense theory was that defendant responded to a fear of immediate harm by reacting with a threat of deadly force. As set forth in defense counsel's opening statement at trial, the defense theory was that the victim approached defendant standing about five feet away from him reaching his arms behind his back as if to draw a gun.... [Defendant] reacted at that point. He reacted to protect himself and to protect his two-year-old son [ ] who was right next to him. He felt their safety and perhaps their lives were in jeopardy.

Defendant testified at trial that he felt it was necessary to pull out the gun because the victim "kept on coming in an aggressive manner and he's reaching his hand behind his back." Defendant testified that he thought that the victim might have a knife, stick, or gun because the victim had stated, "Go ahead pull yours I'll pull mind [sic]." In closing argument, trial counsel argued that the victim's gestures behind his back caused defendant to fear for his safety and his son's safety, especially when the victim stated, "You pull yours I'll pull mine."

In considering whether the jury instructions requested by trial counsel appropriately advanced this theory of self-defense, we must examine the instructions in their entirety to determine if they fairly presented the issues and sufficiently protected defendant's rights. *People v. Clark*, 274 Mich.App 248, 255; 732 NW2d 605 (2007); see also *People v. Richardson*, 490 Mich. 115, 119; 803 NW2d 302 (2011). We also note that a defendant's failure to request a particular jury instruction can be a matter of trial strategy. *People v. Gonzalez*, 468 Mich. 636, 644–645; 664 NW2d 159 (2003).

The jury instruction addressing the defense theory that defendant acted in self-defense was tailored to the deadly-force form of self-defense in MCL 780.972(1). It essentially mirrors CJI2d 7.15. The separate instruction addressing defendant's defense of his son follows CJ2d 7.22 for the nondeadly-force form of self-defense in MCL 780.972(2). The jury was also instructed on the duty to retreat in a manner consistent with CJI2d 7.16.

Although a trial court should not hesitate to modify or disregard a standard criminal jury instruction when presented with a more accurate instruction, *Richardson*, 490 Mich. at 120, we are not persuaded that trial counsel's request for CJI2d 7.15, rather than an instruction that was more accurately tailored to the evidence in this case, amounts to ineffective assistance of counsel. The first issue that the jury was asked to consider under the instruction modeled after CJI2d 7.15 is whether defendant "honestly and reasonably believed he was in danger of being killed or seriously injured." This instruction was supported by evidence offered by defendant. Defendant's testimony did not suggest that he was reacting to a fear of only minor injury, but rather indicated that he honestly and reasonably believed it was necessary to pull out a gun because the victim was attempting to reach for something that defendant believed could have been a gun. In sum, the first part of the instruction requested by trial counsel was consistent with the defense theory at trial. The second part of the instruction

based on CJI2d 7.15 contained factors for evaluating whether defendant was afraid of death or serious physical injury. Again, the instruction accurately reflected the defense theory at trial. The third part of the instruction, which addresses the requirement of necessity and sets forth the law that "a person may only use as much force as he thinks is necessary at the time to protect himself," is also an accurate statement of the law.

We are also not persuaded that trial counsel's approval of an instruction based on CJI2d 7.16 was objectively unreasonable. As observed in *Richardson*, 490 Mich. at 120–121, CJI2d 7.16 accurately states the law. And while the jury was not given a definition of deadly force, the jury was instructed that "[a] person can use deadly force in self-defense only where it's necessary to do so." Further, with respect to circumstances where there is no duty to retreat because the defendant is at a place where he has a legal right to be, the jury was instructed that there must be "an honest and reasonable belief that the use of deadly force is necessary to prevent eminent [sic] death, great bodily harm or sexual assault."

Assuming that the jury could have incorrectly understood "deadly force" to include threatening an individual with a gun, defendant was not prejudiced because the defense theory was that such threatening conduct was the act of self-defense and that defendant honestly and reasonably believed that it was necessary to prevent death or at least great bodily harm. To the extent that the jury could have understood "deadly force" to include the threatened use of deadly force, defendant suffered no prejudice because the instruction becomes a mere accurate statement of the law that trial counsel, according to his testimony at the *Ginther* hearing, desired the jury to hear for purposes of evaluating defendant's conduct.

Because defendant's claim of self-defense did not depend on whether his threatening conduct was properly treated as

deadly force or nondeadly force, but rather required the jury to resolve the conflicting claims concerning whether the victim became threatening and aggressive during their argument and whether defendant honestly and reasonably believed that it was necessary to pull out and point his gun at the victim to avoid a threat of imminent harm, defendant's ineffective assistance of counsel claim based on the self-defense instructions requested by trial counsel cannot succeed. Even if trial counsel could have requested more accurate instructions, defendant has failed to establish a reasonable probability that, but for this omission, the result of the trial would have been different and the result that did occur was fundamentally unfair or unreliable. See *Seals*, 285 Mich.App at 17.

Defendant also argues that trial counsel was ineffective by not moving to suppress evidence of his ownership of other guns that were discovered during a search of his home. This particular claim was not explored at the *Ginther* hearing. Even assuming that trial counsel could have successfully objected to the testimony regarding the search of defendant's home on the ground that it was not relevant, there is no basis for concluding that defendant was prejudiced by the testimony. It is apparent from the record that trial counsel attempted to use that evidence to show that defendant was treated differently than the victim, whose home was not searched for weapons. Further, the testimony indicated that defendant was cooperative during the search, there was no suggestion that defendant possessed any guns illegally, and the prosecutor made it clear to the jury that this case was "not about the guns that were recovered from his house" and conceded that defendant legally possessed the guns. Defendant has failed to establish a reasonable probability that the evidence of his legal ownership of other guns affected the outcome of the trial.

*People v. Ogilvie*, 2013 WL 2278138 at *3–8.

70

This comprehensive and well-reasoned opinion of the Michigan Court of Appeals is neither contrary to *Strickland v. Washington,* 466 U.S. 668 (1984), nor an unreasonable application thereof.

**Clearly established federal law**

The Supreme Court's decision in *Strickland* is clearly established federal law for purposes of ineffective-assistance-of-counsel claims. *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011).  Under *Strickland*, a defendant seeking to overturn a conviction on the ground of ineffective assistance of counsel bears a heavy burden.  He must demonstrate both (1) that counsel's performance was so unreasonable under prevailing professional norms that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," *Strickland v. Washington*, 466 U.S. 668, 687 (1984); and (2) that counsel's ineffectiveness prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id*. at 694. Paramount to any review of a claim of ineffectiveness is "whether counsel's conduct so undermined the proper functioning of the

71

adversarial process that the trial cannot be relied on as having produced a just result." *Id*. at 686.

The "deficient performance" prong of the *Strickland* test "requires showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." 466 U.S. at 687–88. The standard for assessing such competence is "highly deferential" and has a "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Id*. at 689.

To satisfy the prejudice prong, a petitioner must show (1) "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *See Strickland*, 466 U.S. at 687, 694; *Wilson v. Parker*, 515 F.3d 682, 698 (6th Cir. 2008). "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland*, 466 U.S. at 687. *See also Maryland v. Kulbicki*, 136 S. Ct. 2 (2015) ("Counsel is unconstitutionally ineffective

if his performance is both deficient, meaning his errors are 'so serious' that he no longer functions as 'counsel,' and prejudicial, meaning his errors deprive the defendant of a fair trial.") (quoting *Strickland*). Further, the reviewing court is required not simply to give the attorney the benefit of the doubt, but to affirmatively entertain the range of possible reasons counsel may have had for proceeding as he did. *Pinholster*, 131 S. Ct. at 1407.

Although section 2254(d) does not completely bar federal review of previously-litigated *Strickland* claims, it allows for the writ to issue only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). Thus, a state prisoner seeking a federal writ of habeas corpus on the ground that he was denied effective assistance of counsel "must do more than show that he would have satisfied *Strickland*'s test if his claim were being analyzed in the first instance." *Bell v. Cone*, 535 U.S. 685, 698–99 (2002).

The standard for obtaining habeas corpus relief is "difficult to meet." *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014). In the context of

an ineffective assistance of counsel claim under *Strickland*, the standard is "all the more difficult" because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (internal citations and quotation marks omitted). *See also Foust v. Houk*, 655 F.3d 524, 534 (6th Cir. 2011) ("We therefore afford double deference to . . . both prongs of the *Strickland* test."). Under AEDPA a reviewing court must "give [ ] both the state court and the defense attorney the benefit of the doubt." *Burt*, 134 S. Ct. at 13. On habeas review, *Strickland* claims are difficult to establish, not only because of *Strickland*'s own "high bar," but also because of the highly deferential standard of 28 U.S.C. § 2254(d). *Cauthern v. Colson*, 736 F.3d 465, 482 (6th Cir. 2013).

**Discussion**

Under the very deferential standards of *Strickland* and AEDPA, this claim must be denied. Habeas relief should be denied because fairminded jurists could conclude that the state appellate court's review of Ogilvie's claim that trial counsel was ineffective comported with *Strickland*.

74

Ogilvie criticizes trial counsel for not obtaining the 911 tapes. But, as noted by the Court of Appeals, trial counsel made reasonable efforts, personally and through an investigator, even if their efforts did not succeed.

Ogilvie also criticizes defense counsel for not requesting appropriate jury instructions. The Court of Appeals rejected this claim noting that Ogilvie suffered no prejudice where his claim of self-defense did not depend on whether his threatening conduct was properly treated as deadly force or non-deadly force. The appellate court further found that even if defense counsel had requested more accurate instructions there was not a reasonable probability that, but for this omission, the result of the trial would have been different and the result that did occur was fundamentally unfair or unreliable. This ruling was not objectively unreasonable. "Under AEDPA, if the state-court decision was reasonable, it cannot be disturbed." *Hardy v. Cross*, 132 S. Ct. 490, 495 (2011). Here counsel's "efforts fell in the permissible zone between best practices and outright incompetence." *Davis v. Carpenter*, 798 F.3d 468, 474 (6th Cir. 2015).

75

Ogilvie has not "[s]urmount[ed] *Strickland*'s high bar," *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010), let alone established that there is not "any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105.

Even if either of trial counsel's alleged shortcomings amounted to defective performance in a constitutional sense, which is doubtful, this claim still founders because it cannot be shown that "prejudice" ensued. Ogilvie has not shown that the answer to the prejudice question is so one-sided in his favor that the answer is, as the Supreme Court has phrased it, "beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 102. Ogilvie has not shown "that every fair-minded jurist would conclude that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Jones v. GDCP Warden*, 753 F.3d 1171, 1184 (11th Cir. 2014) (internal quotation marks and citation omitted).

If the state court "reasonably could have concluded that [the petitioner] was not prejudiced by counsel's actions," then federal review under AEDPA is at an end. *Premo v. Moore*, 562 U.S. 115, 131 (2011).

Consequently habeas relief is not available for this claim.

76

**IV[b]      Under the highly deferential standards of *Strickland v. Washington* and 28 U.S.C. § 2254(d), the state court rejection of Ogilvie's claim that appellate counsel was ineffective was not objectively unreasonable.**

The second part of Ogilvie's fourth habeas claim is that appellate counsel was ineffective where in his post-conviction motions in state trial court, appellate counsel failed to raise the meritorious appellate issue of prosecutorial misconduct for failing to disclose evidence of Amy Ogilvie's 911 calls in violation of *Brady*.

The Michigan Court of Appeals considered and denied the claim that appellate counsel was ineffective on the merits by applying the correct constitutional standard in a manner that was not objectively unreasonable:

A. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

Defendant raises two issues involving the performance of his former appellate counsel.

*** 

Ineffective assistance of counsel is a mixed question of fact and constitutional law. *People v. LeBlanc*, 465 Mich. 575, 579; 640 NW2d 246 (2002). To establish ineffective assistance of counsel, a defendant bears the burden of showing both deficient performance and prejudice. *People v. Carbin*, 463 Mich. 590, 599–600; 623 NW2d 884 (2001). The defendant "must show that (1) counsel's performance fell below an objective standard of reasonableness under professional norms and (2) there is a reasonable probability

that, but for counsel's errors, the result would have been different and the result that did occur was fundamentally unfair or unreliable." *People v. Seals*, 285 Mich.App 1, 17; 776 NW2d 314 (2009). Counsel is strongly presumed to have rendered adequate assistance and to have made all significant decisions in the exercise of reasonable professional judgment. *People v. Vaughn*, 491 Mich. 642, 670; 821 NW2d 288 (2012). "[T]he test of ineffective assistance of appellate counsel is the same as that applicable to a claim of ineffective assistance of trial counsel." *People v. Uphaus (On Remand)*, 278 Mich.App 174, 186; 748 NW2d 899 (2008).

Although defendant asserts that former appellate counsel failed to fully advocate all of his claims of ineffective assistance of trial counsel, defendant does not identify or address any particular claim. Further, as this Court observed in *Uphaus*, "[a]ppellate counsel may legitimately winnow out weaker arguments in order to focus on those arguments that are more likely to prevail." *Id*. at 187. Moreover, defendant does not explain how he was prejudiced by the failure to litigate any particular claim. Accordingly, this ineffective assistance of appellate counsel claim cannot succeed.

We also disagree with defendant's argument that former appellate counsel's failure to fully address alleged errors in certain transcripts, motions, and briefs provides a basis for relief. The mere existence of an inaccuracy in a transcript or other matter of record does not entitle a defendant to relief. The defendant must identify the alleged inaccuracy with specificity, provide some independent corroboration of the asserted inaccuracy, and describe how the claimed inaccuracy has adversely affected his ability to secure postconviction relief. *People v. Abdella*, 200 Mich.App 473, 476; 505 NW2d 18 (1993). Here, defendant merely asserts that there were some errors in the transcript or record, but he does not explain how any alleged error adversely affected his ability to pursue postconviction relief, either in the trial

78

court or on appeal, or provide any basis for concluding that there is a reasonable probability that the trial court's decision to deny his motion for a new trial was influenced by any inaccuracies in the trial transcript. Further, while defendant complains that former appellate counsel's failure to seek correction of the record put him in the position of having to try to correct the record himself, defendant has not shown that his right to appeal has been impeded by a record that is insufficient to allow evaluation of a claim on appeal, *People v. Federico*, 146 Mich.App 776, 779; 381 NW2d 819 (1985), and defendant cannot complain that the quality of his self-representation amounts to the denial of the effective assistance of counsel. *People v. Kevorkian*, 248 Mich.App 373, 419; 639 NW2d 291 (2001).

*People v. Ogilvie*, 2013 WL 2278138 at *2–3.

This appellate court adjudication was not contrary to or an unreasonable application of Supreme Court precedent.

**Clearly established federal law**

The clearly established Federal law in play when a petitioner asserts that his appellate counsel was ineffective is *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  *See Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000), which applied the *Strickland* framework to an appellate counsel claim when the challenge is aimed at the selection of issues presented on appeal.  *See also Smith v. Robbins*, 528 U.S. 259, 285 (2000) (holding a petitioner who argued his appellate counsel rendered ineffective assistance must satisfy both prongs of *Strickland*).

79

The "deficient performance" prong of the two-part *Strickland* test requires showing that appellate counsel made an objectively unreasonable decision to raise other issues in place of the petitioner's claims. *Thompson v. Warden, Belmont Corr. Inst.*, 598 F.3d 281, 285 (6th Cir. 2010). As applied to appellate counsel, this standard is difficult to meet because, to be effective, "appellate counsel . . . need not (and should not) raise every nonfrivolous claim, but rather may select among them in order to maximize the likelihood of success on appeal." *Robbins*, 528 U.S. at 285. To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Strickland*, 466 U.S. at 688. "Winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983). *See also Jones v Bell*, 801 F.3d 556, 562 (6th Cir. 2015) (It is not deficient performance to leave out some colorable issues, "indeed, it may even be the *best* type of performance.") (emphasis in original).

80

A petitioner is required to show that his appellate attorney was so thoroughly ineffective that defeat was "snatched from the hands of probable victory." *United States v. Morrow,* 977 F.2d 222, 229 (6th Cir. 1992) (en banc).

Finally, when ineffective assistance of appellate counsel is shown, the prevailing habeas petitioner is entitled to a new direct appeal, not a new trial. *See Evitts v. Lucey*, 469 U.S. 387, 403 (1985).

**Discussion**

In reviewing a claim that appellate counsel was ineffective a habeas court defers twice – once to appellate counsel's decision not to raise the issue and again to the State court's decision finding no ineffectiveness. *Etherton v. Woods*, 136 S. Ct. 1149, 1153 (2016) (per curiam) ("Given AEDPA, both Etherton's appellate counsel and the state habeas court were to be afforded the benefit of the doubt.").

Ogilvie criticizes appellate counsel for not raising the issue of prosecutorial misconduct for failing to disclose the 911 tape in violation of *Brady*. Appellate counsel did not commit an error of constitutional magnitude.

First, appellate counsel is the one who obtained the 911 tape. Having obtained the tape appellate counsel could have easily determined that the prosecutor did not suppress the tape and that its late discovery was the result of incorrect information from the police department–not an effort by anyone to keep helpful information from Ogilvie.  The fact that appellate counsel obtained the tape allowed counsel to argue that it supported his motion for a new trial.  It was not necessary to get bogged down with arguing that the failure to obtain it before trial was attributable to prosecutor misconduct.  The federal constitution did not require the police to generate evidence.  *See Sanchez v. United States*, 50 F.3d 1448, 1453 (9th Cir. 1995) ("The government has no obligation to produce information which it does not possess.").

Second, Ogilvie himself was able to argue the significance of the 911 tape in his direct appeal brief.

In any event, Ogilvie has not shown, within a reasonable probability, that if appellate counsel had accused the prosecutor of misconduct in suppressing the 911 tape, that he would have been granted a new trial.  The state court's denial of this ineffective

assistance of appellate counsel claim was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement," as required for habeas relief. *Harrington*, 562 U.S. at 103. Appellate counsel's handling of Ogilvie's motion for new trial was not ineffective.

Finally, even if the state court did not reach the correct result under *Strickland*, it at least reached a reasonable one, which is sufficient under § 2254(d) to require denial of relief on this basis.

Consequently, this ineffective assistance of appellate counsel claim does not warrant granting Ogilvie a new direct appeal.

## CONCLUSION

Ogilvie's convictions were not the result of an "extreme malfunction" in the state criminal justice system. *Harrington*, 562 U.S. at 102–03. Rather, they are the result of substantial direct and circumstantial evidence of his guilt.

The state courts' rejection of Ogilvie's claims did not result in decisions that were contrary to federal law, unreasonable applications of federal law, or unreasonable determinations of the facts. Ogilvie was "entitled to a fair trial but not a perfect one, for there are no perfect trials." *Brown v. United States*, 411 U.S. 223, 231–32 (1973); *see also United States v. Hajal*, 555 F.2d 558, 569 (6th Cir. 1977) ("[W]e have yet to review a perfect jury trial."); *Puckett v. United States*, 556 U.S. 129, 134 (2009) ("anyone familiar with the work of courts understands that errors are a constant in the trial process, that most do not much matter").

The state-court decisions in this case were not "so lacking in justification" that they resulted in "an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. The formidable threshold

for granting habeas relief has not been met because fairminded jurists could disagree on the correctness of the state court's decision. *Yarborough*, 541 U.S. at 664. Consequently, habeas relief should be denied.

Additionally, the State opposes any requests for bond, oral argument, or any other relief, including a certificate of appealability. And the State asserts that Ogilvie is not entitled to habeas relief because he has not established that any of the alleged errors had a substantial and injurious effect on the verdict in this matter. *See Brecht v. Abrahamson*, 507 U.S. 619 (1993).[8] Indeed, a state court determination that harmless error occurred is subject to AEDPA deference. *Davis v. Ayala*, 135 S. Ct. 2187, 2198–99 (2015) (state court's application of federal standard for harmless constitutional error is entitled to AEDPA deference).

---

[8] The State recognizes that a *Brecht* harmless error analysis is not necessary for claims of ineffective assistance of counsel. *See Kyles v. Whitley*, 514 U.S. 419, 435–36 (1995). This is because the "prejudice prong of the ineffective assistance analysis subsumes the *Brecht* harmless-error review." *Hall v. Vasbinder*, 563 F.3d 222, 236 (6th Cir. 2009).

The State also contends that Ogilvie has not demonstrated entitlement to discovery.  "A habeas petitioner, unlike the usual civil litigant, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997).  Instead, a habeas petitioner is entitled to discovery only if the district judge "in the exercise of his discretion and for good cause shown grants leave" to conduct discovery.  "Rule 6 embodies the principle that a court must provide discovery in a habeas proceeding only 'where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief.' " *Williams v. Bagley*, 380 F.3d 932, 974 (6th Cir. 2004) (quoting *Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997)).  "Rule 6 does not 'sanction fishing expeditions based on a petitioner's conclusory allegations.' " *Williams*, 380 F.3d at 974 (quoting *Rector v. Johnson*, 120 F.3d 551, 562 (5th Cir. 1997)); Habeas Rule 6(a).  "Conclusory allegations are not enough to warrant discovery under Rule 6; the petitioner must set forth specific allegations of fact." *Williams*, 380 F.3d at 974 (internal quotation marks and citation omitted).  Ogilvie has not met this burden.

If this Court denies the petition, the State asserts that Ogilvie is also not entitled to a certificate of appealability (COA) so as to proceed further.  In order to obtain a COA, a petitioner must make "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the petitioner is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further.  *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) ("Under the controlling standard, a petitioner must sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.") (citations omitted).

When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong.  *Slack*, 529 U.S. at 483-84.  Likewise,

when a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claims, a COA should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. 529 U.S. at 484.

When a plain procedural bar is present, and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petition should be allowed to proceed further. In such a circumstance, no appeal would be warranted. 529 U.S. at 484.

## RELIEF

For the reasons stated above, the extraordinary remedy of habeas corpus is not warranted.  The Court should also deny Ogilvie any requested discovery, evidentiary hearings, bond, oral argument, and any other relief he seeks in this action, including a certificate of appealability.

Respectfully submitted,

Bill Schuette
Attorney General

s/Bruce H. Edwards

Assistant Attorney General
Criminal Appellate Division
P.O. Box 30217
Lansing, MI  48909
(517) 373-4875
Edwardsb8@michigan.gov
(P34983)

Dated: September 6, 2016

## CERTIFICATE OF SERVICE

I hereby certify that on September 6, 2016, I electronically filed the foregoing papers with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

HONORABLE MATTHEW F. LEITMAN
MAGISTRATE JUDGE STEPHANIE D. DAVIS
JENNIFER QONJA, ATTORNEY FOR PETITIONER

Respectfully submitted,

Bill Schuette
Attorney General

s/Bruce H. Edwards

Assistant Attorney General
Criminal Appellate Division
P.O. Box 30217
Lansing, MI  48909
(517) 373-4875
Edwardsb8@michigan.gov
(P34983)

90