1             STATE OF MICHIGAN

2     THE THIRD JUDICIAL CIRCUIT COURT - (WAYNE COUNTY)

3

4   PEOPLE OF THE STATE OF MICHIGAN

5             VS.                    CIRCUIT COURT NO.
                                     09-25646-01
6
   ERIC ARLINGTON OGILVIE,
7
        DEFENDANT.
8   _____/

9
                         MOTION/SENTENCE
10
      BEFORE THE HONORABLE PATRICIA S. FRESARD, CIRCUIT JUDGE
11
                 DETROIT, MICHIGAN - APRIL 16, 2010
12

13   APPEARANCES:

14   FOR THE PEOPLE:    SITA DODDAMANI, P-67459
                        ASSISTANT PROSECUTING ATTORNEY
15                      1441 ST. ANTOINE
                        DETROIT, MICHIGAN   48226
16                      (313) 224-5777

17

18   FOR DEFENDANT:     JOHN FREEMAN, P-71450
                        ATTORNEY-AT-LAW
19                      100 W. BIG BEAVER, SUITE 200
                        TROY, MICHIGAN 48084
20                      (248) 526-0555

21

22   REPORTED BY:       M. ARLEN DREGER, CSR-2509
                        OFFICIAL COURT REPORTER
23                      (313) 224-2455

24

25

1

1                          C O N T E N T S

2
      WITNESSES:   PEOPLE
3
      NONE
4

5

6     WITNESSES:   DEFENDANT

7     NONE

8          .

9

10    EXHIBITS:                              MARKED     RCVD

11    NONE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                          DETROIT, MICHIGAN

2                          APRIL 16, 2010  9:52 A.M.

3                                -    -    -

4              THE CLERK:  THIS IS DOCKET NUMBER 09-25646,

5     PEOPLE VERSUS ERIC OGILVIE, HERE FOR MOTION HEARING.

6              MS. DODDAMANI:  GOOD MORNING.  SITA DODDAMANI

7     FOR THE PEOPLE.

8              MR. FREEMAN:  GOOD MORNING.  JOHN FREEMAN ON

9     BEHALF OF MR. OGILVIE, WHO IS SEATED AT COUNSEL'S

10    TABLE.

11             MS. DODDAMANI:  JUDGE, YOU WERE KIND ENOUGH

12    TO GIVE ME SOME TIME TO RESPOND TO THE MOTION FOR NEW

13    TRIAL AND GET THE TRANSCRIPT, AND I DID DO THAT.

14             THE COURT:  ALL RIGHT.

15             I READ THE MOTION.  I READ THE TRANSCRIPT.

16             IS THERE ANYTHING YOU WANTED TO ADD OR

17    ANYTHING?

18             MR. FREEMAN:  YES, YOUR HONOR.  THANK YOU.

19             SHOULD I STAND AT THE LECTURN?

20             THE COURT:  IF YOU WANT TO.

21             MR. FREEMAN:  JUDGE, FOR THE PURPOSES OF THE

22    RECORD, THE COURT SHOULD BE AWARE THAT I DO HAVE A

23    WITNESS AVAILABLE IN REFERENCE TO THE PORTION OF THE

24    MOTION THAT TALKS ABOUT INEFFECTIVE ASSISTANCE OF

25    COUNSEL.  I HAVE SUBPOENAED AND I UNDERSTAND HE IS IN

                               3

 1     THE BUILDING, THE FORMER ATTORNEY ON THIS MATTER, WHO I

 2     WOULD BE PREPARED TO PUT ON THE WITNESS STAND TO BACK

 3     UP THE FACTUAL ASSERTIONS THAT ARE CONTAINED IN THE

 4     OFFER OF PROOF THAT WAS FILED ALONG WITH THE MOTION

 5     ITSELF.

 6          JUDGE, THERE ARE AN AWFUL LOT OF ISSUES THAT

 7     HAVE BEEN RAISED IN THIS MOTION.  I AM HAPPY TO GO

 8     THROUGH THAT THEM INASMUCH DETAIL AS THE COURT WANTS.

 9          THE COURT:  I THINK YOU NEED TO GO THROUGH

10     THEM ONE AT TIME, FOR ONE THING, AND ALLOW A RESPONSE

11     AND DECISION ON EACH ISSUE.

12          SO YOU CAN START.

13          MR. FREEMAN:  THANK YOU, YOUR HONOR.

14          MANY OF THE GROUPS -- WELL, LET ME JUST START

15     BY SAYING THAT THE FOUNDATION HERE IS THAT YOU HAVE THE

16     DISCRETION TO GRANT THIS MOTION TODAY, AND THAT IS, IN

17     FACT, WHAT WE ARE ASKING YOU TO DO.

18          TURNING TO PAGE 5 OF THE MOTION, IT IS OUR

19     POSITION, YOUR HONOR, THAT BECAUSE THE COLLECTIVE

20     INEFFECTIVE ASSISTANCE IN THIS CASE PERMITS THE

21     ON-GOING OWNERSHIP, MULTIPLE OWNERSHIP -- MULTIPLE

22     OWNERSHIP OF FIREARMS, LAWFUL CARRYING OF CONCEALED

23     WEAPON PISTOL AS EVIDENCE OF A PROPENSITY FOR VIOLENCE.

24          AS A MATTER OF LAW, THERE SHOULD NOT HAVE

25     BEEN THAT NEGATIVE INFERENCE.  THE JURY SHOULD NOT HAVE

                              4

1    HEARD THAT INFORMATION, AND BEEN ABLE TO DRAW NEGATIVE

2    INFERENCE FROM IT.  THIS IS LAID OUT IN GREAT DETAIL AT

3    PAGES 5 AND 6 OF THE MOTION.

4         DID YOU WANT TO ME TO STOP AT THAT ISSUE,

5    EACH ISSUE, ALLOW FOR A RESPONSE FROM THE PROSECUTOR?

6         THE COURT:  YES.

7         MR. FREEMAN:  OKAY.

8         MS. DODDAMANI:  JUDGE, MOST OF WHAT MY

9    ARGUMENT IS IS CONTAINED IN THE BRIEF; MY RESPONSIVE

10   BRIEF THAT I FILED.

11        HIS RIGHT TO POSSESS FIREARMS WAS NOT ANY

12   QUESTION IN THIS CASE; JUST THE MERE FACT OF BRINGING

13   UP HIS LEGAL POSSESSION OF THOSE THINGS WAS NEVER

14   BROUGHT UP IN A MANNER THAT MADE HIM APPEAR VIOLENT, OR

15   WRONG, OR EVER COMMENTED ON.

16        HIS LEGAL POSSESSION OF THOSE THINGS WAS

17   ACTUALLY MADE LIGHT OF, AND THE FACT THAT THIS TRIAL

18   WAS NOT ACTUALLY ABOUT HIS OWNERSHIP OF MULTIPLE GUNS

19   OR HIS OWNERSHIP IN THE HOUSE WITH THE MULTIPLE GUNS,

20   OR HIS RIGHT TO CARRY A GUN.  IN FACT, IT WAS QUOTED

21   FROM THE TRANSCRIPT IN OPENING STATEMENT ABOUT HOW -- I

22   SAID, THIS CASE IS NOT ABOUT ACTUAL POSSESSION OF THE

23   GUN, BECAUSE HE HAD A CCW PERMIT, AND HE LEGALLY COULD

24   CARRY THAT WEAPON.  AND THEN I WENT ON TO TALK ABOUT

25   WHAT THIS CASE WAS REALLY ABOUT.

```
 1                   SO I DON'T BELIEVE, EVEN IF THOSE THINGS WERE

 2       MENTIONED, NOTHING, ANYTHING, NOTHING WAS NEGATIVE

 3       DRAWN FROM THAT.

 4                   MR. FREEMAN:  JUDGE, IF I MAY, THE FACT THAT

 5       MY CLIENT HAD OTHER GUNS IN HIS HOUSE IS TOTALLY

 6       IRRELEVANT.  THE JURY SHOULD NEVER HAVE HEARD IT,

 7       BECAUSE WE KNOW THAT GUN OWNERSHIP IS A HIGHLY

 8       POLITICALLY CHARGED ISSUE.

 9                   THERE WERE SOME ISSUES WITH RESPECT TO VOIR

10       DIRE THAT I WILL GET INTO, BUT THE FACT THAT THERE WAS

11       NOT A THOROUGH EXPLORATION OF THE JUROR'S ATTITUDES

12       WITH RESPECT TO GUNS, AND THEN THERE WAS EVIDENCE

13       ADMITTED THAT WAS TOTALLY IRRELEVANT THAT MY CLIENT HAD

14       ADDITIONAL GUNS IN THE HOME, ALLOWED THEM TO DRAW A

15       NEGATIVE INFERENCE FROM THAT.  IT SHOULD HAVE BEEN

16       EXCLUDED.  IT WAS PREJUDICIAL.

17                   WE DON'T KNOW WHAT ROLE IT PLAYED WITH EACH

18       INDIVIDUAL JUROR.  BUT IT SHOULD NOT HAVE BEEN ALLOWED

19       AND IT IS YET ONE FACTOR, ONE OF THE MISTAKES IN THE

20       TRIAL THAT SHOULD BE CORRECTED BY WAY OF A NEW TRIAL.

21                   THE COURT:  ALL RIGHT.

22                   THAT ASSERTION IS, AT THIS POINT, AND WHAT

23       HAS BEEN PUT ON THE RECORD, BESIDES THE MOTION, AND THE

24       OPPORTUNITY TO PUT IT ON THE RECORD, THE COURT HAS

25       GIVEN YOU EVERY OPPORTUNITY TO SHOW HOW IT HAS BEEN
```

1    PREJUDICIAL, AND YOU ARE NOT.

2              AT THIS POINT, AGAIN, IT'S MERE SPECULATION.

3    IT'S LESS THAN MERE SPECULATION, IT'S A POSSIBILITY.

4              MR. FREEMAN:  JUDGE --

5              THE COURT:  COUNSEL, I DID NOT INTERRUPT YOU.

6              MR. FREEMAN:  I APOLOGIZE.

7              THE COURT:  WE'LL GET INTO THE ISSUE AGAIN ON

8    VOIR DIRE.  BUT I DISAGREE THAT THE ISSUE WAS NOT

9    COVERED.  CLEARLY IT WAS.  AND, IN FACT, I KNOW AT

10   PART -- AT LEAST ONE OF THE QUESTIONS WAS SPECIFICALLY

11   SUBMITTED BY COUNSEL FOR THE COURT TO ASK ABOUT A GUN;

12   BUT THE COURT DID COVER THAT ISSUE.

13             BEYOND THAT, THE WAY THAT THE EVIDENCE WAS

14   PRODUCED WAS IN A WAY PERTAINING TO FOLLOW-UP

15   QUESTIONS, PERTAINING TO THE RES GESTAE OF THE CASE,

16   WHAT HAPPENED, WHAT THE POLICE DID ON THAT DAY, WHAT

17   THEY SAW.  THAT WAS IT.  IT WAS PRETTY MUCH IN

18   FOLLOW-UP QUESTIONS.

19             YOU CAN CHARACTERIZE IT, BUT THAT'S ALL YOU

20   HAVE DONE SO FAR, AS SHOWING THAT ALTHOUGH THEY WERE

21   INSTRUCTED ON THE RIGHT TO CARRY, THE RIGHT TO CARRY A

22   WEAPON, AND THAT THE DEFENDANT HAD THAT RIGHT, AND THE

23   WEAPONS IN THE HOME; THERE IS NO SHOWING THAT THAT

24   INFORMATION WAS PREJUDICIAL OR SUBMITTED TO THE JURY IN

25   A PREJUDICIAL MANNER.

1          AT THIS POINT, THE COURT IS GOING TO DENY THE

2     MOTION ON THAT POINT.

3          YOUR NEXT ISSUE.

4          MR. FREEMAN:  JUST FOR THE RECORD, I BELIEVE

5     THAT THERE MIGHT BE A NEED FOR AN EVIDENTIARY HEARING

6     ON THAT ISSUE.  WE MAY HAVE TO PARADE EACH AND EVERY

7     ONE OF THOSE JURORS IN HERE AND ASK THEM WHAT FACTOR

8     DID THAT PLAY.  IF THE BASIS FOR THE COURT -- FOR THE

9     RECORD, I UNDERSTAND YOU HAVE RULED.  BUT FOR PURPOSES

10    OF THE RECORD, I THINK THAT WE ARE ENTITLED TO AN

11    EVIDENTIARY HEARING ON THAT PARTICULAR ISSUE.

12          I'LL MOVE ON TO THE NEXT WISH, IF I MIGHT.

13          THE COURT:  YES.

14          MR. FREEMAN:  YOUR HONOR, WITH RESPECT TO THE

15    ARGUMENTS THAT ARE MADE ON PAGE 6, THE WAY THAT THE

16    FACTS WERE CHARACTERIZED, AND THE WAY THAT THE LAW WAS

17    PRESENTED TO THIS JURY WAS SUCH --

18          THE COURT:  I DON'T KNOW WHAT KIND OF ORDER

19    YOU ARE PROCEEDING ON, BUT ON PAGE 5, YOU STILL HAVE

20    THE VOIR DIRE ISSUE.

21          MR. FREEMAN:  YOUR HONOR, THAT'S CORRECT.

22          ON PAGE 5, BECAUSE THIS WAS UNDER THE HEADING

23    THAT WE HAVE ALREADY DISCUSSED, THAT'S WHY I MOVED ON,

24    BUT I WOULD BE HAPPY TO ADDRESS IT.

25          THE COURT:  I'M NOT ASKING YOU IF YOU WANT TO

8

 1      ADDRESS IT AT ANY POINT.  YOU SHOULD ADDRESS IT AT THE

 2      POINT YOU ARE.

 3              I DON'T WANT YOU TO SKIP IT, AND THEN GO

 4      BACK, BECAUSE IT'S VERY CONFUSING THAT WAY.  IF YOU

 5      WANT TO ADDRESS IT, IT SHOULD BE ADDRESSED NOW.

 6              MR. FREEMAN:  OKAY.  I WILL THEN DO THAT.

 7              JUDGE, THE COURT ASKED THE JURY HOW MANY

 8      INDIVIDUALS HAD GUNS OR CCW PERMITS, AND WHETHER THEY

 9      COULD SET ASIDE THEIR POTENTIALLY PRO-GUN VIEWS, BUT

10      THE CONVERSE QUESTION WAS NOT ASKED.

11              THE COURT:  THAT'S NOT TRUE.  PAGE 21, IN THE

12      VOIR DIRE, THE COURT SPECIFICALLY STATED THAT -- PAGE

13      20, LINES 22 TO 25 AND THEN PAGE IN 21, LINE.  I DON'T

14      KNOW IF YOU HAVE A TRANSCRIPT RIGHT BEFORE YOU.  I

15      ACTUALLY DON'T.  BUT A FAIR READING OF THAT TRANSCRIPT

16      WOULD SHOW THOSE ISSUES -- IF ONE OF YOU WANTED TO

17      MAYBE READ PART OF THAT BEFORE YOU PROCEED, SO THAT I

18      CAN HAVE A RECORD OF IT?

19              MAYBE THE PROSECUTOR SHOULD READ IT INTO THE

20      RECORD.  WE ARE NOT GOING TO BE READING PAGES, BUT I

21      JUST WANT A RECORD OF IT.  I DON'T HAVE THE TRANSCRIPT

22      RIGHT IN FRONT OF ME.

23              MS. DODDAMANI:  I'M HAPPY TO, JUDGE.  NOW THE

24      CHARGES IN THIS PARTICULAR CASE YOU HEARD, ASSAULT WITH

25      A DANGEROUS WEAPON, DID MAKE AN ASSAULT UPON ERIC

                                9

1     WATSON WITH A DANGEROUS WEAPON, TO WIT: A PISTOL,

2     WITHOUT INTENT TO COMMIT THE CRIME OF MURDER OR INFLICT

3     GREAT BODILY HARM LESS THAN THE CRIME OF MURDER AND

4     FELONY FIREARM, A PISTOL.

5          IS THERE ANYONE HERE WHO HAS HAD SIMILAR

6     EXPERIENCES IN THEIR LIVES, EITHER BEING CHARGED OR THE

7     VICTIM OF ANY TYPE OF OFFENSE?  IS THERE ANYONE WELL,

8     ON THE CHARGE OF FELONY FIREARM, LET ME TELL YOU THAT

9     MOST PEOPLE HAVE OPINIONS ABOUT GUNS.  THE USE OF GUNS

10    AND THE RIGHT TO HAVE A GUN.

11         SOME PEOPLE FEEL THAT EVERYONE SHOULD HAVE A

12    RIGHT TO HAVE A GUN, SOME FEEL NO ONE SHOULD, AND SOME

13    PEOPLE FEEL -- A LOT OF PEOPLE FEEL IN BETWEEN.

14         NOW, I WOULD NOT, OF COURSE, DENY YOU YOUR

15    RIGHT TO HAVE AN OPINION, BUT I DO WANT TO TELL YOU AT

16    THE END OF THIS TRIAL I'M AM GOING TO HIS(SIC) THESE

17    TWO CHARETS AND HIS(SIC) THE ELEMENTS OF THEM.  WHAT

18    ARE THE ELEMENTS OF THESE CHARGES NUMBERED.  AND

19    WHATEVER I TELL YOU, AS FAR AS THE LAW, YOU MUST BE

20    ABLE TO AGREE TO FOLLOW IT.

21         THERE IS SOME PEOPLE WHOSE OPINION IS SO

22    STRONG AND INFLEXIBLE THAT THEY CAN'T FOLLOW THE LAW IN

23    DECIDING SOMETHING.  THEY WANT TO FOLLOW WHAT THEY

24    THINK.

25         THE COURT:  ALL RIGHT.  IF I COULD STOP YOU

                              10

1    THERE.

2              CLEARLY THAT'S TALKING ABOUT BOTH SIDES; BOTH

3    PEOPLE WHO BELIEVE THAT EVERYONE HAS A RIGHT TO HAVE,

4    SHOULD HAVE A RIGHT TO HAVE A GUN, AS WELL AS PEOPLE

5    WHO BELIEVE THAT NO ONE SHOULD.  SO THAT IS COVERED.

6    WHAT PAGE IS THAT?

7              MS. DODDAMANI:  THAT'S PAGE 21.

8              THE COURT:  GO AHEAD.

9              MS. DODDAMANI:  IS THERE ANY ONE WHO HAS SUCH

10   A STRONG OPINION ABOUT FIREARMS THAT YOU DON'T THINK

11   YOU CAN FOLLOW THE LAW I WOULD GIVE?  YOU WANT TO SET

12   YOUR OWN?  IS THERE ANYONE WHO HAS THAT FEELING?

13   ANYONE?  ALL RIGHT.

14             IS THERE ANYONE WHO -- HOW MANY OF YOU HAVE A

15   CCW PERMIT OR A GUN AT HOME?  RAISE YOUR HAND.  THOSE

16   OF YOU WHO RAISED YOUR HAND, I KNOW YOU DON'T KNOW MUCH

17   ABOUT THIS CASE YET.  BUT AT THIS TIME, DO YOU THINK

18   YOU CAN SET ASIDE YOUR OWN PERSONAL SITUATION AND

19   DECIDE THIS CASE JUST BY THE EVIDENCE AND LAW IN THIS

20   CASE AND NOTHING ELSE?

21             YOU ASKED A NUMBER OF JURORS.

22             MR. FREEMAN:  BUT THE QUESTION IS NOT ASKED.

23             THE COURT:  IT WAS ASKED BEFORE THAT, ON PAGE

24   20.  WERE YOU LISTENING?  AS I RECALL, THAT WAS MORE OF

25   A BROAD ASSERTION, THAT EVERYBODY HAS TO SET ASIDE

1    THEIR OPINIONS.

2              MR. FREEMAN:  THE COURT MINED INTO THE ISSUE

3    AS FAR AS PEOPLE WHO MAY HAVE PRO-GUN VIEWS.

4              THE COURT:  THAT'S IN YOUR OPINION, AND THE

5    COURT DENIES THE MOTION ON THAT GROUND.  CLEARLY IT WAS

6    ASKED.  IF THERE IS ANYONE WHO FEELS THAT NO ONE SHOULD

7    HAVE THE RIGHT TO HAVE GUNS, THAT WAS SPECIFICALLY

8    ASKED.  YOU CAN ONLY ASK IT THAT WAY.  YOU CAN'T SAY,

9    JUST SAY IS THERE ANYONE WHO DOESN'T HAVE A PERMIT TO

10   CARRY A CCW.  BECAUSE THAT DOESN'T ENURE TO AN OPINION.

11             I SAID, IS THERE ANYONE WHO FEELS THAT NO ONE

12   SHOULD HAVE A RIGHT TO HAVE A GUN, AND IF SO CAN YOU

13   SET ASIDE THAT OPINION.  SO THE ISSUE IS WELL COVERED

14   BY THAT.

15             MOVE ON TO YOUR NEXT ISSUE.

16             MR. FREEMAN:  YOUR HONOR, STARTING ON PAGE 6,

17   MOVING OVER TO PAGE 8, AND PORTION OF TEXT THAT IS

18   INCLUSIVE THERE, WHAT WAS ARGUED TO THE JURY AND WHAT

19   THE JURY WAS INSTRUCTED IS THAT ESSENTIALLY THE DISPLAY

20   OF A FIREARM CONSTITUTES THE USE OF DEADLY FORCE, AND

21   THAT IS NOT THE LAW.

22             THE ACTUAL USE OF DEADLY FORCE -- WHEN WE ARE

23   TALKING ABOUT A FIREARM -- UNLESS IT IS BEING USED TO

24   BEAT SOMEBODY WITH; WHAT WE ARE TALKING ABOUT IS

25   ACTUALLY PULLING THE TRIGGER.

1          THE COURT:  I READ YOUR MOTION AND ALTHOUGH

2     IT IS ARGUMENT ABOUT YOUR OPINIONS; WHERE IS THE

3     STATEMENT OF THE SPECIFIC JURY INSTRUCTION THAT WAS A

4     MISSTATEMENT OR THAT WAS INCORRECT, IN YOUR OPINION,

5     AND THE CORRECT JURY INSTRUCTION?

6          MR. FREEMAN:  THE MERE FACT THAT THE JURY WAS

7     INSTRUCTED, AS IF THIS WERE THE ACTUAL USE OF DEADLY

8     FORCE, AND THE JURY WAS TOLD THAT IN ORDER FOR --

9          THE COURT:  COUNSEL, RATHER THAN ARGUING YOUR

10    OPINION, IF YOU COULD STATE -- THE COURT HAS GIVEN THE

11    JURY INSTRUCTION TO THE JURY THAT IT READ.  IT WASN'T

12    IN -- THE COURT DOESN'T ARGUE TO A JURY.  SO IT'S

13    REALLY, IT WAS A LITTLE DIFFICULT TO GET THROUGH YOUR

14    MOTION AS FAR AS ASSERTING THAT THE JURY WAS

15    MISINSTRUCTED.  YET RATHER THAN USING JURY INSTRUCTION

16    NUMBERS OR NAMES, YOU ARE JUST GOING BASICALLY WITH

17    WHAT YOU'RE PUTTING ON THE RECORD.

18          SO FIRST OF ALL, I'M GOING TO LET THE

19    PROSECUTOR RESPOND TO THAT ON THE RECORD, SO MAYBE --

20          MR. FREEMAN:  I WASN'T FINISHED.

21          THE COURT:  I'M GOING TO LET HER ADDRESS THE

22    ISSUE, THEN I'LL LET IT GO BACK TO YOU, BECAUSE WHAT I

23    AM REQUESTING OF YOU IS TO GET THE POINT OF THE LAW AND

24    SPECIFIC JURY INSTRUCTION, RATHER THAN YOUR ARGUMENT AT

25    THIS POINT I THINK THAT WOULD BE EASIER TO FOLLOW, WITH

1       THE PROSECUTOR'S STATEMENT FIRST.

2           GO AHEAD.

3           MS. DODDAMANI:  THANK YOU, JUDGE.

4           MY UNDERSTANDING OF WHAT COUNSEL'S ARGUMENT

5       IS, IS THAT THE DEADLY FORCE INSTRUCTION SHOULD NOT

6       HAVE BEEN GIVEN BECAUSE NO DEADLY FORCE WAS USED;

7       BECAUSE THE DEFENDANT -- THE EVIDENCE SHOWED THE

8       DEFENDANT MERELY BRANDISHED A WEAPON.

9           BUT WHAT MY READING OF THE TRANSCRIPT IS, I

10      HAVE THE DETAILS, AND ALL OF THE STATEMENTS, WHERE EVEN

11      THE DEFENDANT SAID THAT HE POINTED THE GUN AT THE

12      VICTIM.

13          THIS IS A QUESTION OF DISPLAYING A GUN VERSUS

14      POINTING A GUN, AND CLEARLY A GUN WAS POINTED, WHICH IS

15      WHY WE BELIEVE THE DEADLY FORCE INSTRUCTION WAS GIVEN.

16          THAT'S MY ARGUMENT.

17          MR. FREEMAN:  JUDGE, SELF-DEFENSE IS AN

18      AFFIRMATIVE DEFENSE, WHICH REQUIRES MR. OGILVIE TO HAVE

19      AN HONEST AND REASONABLE BELIEF THAT HE WAS FACING AN

20      IMMINENT THREAT OF DEATH.

21          THE COURT:  BUT YOU ARE NOT ADDRESSING -- WE

22      HAVE TO ADDRESS ONE ISSUE AT A TIME.

23          YOUR ARGUMENT HERE THAT YOU STARTED WITH, WAS

24      THE USE OF DEADLY FORCE, AND YOU'RE ARGUING ABOUT

25      BRANDISHING, AND SHE IS RESPONDING TO THAT.

14

 1              NOW YOU ARE SWITCHING TO SELF-DEFENSE.

 2              MR. FREEMAN:  NO, JUDGE.  THE WAY THE JURY

 3    WAS INSTRUCTED ON THE LAW OF SELF-DEFENSE HERE, AND

 4    SPECIFICALLY IN THIS PARTICULAR ISSUE, WHAT MR. OGILVIE

 5    HAD TO BELIEVE IN ORDER TO USE DEADLY FORCE; THAT WAS

 6    INCORRECT.  BECAUSE MR. OGILVIE, THE EVIDENCE SHOWED,

 7    THERE WAS NO ACTUAL USE OF DEADLY FORCE.  WHAT THERE

 8    WAS WAS A THREATENED USE OF DEADLY FORCE.

 9              THE COURT:  HOW DO YOU FIGURE THAT?

10              MR. FREEMAN:  HE DIDN'T PULL THE TRIGGER, AND

11    IT DIFFUSED THE SITUATION.

12              YOUR HONOR, YOU CAN ASK ANY LAW ENFORCEMENT

13    OFFICER, THEY TAKE GRADUATED STEPS WHEN IN A VIOLENT

14    SITUATION.  THEY START WITH THE LEAST SEVERE.

15              THE COURT:  I DON'T WANT TO KNOW ABOUT YOUR

16    BACKGROUND IN POLICE POLICY.  WE ARE TALKING ABOUT THE

17    LAW.

18              MR. FREEMAN:  I'M TRYING TO EXPLAIN --

19              THE COURT:  STOP.  I WANT YOU TO ADDRESS THE

20    LAW AS FAR AS SPECIFIC JURY INSTRUCTIONS YOU THINK WERE

21    INAPPROPRIATE, AND INSTEAD OF JURY INSTRUCTIONS THAT

22    WERE GIVEN, BECAUSE THEY ARE READ.  JURY INSTRUCTIONS

23    ARE NOT JUST AN ARGUMENT OR A LECTURE ON THE LAW, THESE

24    ARE SET JURY INSTRUCTIONS.  AND SO IF YOUR ARGUMENT IS

25    FELONIOUS ASSAULT CANNOT BE COMMITTED UNLESS YOU PULL

1      THE TRIGGER, I CAN'T REALLY BUY THAT BECAUSE THAT'S NOT

2      THE LAW.

3              IF YOU WANT TO GO BACK AND INSTRUCT ME ON

4      POLICE POLICY, AND HOW POLICE OFFICERS ARE TRAINED,

5      THAT'S NOT HELPFUL TO THIS ISSUE, BECAUSE THIS IS A

6      LEGAL ISSUE ON A JURY INSTRUCTION; LAW THAT IS GIVEN TO

7      THE JURY.

8              SO YOU NEED TO BETTER IDENTIFY AND STATE YOUR

9      LEGAL ARGUMENTS WITH LEGAL POSITIONS.

10             MR. FREEMAN:  YOUR HONOR, THE JURY WAS TOLD

11     THAT THE DEFENDANT NEEDED THE SAME LEVEL OF FEAR AND

12     PROVOCATION.

13             THE COURT:  STOP.  YOU CANNOT ARGUE THE JURY

14     WAS TOLD.  I WOULD ASK YOU --

15             MR. FREEMAN:  INSTRUCTED.

16             THE COURT:  YES.  THE JURY WAS GIVEN THE

17     INSTRUCTIONS.  STATE THE INSTRUCTION.  TELL ME WHAT

18     SUBSTITUTE INSTRUCTION YOU FEEL SHOULD HAVE BEEN GIVEN.

19             MR. FREEMAN:  I'M TRYING TO DO THAT.

20             THE COURT:  ALL RIGHT.  START WITH THE

21     INSTRUCTION NAME AND NUMBER, THEN.

22             MR. FREEMAN:  I DON'T BELIEVE THE RECORD

23     SHOWS THEY WERE NAMED AND NUMBERED.

24             THE COURT:  THERE IS NOT.

25             THE JURY INSTRUCTIONS AND THE TITLES YOU CAN

1    EASILY HAVE GOTTEN THE NAME AND NUMBER FROM.  BUT THERE

2    IS ALSO -- WE KEEP THESE SINCE YOU ARE NOT THE TRIAL

3    ATTORNEY.  SO WE HAVE THE JURY INSTRUCTIONS.

4              MR. FREEMAN:  JUDGE, I'M HOLDING THE

5    TRANSCRIPT OF THE TRIAL.  THIS IS WHAT I BASED MY

6    ARGUMENT ON, NOT WHAT IS WRITTEN ON A PIECE --

7              THE COURT:  I UNDERSTAND THAT.

8              MR. FREEMAN:  BASED UPON MY ARGUMENT ON WHAT

9    THE JURY WAS SPECIFICALLY TOLD, WHICH IS ALL WRITTEN

10   DOWN, AND WHAT THIS JURY WAS TOLD IS THAT MR. OGILVIE

11   HAD TO HAVE THE SAME DEGREE OF PROVOCATION.

12             THE COURT:  AS AN ATTORNEY, DO YOU KNOW WHAT

13   INSTRUCTION THAT IS?

14             MR. FREEMAN:  YOUR HONOR, I WOULD BE HAPPY TO

15   TAKE THE COURT'S TIME AND FIND IT.

16             THE COURT:  AFTER YOU LOOK IN THE TRANSCRIPT,

17   I'M GOING TO RECALL THIS CASE AFTER YOU FIND THE JURY

18   INSTRUCTIONS.

19             THANK YOU.

20             MR. FREEMAN:  I WILL NEED A COPY OF THE JURY

21   INSTRUCTIONS THEN, YOUR HONOR.

22             THE COURT:  YOU CAN HAVE THESE.

23             MR. FREEMAN:  I'M GOING ON WHAT THE JURY IS

24   TOLD, NOT WHAT IS WRITTEN ON PAPER.

25             THE COURT:  YOU CAN COMPARE THEM.  COMPARING

17

1    THEM WOULD BE HELPFUL TO YOUR ARGUMENT.

2              MR. FREEMAN:  FINE.

3              THE COURT:  GIVE HIM THE JURY INSTRUCTIONS

4    BOOK, AND LET HIM PREPARE.

5              (BRIEF RECESS)

6              THE CLERK:  RECALLING CASE NUMBER 09-25646,

7    PEOPLE VERSUS ERIC OGILVIE.

8              MS. DODDAMANI:  SITA DODDAMANI, AGAIN, FOR

9    THE PEOPLE.

10             MR. FREEMAN:  JOHN FREEMAN ON BEHALF OF

11   MR. OGILVIE, WHO IS SEATED AT COUNSEL'S TABLE.

12             THE COURT:  AGAIN, I GAVE YOU BOTH AN

13   OPPORTUNITY FOR LEGAL ARGUMENT ON THE REMAINING ISSUES.

14             YOU MAY PROCEED.

15             MR. FREEMAN:  THANK YOU, JUDGE.

16             BEFORE WE TOOK A BREAK, WE WERE TALKING ABOUT

17   THE JURY INSTRUCTIONS WITH RESPECT TO DEADLY FORCE.

18             I WANT TO, WITH THE COURT'S PERMISSION,

19   HIGHLIGHT WHERE I THINK THERE ARE SOME PROBLEMS.  THE

20   PROBLEMS ARE NOT JUST WITH THE JURY INSTRUCTIONS, THEY

21   ARE ALSO A COMBINATION OF THE JURY INSTRUCTIONS AND THE

22   ARGUMENTS BY THE PROSECUTION.

23             IN BOTH OF THOSE SITUATIONS, THE ARGUMENTS BY

24   THE PROSECUTION AND THE JURY INSTRUCTIONS, THERE WAS A

25   FAILURE TO MAKE A DISTINCTION, AND THE DISTINCTION

1     SHOULD HAVE BEEN BETWEEN THE USE AND THE THREATENED

2     USE.

3            LET ME GIVE YOU, THE COURT, AN EXAMPLE,

4     PLEASE.  IF SOMEONE PUNCHES ME, UNLESS IT'S MIKE TYSON,

5     IT'S PROBABLY NOT GOING TO KILL ME.  IF I AM DOING

6     SOMETHING TO THAT PERSON AND THEY SAY:  HEY, GET AWAY,

7     OR I AM GOING TO PUNCH YOU, THEY HAVE THREATENED TO USE

8     FORCE, BUT THEY HAVEN'T ACTUALLY USED IT.

9            IN THIS SITUATION WITH MR. OGILVIE, HE DIDN'T

10    ACTUALLY USE DEADLY FORCE, BECAUSE HE DIDN'T PULL THE

11    TRIGGER.  WHAT HE DID WAS THREATEN THE USE.

12           THE COURT:  COUNSEL, I HAVE HEARD THIS

13    ARGUMENT AND I HAVE ALSO READ IT, AND IT SOUNDS LIKE A

14    CLOSING ARGUMENT.

15           MR. FREEMAN:  WHAT I'M ASKING -- I'M TRYING

16    TO POINT OUT FOR THE COURT, IS THE PROPOSAL, OR WHAT I

17    WOULD HAVE ASKED THIS COURT TO INSTRUCT THE JURY ON,

18    NOT THE USE OF DEADLY FORCE, NOT EVEN THE USE OF FORCE,

19    BUT RATHER THE THREATENED USE OF DEADLY FORCE.

20           I WOULD LIKE TO POINT TO A SPECIFIC PORTION

21    OF THE RECORD WHERE THE JURY WAS SPECIFICALLY

22    INSTRUCTED ON THE USE OF DEADLY FORCE.  TURNING TO PAGE

23    185 ON LINE 20, THE JURY WAS INSTRUCTED:  FIRST, AT THE

24    TIME HE ACTED, THE DEFENDANT MUST HAVE HONESTLY AND

25    REASONABLY BELIEVED HE WAS HE IN DANGER OF BEING KILLED

      1          OR SERIOUSLY INJURED OR SEXUALLY ASSAULTED.  THAT IS

      2          WHAT IS REQUIRED FOR THE ACTUAL USE OF DEADLY FORCE.

      3                   THAT IS A HIGHER STANDARD THAN WHAT IS

      4          REQUIRED FOR JUST THREATENED USE OF DEADLY FORCE.

      5                   TURNING TO PAGE 186, AT LINE 7, THE JURY WAS

      6          INSTRUCTED:  SECOND, A PERSON MAY NOT KILL OR SERIOUSLY

      7          INJURY -- IT'S A MISTAKE IN THE ORIGINAL -- ANOTHER

      8          PERSON JUST TO PROTECT HIMSELF AGAINST WHAT SEEMS LIKE

      9          A THREAT OF ONLY MINOR INJURY.  THE DEFENDANT MUST HAVE

     10          BEEN AFRAID OF DEATH OR SERIOUS PHYSICAL INJURY OR

     11          SEXUAL ASSAULT.

     12                   HERE THE COURT IS COMPARING THE STANDARD FOR

     13          SELF-DEFENSE COUNT FOR ACTUAL USE OF FORCE WITH A

     14          STATEMENT REGARDING THE KILLING OR THE SERIOUS INJURY

     15          OF ANOTHER PERSON.

     16                   ON PAGE 188, AT LINE 23, THE JURY WAS

     17          INSTRUCTED:  A PERSON CAN USE DEADLY FORCE IN

     18          SELF-DEFENSE ONLY WHERE IT IS NECESSARY TO DO SO.  IF

     19          THE DEFENDANT COULD HAVE SAFELY RETREATED, BUT DID NOT

     20          DO SO, YOU MAY CONSIDER THAT FACTOR IN DECIDING WHETHER

     21          THE DEFENDANT HONESTLY AND REASONABLY BELIEVED HE

     22          NEEDED TO USE DEADLY FORCE IN SELF-DEFENSE.

     23                   THE INSTRUCTION CONTINUES, AND I'M NOT GOING

     24          TO TAKE UP THE COURT'S TIME TO READ IT.  BUT IT GOES

     25          ALL THE WAY DOWN ON PAGE 189 TO LINE 16, AND THERE ARE

                                     20

1    SEVERAL INSTANCES IN THERE WHERE THE JURY WAS

2    INSTRUCTED ABOUT THE USE OF DEADLY FORCE.

3         POINTING A GUN AT SOMEBODY IS THE

4    THREATENED USE OF DEADLY FORCE; IT IS NOT THE ACTUAL

5    USE.  AND IT ISN'T JUST ME SAYING THAT, THERE IS A

6    GREAT DEAL OF LAW ON THIS TOPIC WHICH IS CITED IN MY

7    BRIEF.

8         IF I MAY JUST HAVE A MOMENT, YOUR HONOR, I'M

9    LOOKING NOW AT PAGE 6.  THERE ARE CASES FROM MAINE,

10   FLORIDA, MASSACHUSETTS, TEXAS AND THEN THERE ARE ALSO

11   STATUTES, IN OTHER STATES SUCH AS NEW JERSEY, NEBRASKA,

12   THAT ALL STAND FOR THAT PROPOSITION THAT THERE IS A

13   FUNDAMENTAL DISTINCTION BETWEEN THE USE OF DEADLY FORCE

14   AND THE THREATENED USE OF DEADLY FORCE.

15        WHAT THIS JURY WAS INSTRUCTED WITH RESPECT TO

16   THE ACTUAL USE OF DEADLY FORCE WAS INAPPROPRIATE IN

17   THIS PARTICULAR CASE.

18        YOUR HONOR, ALSO AT PAGES 165 AND AGAIN AT

19   167, PARTICULARLY LINE 15, THE PROSECUTION SPECIFICALLY

20   ARGUED THAT MR. OGILVIE -- PROSECUTION SPECIFICALLY

21   ARGUED THAT MR. OGILVIE USED -- THIS WAS A DEADLY FORCE

22   CASE.  PAGE 167, LINE 15, THE PROSECUTOR'S CLOSING

23   ARGUMENT:  THE LAW ALLOWS THAT YOU CAN USE DEADLY FORCE

24   IF YOU FEEL LIKE YOU WERE IN DANGER.  AND THE

25   PROSECUTOR CONTINUES.

1           AGAIN, THE MIXTURE OF THE COURT'S INSTRUCTION

2    COMBINED WITH THE PROSECUTOR'S ARGUMENT LED THE JURY IN

3    A DIRECTION WHERE IT MISCONSTRUED OR WAS TOLD

4    INCORRECTLY WHAT THE LAW WAS, WAS INSTRUCTED THAT WAY,

5    AND THERE IS AN IMPORTANT PRINCIPLE THAT IS AT WORK

6    HERE.  THAT IS, IF A JURY COULD HAVE CORRECTLY OR

7    INCORRECTLY UNDERSTOOD THE JURY INSTRUCTION, WHEN YOU

8    LOOK BACK AND MONDAY MORNING QUARTER BACK; YOU HAVE TO

9    PRESUME THAT THEY UNDERSTOOD IT INCORRECTLY.  IN

10   SANSTRUM(PHONETIC) VERSUS MONTANA, A UNITED STATES

11   SUPREME COURT CASE, I DO NOT UNFORTUNATELY HAVE THE

12   CITE, STANDS FOR THAT PROPOSITION.

13          I HAVE TAKEN A LOOK AT THE MICHIGAN CRIMINAL

14   JURY INSTRUCTIONS THAT THE COURT PROVIDED DURING THE

15   BREAK.  I AM NOT USING THAT THERE IS ANY DELIBERATE

16   DESIRE TO MISINFORM THE JURY ON THE LAW.  I'M NOT

17   SAYING THAT AT ALL.  BUT THE FACT THAT SOMETHING IS

18   WRITTEN IN THE PATENT JURY INSTRUCTIONS DOES NOT

19   NECESSARILY MAKE IT CORRECT.  THERE IS NOTHING -- I SEE

20   YOU'RE PUZZLED.

21          THE COURT:  COUNSEL, I WAS GIVING YOU THOSE

22   INSTRUCTIONS FOR YOU TO HAVE AN OPPORTUNITY TO MAKE A

23   RECORD.  YOU STATE YOU WOULD HAVE REQUESTED DIFFERENT

24   INSTRUCTIONS.  SO I WANTED TO GIVE YOU THE OPPORTUNITY

25   TO MAKE A RECORD OF WHAT INSTRUCTION, SPECIFICALLY,

1    WITH THE NUMBER AND NAME, YOU WOULD HAVE GIVEN; SINCE

2    YOU DON'T HAVE IT WITH YOU.  THAT'S THE REASON.

3    BECAUSE WHATEVER ELSE YOU ARE SAYING -- GO AHEAD.

4              MR. FREEMAN:  JUDGE, THE INSTRUCTION THAT

5    SHOULD HAVE BEEN GIVEN IS NOT PRINTED IN HERE, BECAUSE

6    THE PATENT INSTRUCTIONS DO NOT ACCOUNT FOR THE

7    DISTINCTION; THE VERY IMPORTANT DISTINCTION THAT ALL

8    THESE OTHER STATES MAKE.

9              THE COURT:  EXACTLY.

10             MR. FREEMAN:  BETWEEN THE THREATENED USE AND

11   ACTUAL USE.  AND JUST BECAUSE -- UNLIKE THE CIVIL

12   PATENT INSTRUCTIONS, THE USE OF THE CRIMINAL JURY

13   PATENT ONES IS NOT MANDATORY.  IT HAS NOT BEEN APPROVED

14   BY THE MICHIGAN SUPREME COURT.

15             I HAVE CITED A COUPLE OF CASES WITH RESPECT

16   TO THAT PROPOSITION AT FOOT NOTE 6, ON PAGE 7, IN THE

17   MOTION.

18             YOUR HONOR, THERE IS ANOTHER ERROR IN THE

19   JURY INSTRUCTIONS THAT HAS TO DO WITH THE INSTRUCTIONS

20   THAT THE JURY RECEIVED REGARDING THE DUTY TO RETREAT.

21   THERE SHOULD NOT HAVE BEEN ANY MENTION, AT ALL, IN THIS

22   CASE REGARDING A DUTY TO RETREAT.

23             WHAT I AM REFERRING TO IS THE INSTRUCTION

24   THAT APPEARS AT PAGE 188, LINE 23 THROUGH 189, AT LINE

25   3.  THAT IS THE INITIAL PROBLEM WE HAVE ALREADY

1    DISCUSSED, WHICH IS THE TERM USE OF DEADLY FORCE.  BUT

2    ALSO COMBINED WITH THAT INSTRUCTION, IT CREATES --

3    THERE IS LANGUAGE THAT SPECIFICALLY STATES A PERSON CAN

4    USE DEADLY FORCE IN SELF-DEFENSE ONLY WHERE IT IS

5    NECESSARY TO DO SO.

6             IF THE DEFENDANT COULD HAVE SAFELY RETREATED,

7    BUT DID NOT DO SO, YOU MAY CONSIDER THAT FACTOR IN

8    DECIDING WHETHER THE DEFENDANT HONESTLY AND REASONABLY

9    BELIEVED HE NEEDED TO USE DEADLY FORCE IN SELF-DEFENSE.

10   THIS SELF-DEFENSE -- THAT INSTRUCTION GIVEN THE STATE

11   OF THE LAW, IN THE STATE OF MICHIGAN AT THE PRESENT

12   TIME, AND TIME OF THE OFFENSE, IS INCORRECT.

13             THERE IS NO DUTY TO RETREAT.  AND THE JURY

14   SHOULDN'T HAVE BEEN TOLD ANYTHING ABOUT DUTY TO

15   RETREAT.

16             THE COURT:  SO YOU ARE SAYING THAT DUTY TO

17   RETREAT CJI, 2ND 716, THE NEW INSTRUCTION FOR USE AFTER

18   USE AFTER OCTOBER 1ST, OF 2006, SHOULD NOT HAVE BEEN

19   GIVEN, OR JUST THE COURT SUA SPONTE SHOULD HAVE DELETED

20   NO. 1, AND JUST READ NO. 2?

21             MR. FREEMAN:  JUDGE, I CAN ONLY GO ON WHAT I

22   SEE IN THE RECORD.  I'M NOT PREPARED TO DEBATE IT.

23             THE COURT:  COUNSEL, THAT'S THE REASON WHY I

24   GAVE YOU A LOT OF TIME AND ALL MY JURY INSTRUCTION

25   BOOKS, SO THAT YOU COULD SEE WHAT THE COURT READ, AND

24

1    SEE THAT JURY INSTRUCTION, AND ALLOW YOU TO SEE THEM,

2    AT LEAST, BECAUSE YOU CAN READ IT IN THE TRANSCRIPT.

3    BUT IT IS ALSO -- YOU'RE LEAVING OUT -- YOU ARE CAUSING

4    AN UNFINISHED RECORD.

5         THE COURT DID READ NO. 1, WHAT YOU JUST

6    QUOTED WAS NO. 1 OF CJI 2ND, 7.16, NEW INSTRUCTIONS TO

7    BE GIVEN AFTER OCTOBER 1ST, 2006. AND NO. 2 READS:

8    HOWEVER, A PERSON IS NEVER REQUIRED TO RETREAT IF

9    ATTACKED IN HIS OR HER OWN HOME, NOR IF A PERSON REASON

10   REASONABLE BELIEVES THE ATTACKER IS ABOUT TO USE A

11   DEADLY WEAPON, NOR IF THE PERSON IS SUBJECT TO A SUDDEN

12   FIERCE AND VIOLENT ATTACK.

13        FURTHER, A PERSON IS NOT REQUIRED TO RETREAT

14   IF THE PERSON HAS NOT OR IS NOT ENGAGED IN THE

15   COMMISSION OF CRIME AT THE TIME THE DEADLY FORCE IS

16   USED, AND HAS A LEGAL RIGHT TO BE WHERE THE PERSON IS,

17   AND HAS AN HONEST AND REASONABLE BELIEF THAT USE OF

18   DEADLY FORCE IS NECESSARY FOR THE PREVENTION OF

19   IMMINENT DEATH, GREAT BODILY HARM, SEXUAL ASSAULT OF

20   THE PERSON OR ANOTHER.

21        MR. FREEMAN: JUDGE, I HAVE NOT COMPARED

22   WORD-FOR-WORD THE TEXT OF THE CJI TO THE TEXT OF WHAT

23   APPEARS IN THE RECORD ON THE TRANSCRIPT. WHAT I AM

24   SAYING IS THAT WHAT APPEARS IN THIS TRANSCRIPT AT PAGES

25   188, LINE 23 THROUGH 189, LINE 3, IN PARTICULAR, THE

```
 1          ISSUE WITH RESPECT TO SAFELY RETREATING, THAT THAT WAS
 2          IN ERROR.  THAT'S WHAT I'M SAYING.
 3                  THE COURT:  RESPONSE.
 4                  MS. DODDAMANI:  I DON'T AGREE WITH THAT.
 5                  I THINK DEFENSE COUNSEL IS TRYING TO READ
 6          PART OF THE RECORD, AND NOT INCLUDE THE ENTIRE CJI.
 7                  THE REASON YOU GAVE HIM THE OPPORTUNITY TO
 8          SIT DOWN AND LOOK AT THE JURY INSTRUCTIONS IS SO THAT
 9          HE COULD COMPARE WORD-FOR-WORD WHAT THE PROBLEMS WERE,
10          AND WHETHER CERTAIN JURY INSTRUCTIONS SHOULD NOT HAVE
11          BEEN GIVEN.  WHAT THE CORRECT JURY INSTRUCTION IS, HAS
12          BEEN MODIFIED TO REFLECT THE LAW CURRENTLY, AND
13          CURRENTLY AFTER THE RULINGS IN 2006.
14                  THE DEFENDANT'S ACTIONS, THE SECOND ORIGINAL
15          PART OF THE ARGUMENT, WHICH IS THE THREAT VERSUS THE
16          ACTUAL USE OF DEADLY FORCE.  THERE IS NOTHING COUNSEL
17          CAN BRING HERE TO THIS COURT TO SAY, POINTING A GUN IS
18          JUST A THREAT, AND IS NOT AN ACTUAL USE.
19                  IT'S OUR POSITION THAT POINTING A GUN AT
20          SOMEONE WITH THE ABILITY TO PULL A TRIGGER IS THE USE
21          OF DEADLY FORCE; BECAUSE COMMON SENSE TELLS US THAT,
22          JUDGE.  THE CORRECT THING WAS READ; THE MODEL JURY
23          INSTRUCTION, 7.16.  IT HAS BEEN CHANGED TO REFLECT THE
24          CURRENT STATUTORY CHANGES.
25                  THANK YOU.
```

1           MR. FREEMAN:  JUDGE, IN RESPONSE TO THE WHOLE

2    ISSUE OF THREAT OF DEADLY FORCE, IT'S NOT ME SAYING IT.

3    I'M BASING IT ON WHAT I HAVE CITED IN THIS BRIEF, AT

4    PAGE 6:  MAIN VERSUS WILLIAMS, STEWART VERSUS FLORIDA,

5    TOLEDO V. FLORIDA, MASSACHUSETTS VERSUS CATALDO,

6    MASSACHUSETTS VERSUS KLEIN, NEW YORK VERSUS MAGLIATO,

7    MATTOX VERSUS TEXAS, AND ALSO PARENTHETICALS INCLUDED,

8    SOME INFORMATION WITH RESPECT TO NEW JERSEY VERSUS

9    MOORE, WHICH CONSTRUED A NEW JERSEY STATUTE AS HOLDING

10   THAT CONFRONTING AN INDIVIDUAL WITH A FIREARM IS NOT

11   USING DEADLY FORCE.

12           THERE IS A CASE OUT OF NEBRASKA, STATE VERSUS

13   RINCKER, DRAWING A KNIFE ON AN INDIVIDUAL WITH INTENT

14   TO SCARE THE VICTIM IS NOT USING LETHAL FORCE.

15           MS. DODDAMANI:  MAY I RESPOND?

16           MR. FREEMAN:  SO I HAVE POINTED TO SOMETHING.

17           MS. DODDAMANI:  MAY I RESPOND TO THAT?

18           THE COURT:  YES.

19           MS. DODDAMANI:  THE CASES THAT HE CITED, ONE,

20   ARE NOT MICHIGAN CASES, AND, TWO, ARE CASES WHERE

21   SOMEONE DISPLAYING OR BRANDISHING NOT POINTING A GUN AT

22   SOMEBODY, AND SAYING I WANT TO HURT YOU RIGHT NOW;

23   WHICH IS WHAT THE TESTIMONY WAS.

24           THE COURT:  RIGHT.  MISDEMEANOR CASES, IN THE

25   STATE OF MICHIGAN ON THOSE THAT ADDRESS WEAPON USE,

27

1     THAT ARE NOT FELONIES.

2          IN THIS CASE, THE DEFENDANT WAS CHARGED WITH

3     A FELONY.  THE COURT DID GIVE COUNSEL THE OPPORTUNITY

4     TO BOTH REVIEW THE COURT'S JURY INSTRUCTIONS, AND ALSO

5     ANYTHING ELSE COUNSEL WANTED TO REVIEW IN ORDER TO

6     SUBMIT WHAT COUNSEL'S PROPOSED MICHIGAN JURY

7     INSTRUCTION WOULD BE.

8          I HEARD COUNSEL'S ARGUMENT AND DEFENSE

9     COUNSEL ACTUALLY ALREADY RESPONDED TO THE PROSECUTOR'S

10    CURRENT ARGUMENTS, IN STATING THAT THESE ARE OUT OF

11    STATE CASES, AND THERE IS NO SPECIFIC MICHIGAN JURY

12    INSTRUCTION.

13         HOWEVER, COUNSEL WOULD HAVE BEEN EXPECTING

14    THE COURT TO EITHER SUA SPONTE OR UPON COUNSEL'S OWN

15    DECISION ON WHAT HE WOULD HAVE REQUESTED, HE WOULD HAVE

16    ASKED THIS COURT TO GIVE A SPECIAL INSTRUCTION AND

17    PROBABLY WOULD HAVE WRITTEN THAT INSTRUCTION.  THAT'S

18    WHAT I TAKE YOUR ARGUMENT TO BE, AT THIS POINT.

19         HOWEVER, GIVEN WHAT YOU'RE ARGUING TO THIS

20    COURT, THE COURT CANNOT GRANT YOUR MOTION BASED ON THAT

21    EXPECTATION AND FIND --

22         MR. FREEMAN:  JUDGE, I DO JUST WANT TO NOTE,

23    FOR THE RECORD, THAT MY CLIENT HAS A CONSTITUTIONAL

24    RIGHT TO HAVE GOTTEN THE INSTRUCTION -- THAT THE JURY

25    GET THE INSTRUCTIONS THE RIGHT WAY.

```
 1                    I HAVE CITED FEDERAL CASES TO THAT EFFECT.  I
 2      HAVE CITED FEDERAL CASES TO THAT EFFECT, ALSO THE
 3      MICHIGAN STATE CONSTITUTION WHICH SPECIALLY CONFERS A
 4      RIGHT, AN INDIVIDUAL RIGHT OF SELF-DEFENSE IN THE
 5      CONTEXT OF FIREARMS.
 6                    THE COURT:  RIGHT.
 7                    MR. FREEMAN:  SO IT'S MORE THAN, HEY, THERE
 8      ARE NO CASES HERE IN MICHIGAN.  THERE IS FEDERAL CASES.
 9                    THE COURT:  ALL RIGHT.
10                    BASED ON THE TRANSCRIPT --
11                    MR. FREEMAN:  AND THE MICHIGAN CONSTITUTION.
12                    THE COURT:  BASED ON THE TRANSCRIPT OF THE
13      EVIDENCE PRESENTED IN THIS CASE, AND THE INSTRUCTIONS
14      THAT WERE GIVEN, I CANNOT FIND THAT ANYTHING THAT YOU
15      HAVE STATED ON THE RECORD OR IN THE MOTION WOULD
16      SUPPORT A NEW TRIAL ON THIS ISSUE.
17                    ARE THERE ANY OTHER ISSUES?
18                    MR. FREEMAN:  THERE ARE, YOUR HONOR.
19                    THERE WAS TESTIMONY ELICITED BY THE
20      PROSECUTOR FROM THE WIFE, I THINK IT WAS MRS. WATSON IS
21      HER NAME, THE WIFE OF THE NEIGHBOR, THAT ENDED UP IN
22      THE DISPUTE WITH MY CLIENT.  SHE TESTIFIED THAT MY
23      CLIENT'S WIFE CAME OVER AND HAD A CONVERSATION
24      BASICALLY REGARDING REMOVING ITEMS FROM THE HOUSE, AND
25      I AM REALLY PARAPHRASING HERE.  I'M NOT READING FROM MY
```

1      MOTION.  MY MOTION IS A LITTLE BIT MORE PRECISE, AS TO

2      WHAT EXACTLY IS IN THE RECORD.

3              THE GIST OF IT IS THAT THE IMPRESSION WAS

4      CREATED IN FRONT OF THE JURY THAT THERE WAS SOME SORT

5      OF MARITAL DISCORD BETWEEN MY CLIENT AND HIS WIFE.

6      THERE IS ALSO A QUESTION THAT WAS ASKED OF MY CLIENT;

7      SOMETHING TO THE EFFECT, ARE YOU AWARE THAT YOUR WIFE

8      IS AFRAID OF YOU.

9              JUDGE, THAT INTRODUCED INTO THESE PROCEEDINGS

10     A SUGGESTION THAT DOMESTIC VIOLENCE -- A SUGGESTION OF

11     MARITAL DISCORD.  ALL OF THAT IS COMPLETELY IRRELEVANT,

12     AND UNDULY PREJUDICIAL TO MR. OGILVIE, AND THAT IS ONE

13     OF THE ADDITIONAL GROUNDS THAT I HAVE STATED.

14             IT ALSO CONSTITUTES A PROPENSITY FOR VIOLENCE

15     ARGUMENT, AND THAT'S ALL EXPLICITLY LAID OUT.

16             THE LAST THING THAT I AM PREPARED TO ADDRESS

17     IN GREAT LENGTH IN THE MOTION, AND IN THE OFFER OF

18     PROOF IN SUPPORT OF THE MOTION FOR NEW TRIAL, IS THE

19     INEFFECTIVE ASSISTANCE OF COUNSEL.

20             I RECOGNIZE THAT WE HAVE BEEN HERE FOR A

21     SUBSTANTIAL AMOUNT OF TIME THIS MORNING.  I AM PREPARED

22     TO GO INTO AS MUCH DETAIL AS THE COURT WANTS TO HEAR ON

23     INEFFECTIVE ASSISTANCE OF COUNSEL ARGUMENT.

24             I HAVE ISSUED A SUBPOENA FOR THAT PRIOR

25     ATTORNEY.  I SPOKE WITH THAT PERSON ON THE TELEPHONE

1    THIS MORNING.  AT THE TIME THAT I SPOKE WITH HIM, HE

2    WAS IN THE BUILDING.  I COULD VERY WELL PUT HIM ON THE

3    STAND NOW, AND ELICIT, IF THE COURT WANTS IT, SOME

4    FACTS THAT WILL BACK UP WHAT IS IN MY OFFER OF PROOF.

5                 SO I AM ASKING THE COURT TO CONSIDER THE

6    INEFFECTIVE ASSISTANCE OF COUNSEL GROUNDS THAT ARE LAID

7    OUT IN THE MOTION, AS YET ANOTHER BASIS FOR A NEW

8    TRIAL.

9                 THE COURT:  RESPONSE.

10                MS. DODDAMANI:  AS TO THE FIRST ONE REGARDING

11   DEFENDANT'S WIFE'S ACTION, JUDGE, WE ARE NOT CONCEDING

12   ERROR.  THAT'S NOT ERROR.  IF YOU DID FIND THAT, IT

13   WOULD STILL BE HARMLESS ERROR.  THE STANDARD IS VERY

14   HIGH, TO FIND SOMETHING THAT IS RELEVANT OR IRRELEVANT

15   TO HAVE CHANGED THE TRIAL SUBSTANTIALLY, SO THAT A

16   DIFFERENT OUT COME WOULD OCCUR.  THAT'S THE STANDARD.

17                ALSO FOR INEFFECTIVE ASSISTANCE, ADDRESSING

18   INEFFECTIVE ASSISTANCE, I DON'T THINK A GINTHER HEARING

19   IS WARRANTED.  WE HAVE A CASE HERE, JUDGE, WHERE THE

20   OUTCOME WOULD HAVE TO BE DIFFERENT BASED ON WHAT

21   COUNSEL DID OR DIDN'T DO.

22                IN THIS CASE THE DEFENDANT GOT ON THE STAND

23   AND ADMITTED HE POINTED A GUN AT SOMEBODY.  IT'S UP TO

24   THE JURY TO DECIDE WHETHER WHAT HE SAID OR DIDN'T SAY

25   CONSTITUTES A FAIR AND REASONABLE AND HONEST BELIEF

                           31

1       THAT HIS LIFE IS BEING THREATENED.

2                   JUDGE, ANYTHING THAT COUNSEL LISTED AND

3       EVERYTHING THAT COUNSEL LISTED WOULDN'T HAVE CHANGED

4       THAT RESULT, AND THAT'S WHAT WE ARE LOOKING FOR IN

5       STRICKLAND.

6                   IF THE COURT DECIDES TO GRANT A GINTHER

7       HEARING, I NEED TO ASK THE COURT TO DO IT FOR A

8       DIFFERENT DAY.  ONE, BECAUSE WE NEED MR. KOLODZIEJSKI,

9       AND WE ALSO NEED SOMEBODY FROM APPEALS TO CONDUCT A

10      GINTHER HEARING.  BUT I DON'T THINK A GINTHER HEARING

11      IS NECESSARY IN THIS CASE.

12                  THE COURT:  I WOULD ALLOW, IF COUNSEL WISHES,

13      TO FILE A MOTION FOR A GINTHER HEARING; SPECIFICALLY

14      FOR A HEARING.  THERE IS NOT A MOTION FILED FOR THE

15      HEARING.

16                  MR. FREEMAN:  IT'S ACTUALLY REQUESTED.  I

17      DIDN'T FILE A SEPARATE MOTION.

18                  THE COURT:  I WOULD ASK YOU TO FILE A

19      SEPARATE MOTION.  WE NEED TO KNOW WHAT YOU ARE FILING,

20      AND THE TIMEFRAME REQUIRED, AND THAT THERE WOULD BE

21      WITNESSES OR NOT WITNESSES, THE ISSUE OF INCOMPETENCE

22      OF COUNSEL, BRINGING IT IN YOUR MOTION FOR THIS PURPOSE

23      IS NOT ENOUGH.  SO ON THAT ONE, IF YOU WISH TO DO THAT

24      YOU MAY.

25                  ON THE OTHER ISSUE AS FAR AS THE STRICKLAND

1    STANDARD, AND THE INFORMATION THAT YOU ARGUE OF THE

2    PROSECUTOR AND THE QUESTIONS OF THE PROSECUTOR ON THE

3    DEFENDANT'S WIFE, AND ALSO OF THE DEFENDANT, IT DOESN'T

4    MEET A STANDARD FOR A NEW TRIAL, BECAUSE IN THIS TYPE

5    OF CASE, AND THIS CASE SPECIFICALLY, THE ARGUMENT FROM

6    START TO FINISH WAS WHETHER THE DEFENDANT HAD A RIGHT

7    TO SELF-DEFENSE IN THESE PARTICULAR CIRCUMSTANCES.

8           THAT'S HOW THE DEFENDANT FRAMED THIS CASE;

9    THAT HE BOTH HAD A LICENSE TO CARRY A WEAPON AND THE

10   RIGHT IN THIS PARTICULAR CASE.  BECAUSE OF THAT, ALL

11   SORTS OF INFORMATION CAME IN ABOUT THE PARTICULAR

12   CIRCUMSTANCES.

13          FOR INSTANCE, THE DEFENDANT'S STATE OF MIND,

14   HIS WIFE'S STATE OF MIND, THE STATE OF --

15          MR. FREEMAN:  HIS WIFE WASN'T THERE.

16          THE COURT:  SHE WAS.  IT WAS ALLEGED THAT HIS

17   WIFE WAS THERE DURING A GOOD PART OF THIS, AND THAT A

18   CHILD WAS PRESENT.  FOR THAT REASON --

19          MR. FREEMAN:  THE WIFE TESTIFIED -- NEVER

20   TESTIFIED.

21          THE COURT:  COUNSEL, PLEASE DON'T ARGUE WITH

22   THE COURT.  LET ME FINISH.

23          MR. FREEMAN:  I'M SORRY, JUDGE.

24          THE COURT:  THE TESTIMONY ON THE RECORD IN

25   THIS CASE WAS THAT DEFENDANT WAS OUTSIDE OF HIS HOME

33

1    WITH A SMALL CHILD, AND THAT HIS WIFE WAS IN THE AREA

2    AND CAME OUTSIDE DURING PART OF THIS INCIDENT, AND DID

3    MAKE COMMENTS.

4         FOR THAT REASON, THE WIFE'S ACTIONS AND HER

5    STATE OF MIND WERE BROUGHT IN.

6         THE DEFENDANT, IN HIS DEFENSE, SECONDLY, WAS

7    BRINGING IN HIS WIFE AND HIS CHILD, AND THE NEED FOR

8    PROTECTION AND ALL OF THOSE ISSUES.  IN THAT CONTEXT OF

9    THE EVIDENCE, IN THIS PARTICULAR CASE, CERTAINLY THE

10   TYPE OF QUESTIONING COULD NOT BE SEEN AS SOMETHING THAT

11   WOULD BE UNWARRANTED OR PREJUDICIAL ON THAT ISSUE.

12        THE COURT DENIES THE MOTION.

13        IF YOU WISH TO FILE OR SEEK A MOTION WITH A

14   HEARING REQUEST ON THE GINTHER ISSUES, THE COURT WILL

15   ALLOW FOR THAT, AND WE WILL SET A DATE FOR THAT, IF

16   THAT'S YOUR REQUEST.

17        THANK YOU.

18        MS. DODDAMANI:  THANK YOU, JUDGE.

19        MR. FREEMAN:  YOUR HONOR, THAT IS MY REQUEST.

20        THE COURT:  IT HAS TO BE DONE IN WRITING.

21        MR. FREEMAN:  ARE WE SETTING A DATE NOW?

22        THE COURT:  AFTER WE HAVE THE MOTION --

23        MR. FREEMAN:  CAN SET A DATE?

24        THE COURT:  -- IN WRITING.

25        MR. FREEMAN:  CAN WE SET A MOTION SCHEDULE,

34

```
 1    WHEN I NEED TO FILE, WHEN THE PROSECUTOR NEEDS TO

 2    RESPOND, JUST TO KEEP THINGS MOVING IN TIME?

 3            THE COURT:  DID YOU GO OVER THE PRE-SENTENCE

 4    REPORT ALL READY?

 5            IS THE COMPLAINANT HERE, TODAY?

 6            MS. DODDAMANI:  JUDGE FOR THE GINTHER

 7    HEARING, WE JUST NEED TRIAL COUNSEL.

 8            THAT IS ALL WE WOULD NEED.

 9            THE COURT:  HAVE YOU SEEN THE PRE-SENTENCE

10    REPORT?

11            THE CLERK:  JUDGE, HE HASN'T REVIEWED THE

12    PRE-SENTENCE REPORT.

13            MR. FREEMAN:  I'M GOING TO NEED A COUPLE

14    MINUTES.

15            THE COURT:  CALL SOMETHING ELSE.

16            (BRIEF RECESS)

17            THE CLERK:  WE ARE BACK ON THE RECORD ON

18    PEOPLE VERSUS ERIC OGILVIE.

19            MR. FREEMAN:  JOHN FREEMAN ON BEHALF OF

20    MR. OGILVIE, WHO IS STANDING TO MY LEFT.

21            MS. DODDAMANI:  SITA DODDAMANI FOR THE

22    PEOPLE.

23            THE COURT:  THIS IS THE TIME AND DATE SET FOR

24    SENTENCING IN THIS MATTER.

25            HAVE YOU REVIEWED THE PRE-SENTENCE REPORT
```

1    WITH YOUR CLIENT AND ARE THERE ANY ADDITIONS, DELETIONS

2    OR CHANGES YOU WISH TO MAKE TO THAT REPORT?

3              MR. FREEMAN:  YOUR HONOR, I HAVE HAD THE

4    OPPORTUNITY TO SPEAK WITH MY CLIENT, GO OVER THE

5    PRE-SENTENCE REPORT.

6              MY CLIENT HAS INDICATED TO ME THAT HE DOES

7    NOT WISH TO HAVE ANY ADDITIONAL TIME TO REVIEW, AND

8    THAT HE IS READY TO PROCEED TO SENTENCING.

9              IS THAT CORRECT, MR. OGILVIE?

10             DEFENDANT:  YES.

11             MR. FREEMAN:  WITH RESPECT TO WHAT IS

12   CONTAINED IN THE REPORT ON PAGE 3, I BELIEVE IT IS

13   INCORRECT IN STATING THAT MY CLIENT PLED GUILTY.  HE

14   WAS CONVICTED, AS WE ALL KNOW, BY TRIAL.

15             THE COURT:  YES.  CORRECT.

16             MR. FREEMAN:  SO THAT IS ONE ERROR.

17             THE SECOND ERROR, PAGE 6, THE REFERENCE TO

18   HIS WIFE CONFIRMING A SUBSTANTIAL ABUSE HISTORY.  BUT

19   IN THE PRE-SENTENCE, IT SAYS HE HAS NO SUBSTANCE ABUSE

20   HISTORY, AND HE DOES NOT HAVE A SUBSTANCE ABUSE

21   HISTORY.

22             I THINK THERE MAY BE SOME SORT OF

23   UNINTENTIONAL TYPOGRAPHICAL ERROR.

24             THE COURT:  ALL RIGHT.

25             ANY RESPONSE TO THAT?

1          MS. DODDAMANI:  JUDGE, I MEAN IT'S THE REPORT

2     OF THE PROBATION AGENT.  SO IF THE PROBATION AGENT

3     SPEAKS TO HIS WIFE, AND SHE SAID SOMETHING, THEN I

4     DON'T THINK IT'S UP TO US TO CHANGE THAT.  THAT'S THE

5     PROBATION DEPARTMENT'S VIEW OF IT.

6          MR. FREEMAN:  JUDGE, THAT'S A PRETTY

7     SIGNIFICANT FACTOR.  AND IN MY CLIENT'S CONVERSATIONS

8     WITH ME, AND I HAVE NO REASON TO BELIEVE HE HAS GOT ANY

9     SORT OF SUBSTANCE ABUSE HISTORY, I DON'T KNOW IF THE

10    PROBATION OFFICER MADE A MISTAKE HOW THEY WROTE IT, OR

11    WHETHER THE PROBATION OFFICER ACTUALLY HAS WHAT IS

12    SAID, THAT THERE WAS A PROBLEM FROM THE WIFE.  I DON'T

13    THINK ANYONE IS IN THE POSITION --

14         THE COURT:  I DON'T THINK ANYBODY WHO BUT THE

15    PEOPLE WHO WERE THERE ARE, AND IN MANY CASES THE

16    PROBATION OFFICER COULD GET A HISTORY OF INFORMATION OR

17    A LACK OF ANY SUBSTANCE ABUSE HISTORY FROM A DEFENDANT,

18    AND GET SOMETHING ELSE FROM HIS WIFE.

19         AT THIS POINT, I CAN'T CORRECT IT BY ITSELF.

20    I WILL NOTE IT AS AN OBJECTION OF YOURS, AND ASK THE

21    PROBATION DEPARTMENT TO REVIEW IT.  IF THEY INDICATE

22    THAT IT WAS A TYPO, CERTAINLY WE'LL RETRACT THAT.

23         ANYTHING ELSE?

24         MR. FREEMAN:  I'M CURIOUS HOW I WOULD BE

25    INFORMED OF WHETHER IT'S GOING TO STAY AS WRITTEN AFTER

1      THE PROBATION TAKES A LOOK AT IT.

2              THE COURT:  ALL I CAN DO IS REQUEST THAT THEY

3      TAKE A LOOK AT IT, AND NOTIFY US OF ANY CHANGES.  IF

4      YOU WOULD WANT TO CONTACT THE PROBATION AGENT AND SEE

5      WHETHER THERE WERE ANY, YOU MAY DO SO.

6              MR. FREEMAN:  THAT'S THE PERSON LISTED ON THE

7      FRONT PAGE AT THE BOTTOM?

8              THE COURT:  I ASSUME.

9              MR. FREEMAN:  OKAY.  I WILL DO THAT.

10             AS WELL, YOUR HONOR, WITH RESPECT TO THE

11     RECOMMENDATION, AS IT PERTAINS TO THE TERM OF PROBATION

12     ON THE FELONIOUS ASSAULT COUNT.

13             THE COURT:  YES.

14             MR. FREEMAN:  AS THE COURT IS AWARE, MY

15     CLIENT STILL HAS THE RESIDENCE THAT THIS OCCURRED IN

16     FRONT OF, AND I BELIEVE IT IS CLOSER THAN FIVE HUNDRED

17     FEET FROM THE OTHER HOME.  I THINK THAT THE OTHER

18     FAMILY HAS RELOCATED.

19             SO I DON'T KNOW THAT THERE IS GOING TO BE ANY

20     POTENTIAL ISSUE THERE.  BUT THERE COULD BE AN ISSUE

21     ONCE HE'S RELEASED, AS FAR AS HIM BEING ABLE TO BE

22     THERE; IF THE COURT ORDERS HE CAN'T BE WITHIN FIVE

23     HUNDRED FEET OF THE NEIGHBOR.

24             THE COURT:  WELL, THERE WAS A SERIOUS AND

25     ASSAULTIVE-TYPE ISSUE HERE.  SO SERIOUS, IN FACT, AND

38

1     ON-GOING, THE ALLEGATION BY BOTH SIDES, WAS THAT THERE

2     WAS SOME PROBLEM.

3          SO I CANNOT ORDER THE COMPLAINANT TO MOVE,

4     BUT DURING THE PROBATIONARY PERIOD, I CAN ORDER THE

5     THAT THE DEFENDANT NOT BE WITHIN FIVE HUNDRED FEET OF

6     THE COMPLAINANT, AND THAT IS GOING TO BE THE ORDER OF

7     SENTENCE.

8          SO IF THE COMPLAINANT HAS MOVED AND ISN'T

9     THERE, DEFENDANT WOULD NOT BE VIOLATING HIS PROBATION

10    BY LIVING THERE.  IT'S FOR HIM TO HAVE TO FIND OUT IF

11    THE COMPLAINANT IS STILL LIVING THERE.  HE WOULD STILL

12    BE ON PROBATION, AND HE WOULD NEED TO LIVE SOMEWHERE

13    ELSE DURING PENDENCY OF THIS PROBATION.

14         THE CIRCUMSTANCES ARE OUT OF THE COURT'S

15    CONTROL.  THE COURT IS NOT -- JUST BECAUSE HE OWNS

16    PROPERTY -- GOING TO CHANGE AN IMPORTANT REQUIREMENT

17    THAT HE NOT HAVE CONTACT WITH THE COMPLAINANT IN THIS

18    CASE DURING PROBATION, OR BE WITHIN FIVE HUNDRED FEET

19    OF HIS RESIDENCE, PLACE OF EMPLOYMENT, OR SCHOOL.

20         MR. FREEMAN:  YOUR HONOR, WITH RESPECT TO --

21    I'M SORRY.

22         MAY I MOVE ON?

23         THE COURT:  YES.

24         MR. FREEMAN:  WITH RESPECT TO THE NUMBER OF

25    TOTAL DAYS OF JAIL CREDIT, HE HAS BEEN IN SUBSTANTIALLY

1          LONGER THAN 19 DAYS.  I HAVE COUNTED IT OUT.

2                    THE COURT:  MY CLERK HAS STATED IT'S ACTUALLY

3          65 DAYS.

4                    DEFENDANT:  THERE IS ALSO TIME IN TAYLOR.

5                    MR. FREEMAN:  DOES THAT INCLUDE TWO DAYS FROM

6          TAYLOR?

7                    THE COURT:  65 DAYS RATHER THAN 19.

8                    MR. FREEMAN:  I BELIEVE WITH RESPECT TO THE

9          REPORT -- I'M SORRY.

10                    THERE IS ONE OTHER ISSUE.  MY CLIENT

11          INDICATED TO ME IN RESPONSE TO A QUESTION, AS FAR AS

12          HOW IS HE DOING NOW MEDICALLY, EMOTIONALLY; THIS HAS

13          BEEN VERY VERY DIFFICULT FOR HIM.

14                    HE HAS INDICATED TO ME THAT IT WOULD BE ALL

15          RIGHT FOR ME TO ASK OF THE COURT TO -- I'M NOT SURE HOW

16          MUCH CONTROL THE COURT HAS OVER IT, BUT IF THERE IS

17          ANYTHING THAT YOU CAN DO TO HELP FACILITATE HIM BEING

18          ABLE TO SPEAK WITH A MENTAL HEALTH PROFESSIONAL, ONLY

19          AS FREQUENTLY AS ON AN AS-NEEDED BASIS, AND IN

20          PARTICULAR SOME GRIEF COUNSELLING.  BECAUSE IT'S BEEN

21          INDICATED TO HIM THAT'S WHAT HE IS GOING THROUGH.  I

22          KNOW THAT HE WOULD VERY MUCH APPRECIATE THAT.

23                    THE COURT:  WE'LL MARK THE FILE MEDICAL, AND

24          ASK THEM TO ADDRESS THOSE ISSUES, ASK THE DEPARTMENT OF

25          CORRECTIONS TO HAVE COUNSELLING.

1        ANYTHING ELSE?

2              MR. FREEMAN:  NOT WITH RESPECT TO THE REPORT.

3              I AM PREPARED TO SPEAK ON MY CLIENT'S BEHALF

4     AND HE MAY WANT TO ADDRESS THE COURT.

5              THE COURT:  PROCEED, PLEASE.

6              MR. FREEMAN:  YOUR HONOR, FOR MY CLIENT, THIS

7     HAS BEEN VERY, VERY DIFFICULT FOR HIM AND FOR HIS

8     FAMILY.  I SEE WHAT THE RECOMMENDATIONS ARE.

9              I KNOW THAT THE COURT'S HANDS ARE TIED WITH

10    RESPECT TO THE FELONY FIREARM.  BUT I AM GOING TO ASK

11    YOU TO GO THROUGH WITH THE RECOMMENDATION OF THE

12    PROBATION ON THE FELONIOUS ASSAULT.

13             MY CLIENT HAS TWO YOUNG CHILDREN.  FOR HIM TO

14    SPEND ADDITIONAL TIME ABOVE AND BEYOND WHAT HE IS GOING

15    TO HAVE TO SPEND PURSUANT TO THE STATUTE FOR FELONY

16    FIREARM, I THINK WOULD BE DISPROPORTIONATE TO THE

17    OVERALL CONDUCT HERE.

18             I AM NOT MINIMIZING THE CONDUCT HERE.  I DO

19    RECOGNIZE BASED ON THE JURY'S VERDICT THAT THIS IS A

20    SERIOUS SITUATION.

21             NOT WITHSTANDING ALL LEGAL ARGUMENTS AND SOME

22    OF THE FACTUAL ARGUMENTS THAT HAVE BEEN MADE UP TO THIS

23    POINT, I DO RECOGNIZE THAT THE JURY HAS SPOKEN; THAT IT

24    IS A SERIOUS SITUATION.

25             MY CLIENT IS NOT A BAD PERSON.  MY CLIENT

                               41

```
 1        MADE A MISTAKE.  THAT'S NOT HOW THE JURY SAW IT.  I

 2        THINK THIS IS AMPLE PUNISHMENT FOR THE MISTAKE HE MADE.

 3               I DON'T THINK ANY MORE TIME THAN THAT IS

 4        GOING TO HAVE ANY POSITIVE IMPACT.  I DON'T THINK IT'S

 5        GOING TO HELP REHABILITATE HIM.  I THINK IF YOU'RE

 6        GOING TO PUNISH HIM, I THINK TWO YEARS IS FRANKLY

 7        ENOUGH PUNISHMENT.

 8               THIS HAS HAD A VERY PROFOUND IMPACT ON HIM,

 9        AND TWO YEARS IS GOING TO SERVE THE PURPOSES OF

10        SENTENCING.

11               THE COURT:  ANYTHING ON BEHALF OF THE PEOPLE?

12               MS. DODDAMANI:  JUDGE, WE LEAVE IT TO YOUR

13        DISCRETION ON THE FELONIOUS ASSAULT CHARGE.  HIS

14        GUIDELINES, TO MY UNDERSTANDING, ARE ZERO TO SIX, AND

15        WE LEAVE THAT TO YOUR DISCRETION.

16               WE ARE ASKING YOU TO FOLLOW THAT WITH THE

17        FELONY FIREARM OF TWO YEARS.

18               MR. FREEMAN:  I THINK IT WAS ZERO TO THREE.

19               THE COURT:  ANYTHING YOU WOULD LIKE TO SAY ON

20        YOUR OWN BEHALF BEFORE SENTENCE IS IMPOSED?

21               DEFENDANT:  YES.  I APPRECIATE THE COURT'S

22        TIME FOR CONSIDERING THE ARGUMENTS WE HAVE MADE.

23               I WOULD LIKE TO ASK FOR GREAT MERCY, FOR THE

24        SAKE OF MYSELF AND MY WIFE, AS WELL AS MY TWO CHILDREN.

25        ONE IS ONLY THREE, THE OTHER IS YET TO BE ONE.
```

1                    THIS HAS BEEN TREMENDOUSLY DIFFICULT.  AND I
2      WOULD LIKE TO HAVE THE COURT RECOGNIZE THAT I HAVEN'T
3      DONE ANYTHING.  I DON'T HAVE ANY CRIMINAL RECORD, AT
4      ALL, AND THAT MY CHILDREN, AND MY WIFE ESPECIALLY,
5      NEEDS ME.  I'M PRIMARY PROVIDER FOR THEM.
6                    ALSO MY FAMILY LACKS MY EMOTIONAL SUPPORT, AS
7      WELL AS MY FINANCIAL SUPPORT, AS WELL IN RAISING THE
8      CHILDREN AND KEEPING THE FAMILY UNITED.
9                    I WOULD ASK IF THERE IS ANYTHING POSSIBLE, AT
10     ALL, THAT THE COURT MAY PROVIDE FOR ME AND MY FAMILY
11     THAT I WOULD GREATLY APPRECIATE IT, AND SO WOULD MY
12     FAMILY.
13                   I RECOGNIZE THE SERIOUSNESS OF THIS
14     SITUATION, AND I JUST SIMPLY ASK FOR GREAT MERCY AND
15     UNDERSTANDING FOR THE WHOLE MATTER, AS WELL AS FOR MY
16     FAMILY, AND MYSELF.
17                   I'M SORRY.  I'M SORT OF AT A LOSS FOR WORDS
18     BECAUSE IT IS SUCH A TRAUMATIC EVENT.  IT'S JUST -- YOU
19     KNOW, I WISH I COULD SAY MORE.  I WISH IN SOME CASES I
20     COULD GO BACK IN TIME.  BUT IT'S A TREMENDOUS IMPACT.
21                   AGAIN, I'M ASKING FOR ANYTHING POSSIBLE.  I
22     TRIED TO BE THE BEST CITIZEN I COULD ALL THROUGH MY
23     ENTIRE LIFE, AND NOW FOR A FACT, MY WIFE AND CHILDREN
24     ARE SUFFERING AS WELL AS ME, AND SO AGAIN, I THANK YOU
25     FOR YOUR CONSIDERATION AND PLEASE ASK FOR MERCY.

```
 1                    MR. FREEMAN:  JUDGE, I'M SORRY TO INTERRUPT.

 2                    ONE LAST THING I SHOULD HAVE NOTED.

 3          MR. OGILVIE'S BROTHER IS IN THE AUDIENCE.  HE STILL HAS

 4          SUBSTANTIAL FAMILY SUPPORT.  I DID EXCHANGE MESSAGES

 5          WITH HIS WIFE.  SHE WAS UNABLE TO BE HERE TODAY,

 6          BECAUSE THE CHILDREN HAVE THE CHICKEN POX AND I THINK

 7          OTHERWISE SHE INTENDED TO BE HERE AS A SHOW OF SUPPORT.

 8                    I UNDERSTAND THAT THEY HAVE BEEN REGULARLY

 9          SPEAKING, AND COMMUNICATING WITH ONE ANOTHER ON THE

10          TELEPHONE, AND ALSO BY LETTER.

11                    THE COURT:  ALL RIGHT.

12                    MR. FREEMAN:  THE COURT CAN SEE MY CLIENT IS

13          EMOTIONAL ABOUT THIS.

14                    THE COURT:  WELL, WE UNDERSTAND THAT HE IS,

15          AND THAT HE WOULD BE.  AND I DON'T KNOW BY RULING THE

16          WAY THE LAW DICTATES, DEFENSE COUNSEL OR THE DEFENDANT

17          SEE THE COURT AS UNFEELING TOWARDS HIS POSITION.  THAT

18          ABSOLUTELY IS NOT TRUE.

19                    THIS COURT IS NOT, FOR A SECOND, CONSIDERING

20          OR WOULD CONSIDER ADDITIONAL TIME THAN THE TWO YEARS IN

21          PRISON.  NO MATTER WHAT HAD BEEN SAID.

22                    IN DEALING WITH THIS CASE FROM THE BEGINNING,

23          MR. OGILVIE, YOU ARE OBVIOUSLY AN INTELLIGENT MAN, BUT

24          THERE ARE SOME THINGS STANDING IN THE WAY OF SEEING THE

25          REALITY OF YOUR SITUATION FROM THE BEGINNING; IN THAT
```

44

1      THE COURT WAS PRESENTING AND MAKING A RECORD OF

2   ALTERNATIVES THAT YOU COULD HAVE HAD.

3           I DON'T KNOW IF IT IS ARROGANCE, BRAVADO, A

4   SLANTED POINT OF VIEW, OR WHAT STOOD IN THE WAY OF YOUR

5   HAVING THE DEMEANOR AND THOUGHTFULNESS THAT YOU HAVE

6   TODAY BEFORE YOUR TRIAL WHEN YOU WERE MAKING ALL THOSE

7   DECISIONS.

8           I SAW COUNSEL, PREVIOUS COUNSEL MAKE AN

9   ATTEMPT TO LISTEN TO THE COURT, AND MAKE AN ATTEMPT TO

10  HAVE THIS DEFENDANT LOOK AT HIS OPTIONS, AND MAKE HIS

11  OWN DECISION.  UNFORTUNATELY, THE DECISION HE MADE PUT

12  HIM IN A POSITION WHERE THIS COURT HAS NO ABILITY TO DO

13  ANYTHING ABOUT THE FELONY FIREARM CONVICTION.

14          I MADE A POINT OF THAT BEFORE THE TRIAL.  I

15  DON'T KNOW IF YOU THOUGHT YOU HAD LEEWAY ON THE FELONY

16  FIREARM IN THIS PARTICULAR CASE.  YOU DON'T KNOW THIS

17  BECAUSE YOU'RE NOT HERE EVERYDAY.  BUT WE HAVE MANY,

18  MANY CASES OF VERY DANGEROUS PEOPLE WHO HAVE BRANDISHED

19  WEAPONS AND POINTED WEAPONS MANY TIMES.

20          I SEE YOUR BACKGROUND, OR A LACK OF CRIMINAL

21  HISTORY.  BUT THE LAW REQUIRES ON FELONY FIREARM,

22  BECAUSE OF THE DANGEROUSNESS OF THE GUNS IN OUR

23  COMMUNITY, A TWO YEAR MANDATORY STATUTORY SENTENCE.  I

24  HAVE NO LEEWAY, AND NO CONTROL OVER THAT.

25          ON THE OTHER HAND, I BELIEVE YOU SHOULD HAVE

45

1       ALMOST A FIVE YEAR PROBATIONARY SENTENCE, BECAUSE I

2       DON'T KNOW IF THE ATTITUDES YOU HAVE TODAY WILL

3       CONTINUE WHEN YOU ARE RELEASED, OR WHETHER YOU WILL

4       HAVE THE ON-GOING PROBLEMS THAT WE HAVE FEAR OF BEING

5       OUT THERE IN THE COMMUNITY, OF ANXIETY, OF CONCERN FOR

6       YOUR FAMILY, MOOD PROBLEMS AND MENTAL HEALTH PROBLEMS.

7       BUT NOT EVERYONE DOES WHAT YOU DID.  YOU WILL HAVE TO

8       FIND ANOTHER WAY.

9              ALTHOUGH IT DOESN'T SEEM LIKE IN A SHORT TIME

10      IN TERMS OF YOUR OWN PERSONAL LIFE, COMPARED TO THE

11      TIME OTHER PEOPLE SERVE WHO COME BEFORE THIS COURT,

12      YOU'LL HAVE TO MAKE AN ADJUSTMENT TO LIFE IN THIS WORLD

13      IN A DIFFERENT WAY, OR YOU WILL BE BACK, AND WHEN YOU

14      ARE RELEASED, YOU WILL NOT HAVE A PERMIT FOR CARRYING A

15      CONCEALED WEAPON.  SO I WOULD SUGGEST THAT THE

16      TREATMENT AND ADJUSTMENTS BE MADE FROM TODAY ON, IN

17      ORDER TO ADDRESS THESE ISSUES.

18             IT IS THE SENTENCE OF THIS COURT THAT YOU

19      SERVE THREE YEARS PROBATION ON THE CHARGE OF ASSAULT

20      WITH A DANGEROUS WEAPON, FELONIOUS ASSAULT, AND TWO

21      YEARS MANDATORY STATUTORY TWO YEARS ON THE CHARGE OF

22      FELONY FIREARM, AND THAT YOU GET 65 DAYS CREDIT ON THAT

23      FELONY FIREARM.

24             NOW, ON THE PROBATIONARY TIME, DURING THE

25      TIME AFTER YOU ARE RELEASED, THE PROBATION TERMS ARE

1       THAT YOU NOT HAVE VERY WRITTEN, ELECTRONIC OR PHYSICAL

2       CONTACT WITH ERIC WATSON, OR ANYONE IN HIS FAMILY, AND

3       THAT YOU NOT BE WITHIN FIVE HUNDRED FEET OF THEIR

4       RESIDENCE, SCHOOL OR PLACE OF EMPLOYMENT.

5               YOU MUST HAVE A COMPLETE MENTAL HEALTH

6       ASSESSMENT, AND COMPLETE SUBSTANCE ABUSE ASSESSMENT.

7               YOU MUST FOLLOW ANY AND ALL TREATMENT AS

8       ORDERED BY YOUR FIELD AGENT, BUT AT LEAST COMPLETE

9       ANGER MANAGEMENT, AND COMPLETE A PARENTING CLASS.

10              YOU MUST PAY $68 STATE COURT COSTS.

11              YOU MUST PAY CRIME VICTIM'S ASSESSMENT OF

12      $60, COURT COSTS OF $600, STATE MINIMUM COSTS OF $136,

13      AND SUPERVISION FEE OF $120.

14              THE COURT IS GOING TO GIVE YOU A FORM AT THIS

15      TIME.  IF WISH TO APPEAL THIS SENTENCE, YOU MAY APPLY

16      TO DO SO WITHIN 42 DAYS OF TODAY'S SENTENCE DATE, AND

17      YOU MAY REQUEST AND OBTAIN COURT APPOINTED COUNSEL ON

18      APPEAL.

19              AGAIN, I DO WANT TO EMPHASIZE WE DON'T SEE

20      PEOPLE WITH THAT KIND OF RECORD USUALLY SERVE THIS

21      TIME, IN MANY CASES, NOT JUST YOUR OWN; AND HOPEFULLY

22      YOU CAN KEEP THAT IN MIND.

23              MR. FREEMAN:  MR. OGILVIE HAS SIGNED THE

24      ADVICE OF APPELLATE RIGHTS FORM.  I'M PROVIDING THAT

25      BACK TO THE COURT.

1          WE HAVE ALSO RECEIVED THE ORDER OF PROBATION.

2     I'M GOING TO ASK HIM TO TAKE A LOOK AT THAT, SIGN IT.

3     I WILL MAKE SURE THAT YOUR STAFF GETS IT BACK.  HE MAY

4     WANT TO READ IT.

5          THE CLERK:  I NEED IT RIGHT NOW.

6          MR. FREEMAN:  JUDGE, THE LAST THING,

7     MR. OGILVIE IS ASKING ME IN LIGHT OF THE COURT'S

8     SENTENCE, IF YOU WOULD CONSIDER AN APPEAL BOND ON THE

9     FELONY FIREARM COUNT.

10         IT IS QUITE POSSIBLE GIVEN THE ISSUES THAT

11    HAVE BEEN RAISED, AND THAT I BELIEVE ARE GOING TO BE

12    LITIGATED FURTHER, THAT THAT WILL BE A RATHER LENGTHY

13    PROCESS.

14         IT'S QUITE POSSIBLE HE WILL END UP SERVING

15    ALL OF THE TIME BEFORE HIS APPEAL IS EXHAUSTED, AND I

16    THINK THAT THAT MITIGATES IN FAVOR OF GRANTING AN

17    APPEAL BOND.

18         IN ADDITION, YOUR HONOR, IT'S MY

19    UNDERSTANDING THROUGH SPEAKING WITH HIM, THAT THERE ARE

20    SOME MATERIALS THAT HE WOULD LIKE TO BE ABLE TO ACCESS

21    THAT HE ALONE HAS ACCESS TO; THINGS HAVING TO DO WITH

22    HIS COMPUTER THAT I REFERENCED IN CONNECTION WITH THE

23    INEFFECTIVE ASSISTANCE PORTION OF COUNSEL'S MOTION,

24    VIDEO PORTIONS THAT HE HAS.  IT SHOWS A DIFFERENT SIDE

25    OF THE COMPLAINANT IN THIS CASE THAN WAS EVER BROUGHT

```
 1    FORWARD.

 2              IN ADDITION, YOUR HONOR, I'M NOT SURE IF HE

 3    WANTS TO ADDRESS THE COURT WITH RESPECT TO BOND,

 4    EITHER.  HE ASK ME IF IT WOULD BE OKAY TO COMMENT UPON

 5    THE COURT'S COMMENTS.

 6              I DISCOURAGED HIM FROM DOING THAT.  THIS IS

 7    HIS DECISION.  I DON'T KNOW WHAT HE WANTS TO DO.

 8              THE COURT:  IF HE WISHES TO SAY SOMETHING, HE

 9    MAY.

10              DEFENDANT:  I'LL FOLLOW MY COUNSEL'S ADVICE.

11              THE COURT:  WELL, THERE CERTAINLY IS NOTHING

12    ON THIS RECORD THAT WOULD CAUSE THIS COURT TO BELIEVE

13    THAT THE BOND WOULD BE WARRANTED.  BECAUSE AS I STATED,

14    IN MY VIEW OF COUNSEL'S -- PREVIOUS COUNSEL'S CONDUCT

15    ON THIS CASE, WHICH APPEARS TO BE THE ONLY ISSUE LEFT

16    IS THE GINTHER HEARING ISSUE; COUNSEL PREPARED FOR THIS

17    CASE.  WE WERE HERE SEVERAL TIMES IN COURT, IN BOTH

18    PRETRIALS AS WELL AS IN TRIAL TO DEAL WITH HIS CLIENT,

19    AND TALK TO HIS CLIENT ABOUT THE REALISTIC OPTIONS IN

20    PRESENTING THE CASE TO THE JURY.

21              I WILL KEEP MY MIND OPEN TO SPECIFIC ISSUES,

22    LEGAL AND FACTUAL, BUT GENERALLY IT WAS A DILIGENT

23    EFFORT ON HIS PART.

24              AT THIS POINT, I DO NOT BELIEVE THAT THE

25    ISSUE OF THE BOND SHOULD BE SUCH THAT THE COURT SHOULD
```

1       ALLOW A BOND PENDING THE RESOLUTION OF THAT ISSUE AND

2       WILL NOT.

3               MR. FREEMAN:  WE ASK THEN FOR A BRIEFING

4       SCHEDULE.  HOW DOES THAT WORK?

5               I HAVE BEEN INSTRUCTED TO FILE IT WITH THE

6       CLERK, AND THAT'S WHAT I'LL DO.

7               I'M PROVIDING A COPY OF THE ORDER OF

8       PROBATION TO MY CLIENT.

9               DOES HE NEED TO SIGN THAT?

10              THE CLERK:  HE WILL GET A COPY.

11              MR. FREEMAN:  THANK YOU, JUDGE.

12              (HEARING CONCLUDED)

13

14

15

16

17

18

19

20

21

22

23

24

25

1       R E P O R T E R ' S   C E R T I F I C A T E

2

3
    STATE OF MICHIGAN )
4                    ) - SS

5   COUNTY OF WAYNE   )

6

7

8   I, M. ARLEN DREGER, CSR-2509, OFFICIAL COURT REPORTER IN AND

9   FOR THE THIRD JUDICIAL CIRCUIT COURT, FOR THE COUNTY OF

10  WAYNE, STATE OF MICHIGAN, DO HEREBY CERTIFY THE FOREGOING

11  TRANSCRIPT WAS REDUCED TO TYPEWRITTEN FORM BY MEANS OF

12  COMPUTER-ASSISTED TRANSCRIPTION AND COMPRISE A TRUE AND

13  ACCURATE TRANSCRIPT OF THE PROCEEDINGS TAKEN IN THE

14  ABOVE-ENTITLED MATTER.

15

16  ------------------------------

17  M. ARLEN DREGER, CSR-2509
    OFFICIAL COURT REPORTER

18

19

20  DATED:      6  15  10

21  TRANSCRIPTS THAT DO NOT REFLECT A SIGNATURE IN BLUE INK MAY

22  BE AN UNAUTHORIZED COPY.

23

24

25

51