UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERIC OGILVIE,

    Petitioner,	Case No. 2:16-cv-11013
    	Hon. Matthew F. Leitman

vs.

LORI GIDLEY,

    Respondent.

---

**Petitioner's Second Supplemental Brief in Support of
Petition for Writ of Habeas Corpus**

### I. Introduction and issues presented

On September 3, 2019, this Court held a hearing on Eric Ogilvie's Petition for Writ of Habeas Corpus. During the hearing, this Court ordered the parties to submit briefs regarding the standard of review for the remaining claims in Mr. Ogilvie's petition, and whether his claims should be reviewed *de novo* without any deference to the state courts pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Specifically, the Court asks the following questions:

1. Should this Court review Ogilvie's claims under a *de novo* review without any AEDPA deference to the Court of Appeals opinion of May 23, 2013, in Ogilvie's direct appeal of where the State has conceded that the state court entered the opinion in violation of Mr. Ogilvie's

1

constitutional right to the assistance of counsel in his direct appeal of right?

2. Should this Court review Ogilvie's claims under a *de novo* review without any AEDPA deference to the trial court's decision of December 16, 2011, where the State has conceded that Mr. Ogilvie never received a constitutionally guaranteed appeal of right with the assistance of counsel to challenge the trial court's denial of Ogilvie's post-conviction motion?

Ogilvie answers the above questions in the affirmative. As explained below, this Court should apply a *de novo* standard of review to Mr. Ogilvie's claims in his habeas petition without any AEDPA deference to the state courts because the state courts failed to adjudicate his claims on the merits. Under a *de novo* review, Mr. Ogilvie is entitled to habeas relief and a new trial.

## II. Petitioner's habeas claims should be reviewed *de novo*

Under 28 U.S.C. § 2254(d), this court may not grant a writ of habeas corpus for any claim adjudicated on the merits in state court unless the adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254 by its own terms is applicable only to habeas claims that were "adjudicated on the merits in State court...." Where the state court did not assess the merits of a claim properly raised in a habeas petition, the deference due under AEDPA does not apply. *Cone v. Bell*, 556 U.S. 449, 472; 129 S. Ct. 1769; 173 L. Ed. 2d 701 (2009) (Because the Tennessee courts did not reach the merits of Cone's *Brady* claim and dismissed the claim as a mere re-statement of previous grounds, federal habeas review is not subject to the deferential standard that applies under AEDPA to "any claim that was adjudicated on the merits in State court proceedings." 28 U.S.C. § 2254(d). Instead, the claim is reviewed *de novo*); *Williams v. Coyle,* 260 F.3d 684, 706 (6th Cir.2001) (applying pre-AEDPA standards to a habeas petition filed pursuant to § 2254 because "no state court reviewed the merits of [the] claim"). Instead, this court reviews questions of law and mixed questions of law and fact *de novo*. *Id.* When a state court applies a state law procedural bar instead of addressing a claim on the merits, "AEDPA deference" does not apply and the Court reviews the claim *de novo. Cullen v. Pinholster*, 563 U.S. 170, 185 (2011)*; see also Robinson v. Howes*, 663 F.3d 819, 822-23 (6th Cir. 2011).

"When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits—but that presumption can in some limited circumstances be rebutted." *Johnson v. Williams*, 568 U.S. 289, 133 S.Ct. 1088, 1096, 185 L.Ed.2d 105 (2013).

For example, the Supreme Court suggested in *Johnson* that "[w]hen the evidence leads very clearly to the conclusion that a federal claim was inadvertently overlooked in state court, § 2254(d) entitles the prisoner to an unencumbered opportunity to make his case before a federal judge." *Id*. at 1097; See also, *Bester v. Warden*, 836 F.3d 1331 (11th Cir. 2016) (*de novo* review where state appellate court did not adjudicate claim on the merits, in that it rejected petitioner's pro se brief and considered only claims that his dismissed appellate counsel had raised, which did not include such claim, and state trial court inadvertently overlooked actual claim, in that trial court engaged in circular reasoning by denying his claim because the trial court had not had opportunity to decide whether to give instruction because counsel had not requested it).

When the last state court to adjudicate a federal constitutional claim on the merits did not provide an explanation for the denial, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale." *Wilson v. Sellers*, ––– U.S. –––, 138 S.Ct. 1188, 1192, 200 L.Ed.2d 530 (2018). "It should then presume that the unexplained decision adopted the same reasoning." *Id.* However, that presumption may be rebutted upon a "showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision." *Id.*

Even where AEDPA's deferential standard of review is applicable, deference "does not imply abandonment or abdication of judicial review. Deference does not by definition preclude relief." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) As the Supreme Court explained: "A federal court can disagree with a state court's credibility determination and, when guided by AEDPA, conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence." *Id.* "If a state court's finding rests on thin air, the petition will have little difficulty satisfying the standards for relief under § 2254." *Mendiola v. Schomig*, 224 F.3d 589, 592 (7th Cir. 2000). In this case, if the Court decides to give AEDPA deference to any decisions of the state court, the claims in Ogilvie's habeas petition still entitle him to a new trial.

In the present case, the state courts are not entitled to AEDPA deference because the state courts did not adjudicate Ogilvie's claims on the merits.

After the trial court denied his post-conviction motion for new trial, Ogilvie, a then-state prisoner, was forced to proceed on his appeal of right in pro per in the Michigan Court of Appeals against his own wishes, after the chief judge in the state trial court promised new appellate counsel would be appointed for Mr. Ogilvie, and despite several letters to the trial court and court of appeals requesting substitute counsel, appellate counsel was never appointed. Despite that Mr. Ogilvie was denied counsel on appeal and without the benefit of oral argument, the Michigan

Court of Appeals entered an unpublished opinion on May 23, 2013, affirming his convictions.

The State conceded in this case that (1) the state courts violated Mr. Ogilvie's constitutional right to the assistance of counsel in his direct appeal of right, and (2) Ogilvie is entitled to a new appeal of right with the assistance of counsel, and (3) this Court must decide all Ogilvie's claims now together before granting a new appeal. (See Respondent's Supplemental Brief, Doc #12, Pg ID 3231-37)

The Court of Appeals opinion of May 23, 2013, is not entitled to deference where it was entered in violation of Mr. Ogilvie's constitutional right to the assistance of counsel in his direct appeal of right.

The Court of Appeals decision of May 23, 2013, did not adjudicate Ogilvie's claims "on the merits" for purposes of § 2254(d). The court of appeals did not just overlook the constitutional claims raised in Ogilvie's habeas petition or dismiss his claims on procedural grounds. See, *Johnson v. Williams*, 568 U.S. 289, 133 S.Ct. 1088, 1096, 185 L.Ed.2d 105 (2013); *Bester v. Warden*, 836 F.3d 1331 (11th Cir. 2016); rather the court of appeals completely denied Ogilvie a constitutionally adequate appeal with counsel altogether. Since he is entitled to a new appeal with the assistance of counsel, there has technically been no proper adjudication of his claims in state court despite the fact the he presented the federal issues to the state

courts. Thus, there is no state court decision on Ogilvie's claims to which deference can be afforded.

By denying Ogilvie his right to appeal with counsel, the state court failed to resolve his claims on the merits, through no fault of Ogilvie. Where the petitioner is not at fault for the state court's failure to resolve his claims on the merits, "AEDPA deference" does not apply and the Court reviews the claim *de novo*. *Campbell v. Bradshaw,* 674 F.3d 578, 596 (6th Cir. 2012) ("Because, through no fault of his own, the state courts did not reach the core of Campbell's argument, we review this claim *de novo*").

Similarly, the trial court's order of December 16, 2011, denying Ogilvie's post-conviction motion for new trial is not entitled to deference where the State has conceded that Mr. Ogilvie never received a constitutionally guaranteed appeal of right with the assistance of counsel to challenge the trial court's denial of Ogilvie's post-conviction motion. Michigan and the U.S. Constitution, afford indigent criminal defendants a right to directly appeal a conviction with the assistance of counsel, and the trial court's blanket denial of relief without affording Ogilvie an opportunity to appeal the decision to the court of appeals is not an adjudication "on the merits" for purposes of § 2254(d); See, *Halbert v. Michigan*, 545 U.S. 605, 610, 125 S.Ct. 2582, 162 L.Ed.2d 552 (2005) (defendants cannot be denied a direct appeal as of right because they are indigent).

Even if there is a presumption that the trial court's decision adjudicated the claims on the merits, that presumption is rebutted where it is clear that the trial court's order denying Ogilvie's post-conviction motion for new trial overlooked Ogilvie's federal claims and failed to provide a reasoned decision on several of Ogilvie's claims:

> And part of this may have been what was discussed in chambers or ruled upon or discussed in other hearings, but those motions are denied for reasons I believe the record supports. The claim as far as incompetence [sic] of counsel are, hearings were held, detailed hearings were held on the trial strategies or what counsel did, the Court does not find that the Court can grant the motion, the other motions of the defendant on those issues. (Motion hearing, December 16, 2011, pp. 50, 51)

It is also important to note that Ogilvie's post-conviction appellate counsel in the trial court failed to raise the claim of prosecutorial misconduct for failing to disclose the 911 call of Amy Ogilvie, which corroborated Ogilvie's theory of self-defense and contradicted the complainant's testimony. Thus, through no fault of his own, the state trial court never reached the merits of Ogilvie's claim regarding Amy Ogilvie's 911 call to the police, and no AEDPA deference can be afforded to the state court. *Campbell v. Bradshaw,* 674 F.3d at 596.

### III. Under a *de novo* review, Petitioner is entitled to habeas relief

A. Instructing the jury on self-defense with the element of deadly force and instructing on Ogilvie's duty to retreat were erroneous instructions that went to the heart of the case before the jury, and Ogilvie received ineffective assistance of counsel where counsel requested the erroneous jury instructions.

In this case, the evidence at trial showed unequivocally that Ogilvie merely drew his gun without firing it, because his neighbor made threatening comments, and appeared to be drawing a weapon. (T 58, 128-129, 131) Thus, under Michigan law, the evidence at trial showed that Ogilvie's actions, by merely pointing the gun without firing it, did not amount to "deadly force." Mich. Comp. Laws § 780.972; *People v. Pace*, 102 Mich. App. 522, 534; 302 N.W.2d 216 (1980). Therefore, the jury instructions for self-defense with the element of non-deadly force would have provided a proper and lawful calculus for determining guilt or innocence in this case. However, at defense counsel's request, the court instructed the jury regarding the defense of self-defense with the element of deadly force.

Under a *de novo* review, this Court should apply the reasoning of the Michigan Court of Appeals' recent decision in *People v. Ra*, No. 343202, 2019 WL 3941490 (Mich. Ct. App. Aug. 20, 2019), and find that the lack of proper instruction on non-deadly force affected the outcome of the case because it altered the test by which the jury decided this central issue, and deprived Ogilvie of his right to due process of law. *Estelle v. McGuire,* 502 U.S. 62, 72, (1991).

The erroneous jury instruction, instructing the jury that Ogilvie had used deadly force when he produced his gun, placed a heavier burden on the defendant, including the burden of showing why he did not retreat (not required for self-defense where non-deadly force is used). The jury instructions should not have included an element of deadly force at all, as it was not supported by the evidence at trial. Even if the defendant might have legally been able to use deadly force, he did not actually use deadly force, and he simply cannot be legally held to that standard. Even if the jury may not have believed that the trial evidence supported the use of deadly force, had the jury properly been instructed that Ogilvie only used nondeadly force and had no duty to retreat, the jury would have believed that Ogilvie was entitled to use nondeadly force in light of the trial evidence.

As explained below in Section II.B, the prosecutor took advantage of the court's use of the incorrect jury instruction by making misstatements of Michigan's self-defense law, mischaracterizing evidence of Ogilvie's pointing a gun as deadly force, and wrongfully suggesting that Ogilvie had a duty to retreat.

Trial counsel testified at an evidentiary hearing that he had *no strategic reason* for requesting the deadly force instruction and not requesting the non-deadly force instructions. (EH3 24, 25) Applying the standard in *Strickland v. Washington*, 466 U.S. 668 (1984), without any deference to the state court's erroneous findings, it is

clear that trial counsel was ineffective for failing to request the proper jury instructions, and that Ogilvie was prejudiced by counsel's ineffectiveness.

>    B. The prosecutor exploited the use of an incorrect jury instruction by making misstatements of Michigan's self-defense law, mischaracterizing evidence of Ogilvie's pointing a gun as deadly force, and wrongfully suggesting that Ogilvie had a duty to retreat.

The prosecution engaged in misconduct during closing and rebuttal arguments by making misstatements of Michigan's self-defense law, mischaracterizing evidence of Ogilvie pointing a gun as deadly force, and wrongfully suggesting that Ogilvie had a duty to retreat.

The prosecutor's repeated misstatements of Michigan's self-defense law and mischaracterization of Ogilvie's brandishing a weapon as using deadly force completely denied Ogilvie a fair trial under *Darden v. Wainwright,* 477 U.S. 168 (1986). The prosecutor's argument misled the jury and prejudiced the defendant because they communicated a fundamental misunderstanding of Michigan's self-defense law to the jury, increased Ogilvie's burden of proof, and diminished the prosecutor's burden of disproving Ogilvie's claim of self-defense.

The prosecutor has a separate duty, unaffected by the court's rulings, not to misrepresent the law of the facts to a jury in closing argument. See, *Young v. U.S. ex rel. Vuitton et Fils S.A.,* 481 U.S. 787, 803, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987) (prosecutors have a responsibility to seek justice, not merely to convict). Prosecutorial misconduct can be found even if the prosecution had no bad intent or

willfulness in making misstatement of the law. *Strickler v. Greene*, 527 U.S. 263, 282; 119 S. Ct. 1936, 1948, 144 L. Ed. 2d 286 (1999). When the prosecutor told the jury to believe that merely pointing a gun, without firing it, *was* deadly force, the prosecutor committed misconduct.

> C. Prosecutor suppressed exculpatory evidence of 911 calls to the police, which contradicted witness testimony, and was crucial to Ogilvie's valid claim of self-defense, trial counsel was ineffective assistance for failing to obtain the exculpatory evidence and post-conviction counsel was ineffective for failing to raise a complete *Brady* claim in post conviction proceedings.

In this case, the prosecution's failure to disclose the evidence of the four 911 calls made by Amy Ogilvie and Rebecca Swanson materially affected the outcome of the trial, because the evidence contained statements, including a statement from a witness that did not testify at trial (Amy Ogilvie)[1], that contradicted witness testimony and showed that Ogilvie faced a real threat from his neighbor, who appeared to be going for a gun, and that he acted in self-defense.

The prosecutor was obligated under *Brady v. Maryland*, 373 U.S. 83, 87 (1963), to turn the exculpatory information of the 911 calls over to the defense because "the suppression by the prosecution of evidence favorable to an accused

---

[1] At the September 3, 2019, hearing in this case, the Court inquired into Amy Ogilvie's reasoning for not testifying at Ogilvie's trial. According to her affidavit dated March 5, 2010, to the state trial court, Amy Ogilvie did not testify at trial because she felt "intimidated by the prosecution into not testifying."

upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."

The rule requires production of evidence "known only to police investigators and not to the prosecutor." *Kyles v. Whitley*, 514 U.S. 419, 438 (1995). In order to comply with *Brady*, therefore, "*the individual prosecutor has a duty to learn* of any favorable evidence known to the others acting on the government's behalf in this case, including the police." *Id.* at 437 (emphasis added). The prosecutor never bothered to inquire into the existence of the recordings of the 911 calls, even though it was apparent that two people called. The prosecutor had a duty to learn of this evidence and disclose it.

Where the prosecution fails to disclose *Brady* evidence, it is irrelevant whether the suppression was made "willfully or inadvertently." *Strickler*, 527 U.S. at 282. In this case, the prosecutor was aware that multiple calls had been placed to 911 and breached her duty to adequately search for and maintain the 911 recordings, and to disclose them to the defense. The police had possession of the 911 recordings, and the mere fact that the recordings may not have physically appeared in the prosecutor's file does nothing to undercut her duty to disclose the exculpatory evidence under *Brady*.

Without placing any weight on the state court's decisions on Ogilvie's claim of prosecutorial misconduct for failing to discover and disclose the 911 recordings,

this Court should find that the prosecution violated *Brady*, and Ogilvie is entitled to a new trial. At trial, no testimony was presented to show that Amy Ogilvie or Rebecca Swanson believed Watson had a gun (Rebecca Swanson forgot she had observed this). There is a high probability that had this evidence been disclosed to the defense and presented to the jury, the jury would have found that Ogilvie honestly and reasonably believed that Watson was armed and reaching for a gun, as did the callers to the police, and that Ogilvie's display of his gun was justified as self-defense.

Trial counsel was also ineffective for failing to promptly discover the 911 calls. Trial counsel's failure to adequately investigate and discover the 911 recordings constituted ineffectiveness under *Strickland*. "It is the duty of the lawyer to conduct a *prompt investigation* of the circumstances of the case and to explore all avenues leading to facts relevant to the merits of the case…The investigation should always include efforts to secure information in the possession of the prosecution and law enforcement authorities." *Rompilla v. Beard*, 545 U.S. 374, 387 (2005) (emphasis added), quoting 1 ABA Standards for Criminal Justice 4–4.1 (2d ed. 1982 Supp.).

Trial counsel's efforts were unreasonable because he did not even begin to investigate until more than three months after the 911 calls were made, despite knowing that the retention policies varied for each police department, and could be

14

as little as 60 days. (EH3 16-18) Had trial counsel adequately investigated, he would have discovered the recordings, just as Ogilvie's brother eventually discovered them.

Ogilvie also received ineffective assistance of his post-conviction counsel, where counsel failed to raise the meritorious appellate issue of prosecutorial misconduct for failing to disclose evidence of Amy Ogilvie's 911 calls in violation of *Brady*. As discussed above and in Ogilvie's habeas petition, the absence of Amy Ogilvie's 911 calls materially affected the outcome of Ogilvie's trial, and appellate counsel's failure to raise the issue under *Brady* constituted ineffective assistance of counsel under *Strickland*.

**Conclusion**

Petitioner Ogilvie asks this court to grant his writ of habeas corpus, vacate his sentence, and grant him a new trial.

Respectfully submitted:

 */s/ Jennifer J. Qonja*
Jennifer J. Qonja (P79156)
Suzan Gabbara (P76633)
Attorneys for Petitioner
Eaman & Gabbara, PLLC
1441 E. Maple Rd, Ste 304
Troy, MI 48083
(248) 633-2244
qonja@eamanlaw.com

Dated: November 18, 2019

## CERTIFICATE OF SERVICE

I hereby certify that on November 18, 2019, I electronically filed the above documents with the Clerk of the Court using the ECF System, which will provide electronic copies to the following:

        Linus Banghart-Linn
        Assistant Attorney General

Respectfully submitted:

*/s/ Jennifer J. Qonja*
Jennifer J. Qonja (P79156)
Suzan Gabbara (P76633)
Attorneys for Petitioner
Eaman & Gabbara, PLLC
1441 E. Maple Rd, Ste 304
Troy, MI 48083
(248) 633-2244
qonja@eamanlaw.com