UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERIC OGILVIE,

    Petitioner,

v.

LORI GIDLEY,

    Respondent.

CASE NO. 2:16-cv-11013

HON. MATTHEW F. LEITMAN

**Respondent's Second Supplemental Brief**

This Court has ordered the parties to brief the questions whether AEDPA deference is due to the state-court rulings adjudicating his habeas claims, and more specifically, whether the state courts adjudicated Ogilvie's claims on the merits, notwithstanding that Ogilvie was improperly denied counsel on his direct appeal.

Put simply, there is no connection between whether Ogilvie had counsel, validly waived counsel, or was denied counsel, and whether the claims he raised in the state courts were adjudicated on the merits. All that is necessary to answer the question is to read the relevant statutory language and apply it to the state-court record.

AEDPA provides in part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254.

At issue here is whether the claims Ogilvie has raised in his habeas petition were "adjudicated on the merits in State court proceedings."

On May 23, 2013, the Michigan Court of Appeals issued a 20-page opinion addressing every claim that was presented to it in Ogilvie's brief on appeal. For most of those claims, the Michigan Court of Appeals discussed the arguments Ogilvie made, the relevant facts, and the applicable law, then applied the law to the facts, concluding that the claim lacked merit.[1] Based on its holdings that the claims lacked merit,

---

[1] The notable exception was Ogilvie's claim of error in jury instructions, which the Michigan Court of Appeals denied as waived rather than on the merits. (R. 6-27, 5/23/13 Mich. Ct. App. Op. at 10–11, PageID #953–54.)

2

the Michigan Court of Appeals affirmed Ogilvie's conviction and sentence.

"Adjudicate" may be defined as "[t]o rule on judicially." Black's Law Dict. (11th Ed. 2019). "Merits" may be defined as "[t]he elements or grounds of a claim or defense; the substantive considerations to be taken into account in deciding a case, as opposed to extraneous or technical points, esp[ecially] of procedure." *Id.* Here, the Michigan Court of Appeals ruled on the appeal Ogilvie brought, and judicially decided his case, and it did so (again, other than for the waived claim) based on the grounds of his claims and the substantive considerations relating to those claims, rather than on technical or procedural grounds. In other words, the Michigan Court of Appeals adjudicated Ogilvie's claims on their merits. *See Johnson v. Williams*, 568 U.S. 289, 302 (2013) ("A judgment is normally said to have been rendered 'on the merits' only if it was 'delivered after the court . . . heard and evaluated the evidence and the parties' substantive arguments,' . . . the word 'merits' is defined as '[t]he intrinsic rights and wrongs of a case as determined by matters of substance, in distinction from matters of form.' "); *see also id.* at 308 (2013) (SCALIA, J., concurring) ("A judgment that

3

denies relief *necessarily* denies—and thus adjudicates—*all* the claims a petitioner has raised.")

Ogilvie tries to escape this fact by adding requirements to § 2254(d) that Congress did not include. Ogilvie asserts that he was denied a "constitutionally adequate appeal" and that there has been no "proper adjudication of his claims." (R. 16, Pet'r's 2d Supp. Br. at 6, PageID #3255.) But Congress has not asked habeas courts to inquire into the procedural adequacies of the state-court appellate process when deciding whether § 2254(d) applies or not. The only condition that triggers AEDPA deference is the one named in the statute—that the claim was "adjudicated on the merits in State court proceedings." Ogilvie's claims were, and deference is required.

This is not to say that the state trial court's failure to appoint counsel when Ogilvie eventually requested it is irrelevant. It is a constitutional violation, which the State has conceded, and there is a remedy for the violation, which the State has also conceded. Ogilvie is entitled to a new appeal. What he is not entitled to is a more favorable standard of review.

For his part, Ogilvie has cited no authority to support his claim that AEDPA means something other than what it says. Instead, he cites *Campbell v. Bradshaw*, 674 F.3d 578, 596 (6th Cir. 2012) for the proposition that, "[w]here the petitioner is not at fault for the state court's failure to resolve his claims on the merits, 'AEDPA deference' does not apply and the Court reviews the claim *de novo*." (R. 16, Pet'r's 2d Supp. Br. at 7, PageID #3256.) But nothing in *Campbell* establishes that a failure to appoint counsel constitutes a failure to resolve the claims raised on the merits.

Notably, Ogilvie has not alleged that, due to the absence of appellate counsel, there was some deficiency in the way his claims were presented to the Michigan Court of Appeals. He has not argued, for example, that the Michigan Court of Appeals denied any of his claims due to a failure to brief the claims adequately, or a failure to provide adequate factual support, or some other reason that might suggest that the state court rejected his claims without considering their merits. Nor could he plausibly do so, given the quality of his appellant's brief and the thorough nature with which the Michigan Court of Appeals addressed the claims. In *Campbell*, the Sixth Circuit applied de novo

5

review to one of the petitioner's claims because the Ohio Supreme Court apparently misconstrued the petitioner's argument and therefore never fully addressed it. 674 F.3d at 596. Ogilvie has not argued that anything like that happened here.

Nor is this case comparable to *McClellan v. Rapelje*, 703 F.3d 344 (6th Cir. 2013). In that case, the Michigan court disposed of the petitioner's claim in an unexplained summary order, which carries a rebuttable presumption that the order is a merits adjudication. *Id.* at 349 (citing *Werth v. Bell*, 692 F.3d 486, 493 (6th Cir. 2012). The Sixth Circuit held that the presumption had been overcome based on its finding that the Michigan Court of Appeals did not have the lower-court record when it denied relief. *Id.* at 349–50. According to the court, "[t]he only reasonable inference to be drawn" from that fact and "the plain language of the" state-court orders is that the denial of relief could not have been on the merits. *Id.* at 350.

This case is different in two important ways. First, the Michigan Court of Appeals decision here is not an unexplained order that is rebuttably presumed to be a merits adjudication. It is a thorough and reasoned decision that analyzes the law and the record with respect to

each claim addressed. Second, the irregularity in Ogilvie's appeal was not one that affected whether the Michigan Court of Appeals was capable of deciding the case on the merits. Under *McClellan*, the fact that the Michigan Court of Appeals did not have the lower-court record was central to the decision: "A factual issue cannot be created for an appellate court out of thin air *without any trial court record concerning the issue before it* and without any reference to the issue in the appellate court's decision." 703 F.3d at 350. In other words, it is effectively impossible, in the view of the *McClellan* majority, for the Michigan Court of Appeals to decide a case on the merits without the lower-court record.

    It is not, however, impossible for the Michigan Court of Appeals to decide a *pro se* appeal on the merits. It does so all the time. And, as far as the Michigan Court of Appeals was aware in this case, Ogilvie was choosing to proceed *pro se*, having fired his first three appellate attorneys, and there was no reason for that court to think there was anything improper about deciding the case. It does not appear from the record that Ogilvie ever asked the Michigan Court of Appeals to direct the lower court to appoint a fourth attorney, or that he ever informed

7

the appellate court that he did not want his appeal decided while he was unrepresented. By all it appeared to the Michigan Court of Appeals, Ogilvie was an ordinary *pro se* appellant.

To reiterate, this is not to say that the trial court's error in failing to appoint new counsel after Ogilvie requested it was not a serious one; it was. And it requires relief. But it does not transform what is manifestly a rejection of Ogilvie's claims on the merits into something else. No authority calls for this interpretation, and this Court should reject it.

Even less tenable is Ogilvie's argument that the state trial court's rejection of Ogilvie's claims was not a merits adjudication. Ogilvie argues that this is the case for two reasons: First, because Ogilvie had an uncounseled appeal, and second, because "it is clear that the trial court's order . . . overlooked Ogilvie's federal claims and failed to provide a reasoned decision on several of Ogilvie's claims." (Dkt. 16, Pet'r's 2d Supp. Br. at 8, PageID #3257.) Both of these arguments fail.

To take the second point first: nothing in the record suggests, much less makes "clear," that the state trial court overlooked any of the claims Ogilvie raised in his motion for new trial. Ogilvie faults the trial

8

court for not providing a more detailed reasoned decision explaining why each of his claims lacked merit. But AEDPA deference does not depend on a reasoned decision. "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Harrington v. Richter*, 562 U.S. 86, 98 (2011). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 99. Ogilvie has not advanced any such indication or state-law procedural principles. He has not overcome the presumption that the state trial court rejected his claims on the merits.

Ogilvie asserts that it is important to note that his appellate counsel failed to raise the claim of prosecutorial misconduct for failing to turn over the 9-1-1 call of Amy Ogilvie. (Dkt. 16, Pet'r's 2d Supp. Br. at 8, PageID #3257.) Ogilvie asserts that, due to this failing, "through no fault of his own, the state trial court never reached the merits of" that claim. (*Id.*) There are several problems with this argument, but

9

most plainly, the factual premise is incorrect. Attorney Mittlestat did raise this claim in the trial court. (*See* Dkt. 6-27, Br. in Support of Supp. Mot. for New Trial, PageID #1010–21.)

Moving back to the appeal point. At the time the trial court denied Ogilvie's claims, his appeal was already filed and pending. The Michigan Court of Appeals was waiting for the trial court to decide the motion for new trial before considering the appeal. Ogilvie was represented by counsel both in the Michigan Court of Appeals and in the state trial court. Having fired his first two appellate attorneys, he was being represented by Michael Mittlestat. Ogilvie, through Mittlestat, raised various claims in his motion for new trial. The trial court rejected these claims in a decision that was, as explained above, a merits adjudication.

Then, according to Ogilvie, when he fired Mittlestat and the trial court failed to provide him a new attorney, the trial court's failure somehow traveled back in time and transformed the merits adjudication of his claims into something other than a merits adjudication. Ogilvie provides no support for this novel theory, other than a cite to *Halbert v. Michigan*, 545 U.S. 605, 610 (2005), which held that indigent

10

defendants who appeal following a no-contest (or guilty) plea must be appointed counsel. Neither *Halbert* nor any other decision of any court supports the proposition that the denial of counsel on appeal transforms court orders entered *before* that denial into something else. For example, *Halbert* did not hold that Michigan's refusal to give Halbert counsel on appeal rendered his guilty plea invalid; the remedy in *Halbert* was to vacate the Michigan Court of Appeals' decision, not Halbert's guilty plea. *Id.* at 624.

\* \* \*

For these reasons, the State respectfully submits that AEDPA deference applies to the Michigan Court of Appeals' decision because it was a merits adjudication of the claim. While the state trial court's adjudication of the claim was also a merits adjudication, it is not entitled to deference unless this Court holds that the Michigan Court of Appeals' decision was not a merits adjudication. In that case, the trial court's decision would be the last reasoned decision and would then be entitled to deference.

In either case, AEDPA deference applies to Ogilvie's claims, and, because Ogilvie cannot show that the state courts' adjudication of those

11

claims was contrary to or an unreasonable application of clearly established federal law, he is not entitled to relief.

This Court has not requested supplemental briefing on the merits of Ogilvie's claims, so the State stands on its earlier pleadings in this case unless this Court requests further briefing.

                                  DANA NESSEL
                                  Attorney General

                                  <u>s/Linus Banghart-Linn</u>

                                  Assistant Attorney General
                                  Appellate Division
                                  P.O. Box 30217
                                  Lansing, MI  48909
                                  (517) 335-7650
                                  banghart-linnl@michigan.gov
                                  P73230

Dated:  January 16, 2020

## Certificate of Service

I certify that on January 16, 2020, I electronically filed the foregoing papers with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

>HONORABLE MATTHEW F. LEITMAN
>MAGISTRATE STEPHANIE DAWKINS DAVIS
>Suzan Gabbara @ asmar8msn.com
>Jennifer J. Qonja @ gonja@eamanlaw.com

>>DANA NESSEL
>>Attorney General

>>s/Linus Banghart-Linn

>>Assistant Attorney General
>>Appellate Division
>>P.O. Box 30217
>>Lansing, MI 48909
>>(517) 335-7650
>>banghart-linnl@michigan.gov
>>P73230